UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| YOLANDA IRVING, individually and as the natural parent and guardian of JALEN IRVING, JUWAN HARRINGTON, CYDNEEA HARRINGTON, KENYA WALTON individually and as the natural parent and guardian of ROBERT WHITLEY, ZIYEL WHITLEY, DYAMOND WHITLEY, KAMISHA WHITLEY, and NANETTA GRANT as the natural parent and guardian of ZIQUIS GRANT,<br><br>          Plaintiffs,<br><br>  v.<br><br>THE CITY OF RALEIGH, Officer OMAR I. ABDULLAH, Sergeant WILLIAM ROLFE, Officer RISHAR PIERRE MONROE, Officer JULIEN DAVID RATTELADE, and Officer MEGHAN CAROLINE GAY, and JOHN and JANE DOE Officers 1-10, in their individual capacities,<br><br>          Defendants. | 22-CV-00068-BO |

**PLAINTIFFS' MEMORANDUM IN RESPONSE TO THE CITY OF RALEIGH'S MOTION FOR A COURT-HOSTED SETTLEMENT CONFERENCE**

Plaintiffs write in response to the City of Raleigh's ("City") motion that this Court enter an order setting a settlement conference before a Judge or other federal judicial official. If ordered by this Court, Plaintiffs would certainly participate in good-faith settlement discussion. Unfortunately, after correspondence with counsel for the City, Plaintiffs do not believe a settlement conference at this early juncture would be successful, because the City has refused to entertain one of Plaintiffs' primary goals in this litigation: revision of the City's warrant execution policies related to "No Knock" and "Quick Knock" raids. If this Court does order a

settlement conference Plaintiffs respectfully request that any deadlines remain in place and that this litigation proceed without delay while the parties attempt to come to a resolution.[1]

Plaintiffs are ten Black women and children who filed suit against the City in response to a "No Knock" raid of their homes by the Raleigh Police Department ("RPD"). In their Complaint, Plaintiffs allege RPD VICE officers conspired with a confidential informant to fabricate heroin charges over a period of at least six months which resulted in the illegal arrests and incarceration of numerous individuals and culminated with the illegal and terrifying "No knock" raids of their homes. Plaintiffs' claims include allegations against the individual officers as well as *Monell* claims against the City for "Failure to Supervise and Monitor the Confidential Informant Program" (claim nine) and challenging the City's policy related to "No Knock" and "Quick Knock"[2] raids (claim ten).

Plaintiffs now have evidence, including body camera footage, that RPD officers have engaged in illegal "No Knock" or "Quick Knock" raids on at least four occasions,[3] in addition to the incident before the Court. In these cases, RPD officers either enter residences without warning, or knock while simultaneously entering (often with a battering ram) in violation of Supreme Court precedent laid out in *United States v. Banks*, 540 U.S. 31, 36 (2003)[4] and

---

[1] Defendants have recently filed Motions to Dismiss or Answers to Plaintiffs' Complaint. Plaintiffs' responses are due by May 16 and May 20.
[2] The practice of law enforcement announcing itself while simultaneously entering a premises is known colloquially as a "Quick Knock."
[3] This includes RPD raids of the homes of Amir Abboud, Kesha Knight, Gregory Washington, and Blake Banks.
[4] The U.S. Supreme Court has adopted a "reasonableness" inquiry, deciding that although the standard generally requires the police to "announce their intent to search before entering closed premises, the obligation gives way when officers have a reasonable suspicion" that it would be "dangerous or futile" to knock and announce. *United States v. Banks*, 540 U.S. 31, 36 (2003). In *Banks*, the Court held that it was reasonable to enter a home "15 to 20 seconds" after knocking and announcing when officers suspected "imminent loss of evidence." *Id.*

affirmed in *Hudson v. Michigan,* 547 U.S. 586, 589–90 (2006). Based on this pattern, Plaintiffs are concerned that the RPD is routinely violating citizens' constitutional rights when executing warrants and through this litigation, seek to ensure that no other citizens of Raleigh experience the terror of having their home illegally raided by SWAT officers. Plaintiffs' concerns were heightened, when in response to this litigation, Raleigh Police Chief Estella Patterson stated in an interview that:

> "[The law] just states you knock and announce your presence," Patterson said. "I have always been taught that you clearly knock on the door, and then you clearly announce, and then you enter at that time."

