| | |
|---|---|
| YOLANDA IRVING, et al., )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>THE CITY OF RALEIGH, et al., )<br>)<br>Defendants. ) | **REPLY TO PLAINTIFF EMANCIPATE NC, INC.'S MEMORANDUM IN OPPOSITION TO MOTION TO DISMIS** |

Defendants City of Raleigh, Chief of Police Estella Patterson, and City Manager Marchell Adams-David (collectively the "City") pursuant to Local Rule 7.1(g) respectfully submit this Reply to Plaintiff Emancipate NC, Inc.'s ("Emancipate") Memorandum in Opposition to Motion to Dismiss on the ground that Emancipate lacks standing to bring the claims asserted in Plaintiffs' Second Amended Complaint.[1]

## INTRODUCTION

The City's Memorandum in Support of its Motion to Dismiss Emancipate shows that Emancipate, as an organization, does not have standing to bring this suit because Defendants' actions have not prevented Emancipate from pursing its broad mission. Defs.' Mem. in Supp. of Mot. to Dismiss. ("Defs.' Mem."), ECF No. 60. Instead, Emancipate merely has an interest in the outcome of Individual Plaintiffs' action. *Id.*

Emanicipate's Memorandum in Opposition fails to show otherwise. Pl.'s Mem. in Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Mem."), ECF No. 88. The Memorandum reinforces that the

---

[1] After the City filed its Motion to Dismiss, Plaintiffs filed a Second Amended Complaint. ECF No. 93. The City has renewed its Motion to Dismiss, ECF No. 96, and relies not only on this Reply but also on its Memorandum in Support of its original Motion to Dismiss, ECF No. 60.

interest at issue here, which Emancipate identifies as structural racism, is a very broad one that, under the case law, is not conducive to organizational standing. Indeed, holding that Emancipate has standing here would mean organizations would have standing in every case that implicates a broad goal, if the organization expended resources to further that goal. This would surely run afoul of the case or controversy requirement. Emancipate also fails in its attempt to link the facts of this case to its mission, as it relies primarily on facts that are outside the Second Amended Complaint.

## ARGUMENT

### I. THE "SINCERITY" OF EMANCIPATE'S MISSION IS INSUFFICIENT TO ESTABLISH AN INJURY IN FACT

Emancipate notes its "sincere" organizational objective to end structural racism. Pl.'s Mem., ECF No. 88, at 8. The City does not dispute Emancipate's sincere interest in achieving that goal; however, that interest is insufficient to confer standing given the factual allegations asserted in this case. The Supreme Court has specifically cautioned against finding standing for organizations with mere interests in litigation. *Sierra Club v. Morton,* 405 U.S. 727, 739 (1972). The Court explained, "[A] 'mere interest in a problem,' no matter how longstanding the interest and no matter how qualified the organization is in evaluating the problem" does not confer standing for an organization. *Id.* (finding the organizational plaintiff, whose mission was to protect the environment, lacked standing to challenge a proposed development that allegedly contravened federal laws).

Importantly, the goal of ending structural racism is a very broad one. Emancipate acknowledges as much in its response. *See* Pl.'s Mem., ECF No. 88, at 9 n.3. In assessing standing in the organizational context, typically a narrow mission is required. *See, e.g., Havens Realty Corp. v. Coleman,* 455 U.S. 363 (1982); *People for Ethical Treatment of Animals, Inc. v. Tri-State Zoological Park of W. Md., Inc.*, 843 F. App'x 493 (4th Cir. 2021) (unpublished) ("*PETA*"); *Action*

2

*NC v. Strach,* 216 F. Supp. 3d 597 (M.D.N.C. 2016); *N.C. State Conf. of NAACP v. N.C. State Bd. of Elections,* 283 F. Supp. 3d 939 (M.D.N.C. 2017) ; *N.C. State Conf. of NAACP v. N.C. State Bd. of Elections,* No. 1:18-CV-994, 2022 WL 446833 (M.D.N.C. Mar. 28, 2022). Holding that Emancipate has standing here would mean Emancipate has standing in any case that implicates structural racism. That would be contrary to the jurisprudence on organizational standing. *See Simon v. E. Ky. Welfare Rights Org.,* 426 U.S. 26, 37–40 (1976) (explaining "an organization's abstract concern with a subject that could be affected by an adjudication does not substitute for the concrete injury required by Art. III").