Joe Fisher, *RPD States they don't use no-knock warrants amid criticism from civil rights groups*, WRAL February 23, 2022, https://www.wral.com/rpd-says-they-don-t-use-no-knock-warrants-amid-criticism-from-civil-rights-groups/20155737/. This understanding of the law is directly contradicted by Supreme Court precedent in *United States v. Banks*, 540 U.S. 31, 36 (2003), which held that it was reasonable to enter a home "15 to 20 seconds" *after* knocking and announcing when officers suspected "imminent loss of evidence." *Id.* The Court in *Banks* noted that the purpose of "the knock-and-announce rule was traditionally justified in part by the belief that announcement generally would avoid the destruction or breaking of any house ... by which great damage and inconvenience might ensue." *Id.* (internal citations omitted).

---

*Hudson v. Michigan,* 547 U.S. 586, 589–90 (2006) refused to apply the exclusionary rule to violations of the "knock and announce" standard in part because civil rights suits could deter bad police actors. *Id.* ("It is clear, at least, that the lower courts are allowing colorable knock-and-announce suits to go forward, unimpeded by assertions of qualified immunity. *See*, *e.g.*, *Green v. Butler,* 420 F.3d 689, 700–701 (C.A.7 2005) (denying qualified immunity in a knock-and-announce civil suit)").

3

In a letter, sent April 5, 2022, Plaintiffs expressed an interest in early mediation, but only if the City agreed to consider revising its warrant execution policies and provided documents related to those policies.

> …Plaintiffs are certainly interested in the possibility of an early resolution. However, in addition to monetary compensation, Plaintiffs are eager to see a change in the Raleigh Police Department's ("RPD") policies related to execution of search warrants. As laid out in our complaint, Plaintiffs believe that the RPD routinely violates the constitutional rights of citizens of Raleigh by knocking and immediately entering residences without reasonable suspicion or exigent circumstances that would justify immediate entry.
>
> In an effort to resolve this matter through early mediation, Plaintiffs request that the City provide the following documents and policies to counsel 60 days prior to a scheduled mediation. These are all documents or policies that would be discoverable if this case proceeded. By agreeing to early mediation Plaintiffs are giving up their right to discovery and request the City provide these documents to allow for a more transparent review of RPD's search warrant policies.

Ex. 1, April 5, 2022, Potential Mediation and Request for Documents. Plaintiffs' letter went on to request a specific series of RPD policies related to warrant execution and use of confidential informants, in addition to incident reports, injury reports, body worn camera, and use of force reports. *Id.*

The City, two weeks later, responded in an email stating that they would provide one of the requested policies (stating that many of the others are publicly available), but would provide none of the requested discovery and that the City was "seeking an early mediation to explore the possibility of an early resolution—*thus focusing on your clients' damages*." Ex. 1, City April 19, 2022, Email. One day later, Plaintiffs responded to the City's email in a second letter indicating that Plaintiffs were not interested in a resolution that would not address Plaintiffs' concerns "related to RPD's warrant execution policies" and that Plaintiffs would not engage in "early mediation without the possibility of change to the City's warrant execution policies." Ex. 1, Reply to City Email Related to Potential Mediation.

4

Based on the correspondence with the City, it appears that Defendants are not willing to examine and revise their warrant policies but wish only for a monetary settlement that will end this litigation. Those are not acceptable terms to Plaintiffs.

Respectfully submitted, this the 3rd day of May 2022.

_____
Abraham Rubert-Schewel (N.C. Bar # 56863)
TIN FULTON WALKER & OWEN, PLLC
119 E. Main Street
Durham, NC 27701
Tel: (919) 451-9216
schewel@tinfulton.com

/s/ *Emily Gladden*
Emily D. Gladden
TIN FULTON WALKER & OWEN, PLLC
State Bar No.:   49224
204 N. Person Street
Raleigh, NC 27601
Telephone:   (919) 720-4201
Facsimile:   (919) 400-4516
Email:   Egladden@tinfulton.com

/s/ *Micheal L. Littlejohn Jr.*
Micheal L. Littlejohn Jr.
N.C. Bar No. 49353
Littlejohn Law PLLC
PO Box 16661
Charlotte, NC 28297
Telephone: (704) 322-4581
Fax: (704) 625-9396
Email: mll@littlejohn-law.com

/s/ *Ian Mance*
Ian A. Mance
N.C. Bar No. 46589
EMANCIPATE NC
Post Office Box 309
Durham, NC 27702
Tel: (828) 719-5755
ian@emancipatenc.org

/s/ *Elizabeth Simpson*
Elizabeth G. Simpson
N.C. Bar No. 41596
EMANCIPATE NC
Post Office Box 309
Durham, NC 27702
Tel: (919) 682-1149
elizabeth@emancipatenc.org