Contrary to Emancipate's assertions, *Havens Realty Corp.* and *PETA* do not show that Emancipate has standing here. In each of those cases, the organizational plaintiffs:

- undertook to investigate wrongful conduct of a defendant that was counter to the organizations' *narrowly tailored objectives* and mission-based activities to, in one case, make equal opportunity in housing a reality through the provision of counseling services and, in the other, protect animals from abuse, neglect, and cruelty through investigations and protest campaigns; and

- were inhibited from engaging in other specific, concrete activities consistent with their missions—activities that were different in kind from the activities subject to the claims in the lawsuit—including providing referrals for other housing opportunities and engaging in mission-related campaigns against other zoos.

*Havens Realty Corp.,* 455 U.S. at 368, 379; *PETA,* 843 F. App'x. at 496.

Unlike the missions of the organizational plaintiffs in *Havens* and *PETA*, Emancipate's mission does not require it to engage in any particular activities in order to pursue its goal. *See* Second Am. Compl., ECF No. 93, ¶ 196. Rather, its broad mission allows it the latitude to engage in a wide variety of activities, and to make choices about which of those activities to pursue or to prioritize, including when to do so. *See id.* Thus, at any given time, it must make discretionary budgetary decisions in determining to which activities to devote resources.

3

Emancipate's alleged injury is more akin to the injuries claimed by the organizational plaintiffs in *Lane v. Holder,* 703 F.3d 668, 669-71 (4th Cir. 2012), and *Maryland Shall Issue, Inc. v. Hogan,* 963 F.3d 356, 362 (4th Cir. 2020). In each of these cases, the organizational plaintiffs alleged a drain on resources that the Fourth Circuit concluded amounted to budgetary decisions and a disagreement with policy insufficient to confer standing. *Lane,* 703 F.3d at 674; *Maryland Shall Issue, Inc.,* 963 F.3d at 362. Neither sufficiently related their objectives that were not mission-based with the alleged misconduct or established their missions were thwarted with a subsequent drain on resources to satisfy the injury in fact requirement. *Id.*

Similarly, Emancipate contends that Defendants' alleged misconduct increased the demand on Emancipate's rapid response initiative, in which community members report and seek advice regarding instances of police misconduct, incidents that occur in jail or prison, and unfair charges or convictions. Second Am. Compl., ECF No. 93, ¶ 198. This contention does not show standing; instead, it shows a mere interest in the subject matter of the litigation, as it shows that Emancipate has an interest in addressing the type of conduct alleged in the Second Amended Complaint and elects to devote money to assisting individuals who report that type of conduct.

Emancipate attempts to distance its position from that of the organizational plaintiff in *Lane* by calling the Fourth Circuit's holding "a narrow holding [that] has subsequently been called into question or otherwise distinguished." Pl.'s Mem., ECF No. 88, at 10. It offers no meaningful distinction between the nonprofit in *Lane,* which opted to expend resources on educating members, responding to inquiries, and undertaking litigation, and itself, which likewise elects to expend resources responding to inquiries regarding allegedly generalized police misconduct. *See Lane*, 703 F.3d at 675; Second Am. Compl., ECF No. 93, ¶ 199.

4

Additionally, Emancipate relies on *Harrison v. Spencer*, 449 F. Supp. 3d 594 (E.D. Va. 2020), to support the proposition that use of resources to respond to increased requests for assistance related to an organization's mission satisfy the first two prongs of standing. *See* Pl.'s Mem., ECF NO. 88, at 11. The organizational plaintiff in *Harrison* articulated at least nine specific, advocative, educational, and legal projects that laid at the core of its mission and that were delayed due to increased demands following the announcement of a new policy, which was closely associated with alleged misconduct the plaintiffs in that case challenged. 449 F. Supp. 3d at 599, 603–04. In this case, Emancipate cannot point to a similar catalyst that prompted unanticipated, increased demand. Rather, Emancipate's allegations establish a decision to devote resources to a particular activity that fits into its broad mission.

Indeed, the Fifth Circuit has explained that a sincere interest coupled with a discretionary decision to expend resources does not necessarily rise to the level of frustration of purpose with a subsequent drain on resources required to confer standing: "the mere fact that an organization redirects some of its resources to litigation and legal counseling in response to actions or inactions of another party is insufficient to impart standing upon the organization." *Ass'n for Retarded Citizens of Dallas v. Dallas Cnty. Mental Health & Mental Retardation Ctr. Bd. of Tr.*, 19 F.3d 241, 244 (5th Cir. 1994). The Court explained that concluding that the organizational plaintiff had standing would allow "any sincere plaintiff [to] bootstrap standing by expending its resources in response to actions of another." *Id.* Finally, the Court observed that organizations do not have a legally-protected interest in *not* expending their resources in certain ways. *Id.* The principles that the Fifth Circuit found did not establish standing are the same principles that Emancipate relies on here in an attempt to show standing. Emancipate's sincere interest and discretionary decision to

5

devote resources to the issue of alleged police misconduct, in short, are insufficient to establish standing.

## II. EMANCIPATE'S ARGUMENTS, WHICH GO BEYOND THE SCOPE OF THE PLEADINGS, DO NOT CONFER STANDING ON EMANCIPATE

Other aspects of Emancipate's response show that it lacks standing. Emancipate's unsupported assertions do not cure the lack of concrete, organizational injury that can be redressed by this Court. Further, Emancipate's allegations concerning other individuals and nationally-known cases of police misconduct are not relevant to the inquiry as to whether Emancipate, as an organization, can establish standing under Article III.

First, Emancipate relies on allegations about incidents of police misconduct that occurred in other cities, by officers who are not defendants in this case and have no relationship to the defendants in this case. Pl.'s Mem., ECF No. 88, at 3; Second Am. Compl., ECF No. 93, ¶ 157. These allegations are not relevant to demonstrating that any of the misconduct alleged in this case occurred, nor are they relevant to demonstrating that Emancipate was injured as a result of that conduct.

Second, Emancipate's arguments also fail to the extent that they rely on other facts and argument that are not supported by the allegations in the Second Amended Complaint. For example, in an attempt to relate Emancipate's broad mission to the alleged misconduct here, Emancipate asserts (for the first time) that such misconduct overwhelmingly impacts Black residents. Pl.'s Mem., ECF No. 88, at 9. Emancipate concedes that it is not claiming that the alleged misconduct and inadequate policies at issue were intentionally motivated by race. *Id.* at 3 n.1. Instead, throughout its response, without citation to the Second Amended Complaint or supporting evidence, Emancipate attributes the alleged misconduct to structural racism.

In contrast, the factual allegations contained in the Second Amended Complaint feature searches resulting from a unique situation involving the actions of a rogue officer and unreliable confidential informant. The allegations assert that Individual Plaintiffs' homes were searched as a result of a detective's violation of policy related to arrests for drug trafficking. Emancipate fails to articulate how it has standing based on such conduct.[2]

## CONCLUSION

For the foregoing reasons, and those articulated in the City's Memorandum in Support of its Motion to Dismiss, the City respectfully requests that this Court dismiss Plaintiff Emancipate and grant such other relief as it deems proper and just.

Respectfully submitted,

This the 15th day of September 2022.

          **CITY OF RALEIGH**
          **Robin L. Tatum, City Attorney**

By:    /s/ Dorothy V. Kibler
        DOROTHY V. KIBLER
        Deputy City Attorney
        N.C. Bar No. 13751

By:    /s/ Amy C. Petty
        AMY C. PETTY
        Senior Associate City Attorney
        N.C. Bar No. 20894
        PO Box 590
        Raleigh, NC 27602

---

[2] Plaintiffs' reliance on Judge Thacker's concurrence in *United States v. Curry,* 965 F.3d 313 (4th Cir. 2020), is also misplaced. Pl.'s Mem., ECF No. 88, at 8. Judge Thacker's concurrence contemplates that the practice of "predictive policing" – dispatching police officers to areas where crime is most likely to occur – as nothing more than racial profiling. *United States v. Curry,* 965 F.3d at 344–45 (4th Cir. 2020). The Fourth Circuit was evaluating whether exigent circumstances justified the search of an individual person in the general vicinity of an area in which officers believed they heard gunshots. *Id.* Such a situation is not relevant to this case. Instead, as the City's Memorandum in Support of its Motion to Dismiss shows, the factual allegations are specific to searches resulting from an alleged conspiracy precipitated by two individuals who broke policy (and potentially the law) and are no longer in a position to engage in such behavior.

Tel: (919) 996-6560
Fax: (919) 996-7021
Dorothy.Kibler@raleighnc.gov
Amy.Petty@raleighnc.gov
*Counsel for Defendants City of Raleigh, Chief of Police Estella Patterson, and City Manager Marchell Adams-David*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:22-cv-00068-BO

| | |
|---|---|
| YOLANDA IRVING, et al., )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>THE CITY OF RALEIGH, et al., )<br>)<br>Defendants. ) | **CERTIFICATE OF SERVICE** |

I hereby certify that on September 15, 2022, I electronically filed the foregoing **REPLY TO PLAINTIFF EMANCIPATE NC, INC.'S MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS** with the Clerk of Court using the CM/ECF system, which sends notification of such filing to all counsel of record as follows:

Abraham Rubert-Schewel
Tin Fulton Walker & Owen, PLLC
119 E. Main Street
Durham, NC 27701
schewel@tinfulton.com
*Counsel for Plaintiffs*

Emily Gladden
Tin Fulton Walker & Owen, PLLC
204 N. Person Street
Raleigh, NC 27601
egladden@tinfulton.com
*Counsel for Plaintiffs*

Michael Littlejohn, Jr.
Littlejohn Law, PLLC
PO Box 16661
Charlotte, NC 28297
mll@littlejohn-law.com
*Counsel for Plaintiffs*

Jason Benton
Parker Poe Adams & Bernstein, LLP
620 South Tyson Street, Suite 800
Charlotte, NC 28202
jasonbenton@parkerpoe.com
*Counsel for Defendant Abdullah*

Rodney Pettey
Yates McLamb & Weyher, LLP
PO Box 2889
Raleigh, NC 27602
rpettey@ymwlaw.com
*Counsel for Defendants Monroe, Rattelade, and Gay*

Norwood Blanchard, III
Crossley McIntosh Collier, & Edes, PLLC
5002 Randall Parkway
Wilmington, NC 28403
norwood@cmclawfirm.com
*Counsel for Defendant Rolfe*

9

Ian Mance
Elizabeth Simpson
Emancipate NC, Inc.
ian@emancipatenc.org
elizabeth@emancipatenc.org
*Counsel for Plaintiffs*

                                  **CITY OF RALEIGH**
                                  **Robin L. Tatum, City Attorney**

By:    /s/ Amy C. Petty
        DOROTHY V. KIBLER
        Deputy City Attorney
        N.C. Bar No. 13751
        AMY C. PETTY
        Senior Associate City Attorney
        N.C. Bar No. 20894
        PO Box 590
        Raleigh, NC 27602
        Tel: (919) 996-6560
        Fax: (919) 996-7021
        Dorothy.Kibler@raleighnc.gov

*Counsel for Defendants City of Raleigh, Chief of Police Estella Patterson, and City Manager Marchell Adams-David*