# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### WESTERN DIVISION

### Case No. 5:22-CV-00068-BO

| | |
|---|---|
| YOLANDA IRVING, et al., <br><br> Plaintiffs, <br><br> v. <br><br> THE CITY OF RALEIGH, et al., <br><br> Defendants. | **BRIEF IN SUPPORT OF DEFENDANT OMAR I. ABDULLAH'S MOTION TO STAY PROCEEDINGS** |

## BACKGROUND

On February 22, 2022, Plaintiffs filed their Complaint against the City of Raleigh and several members of the Raleigh Police Department ("RPD") including Omar I. Abdullah ("Abdullah") for an alleged unlawful raid of Plaintiffs Yolanda Irving and Kenya Walton's homes by the RPD VICE Unit in May 2020. (Doc. 2). Plaintiffs filed an Amended Complaint on May 16, 2022. (Doc. 41). In their Complaint and Amended Complaint, Plaintiffs allege that Abdullah, along with RPD Vice officers Rishar Pierre Monroe ("Monroe"), Julien David Rattelade ("Rattelade"), and Meghan Caroline Gay ("Gay"), conspired with a confidential informant to fabricate evidence used to procure a search warrant that resulted in an illegal "No Knock" search of Plaintiff Irving's home. Plaintiffs further allege that Sergeant William Rolfe ("Rolfe") failed to properly supervise the officers and that the City of Raleigh improperly permitted and/or encouraged RPD officers to execute "No Knock" search warrants. Finally, Plaintiffs allege that several members of the RPD Selective Enforcement Unit ("SEU"), identified as John and Jane Doe Officers 1-10, used excessive force by pointing firearms at Plaintiffs during execution of the search warrant.

On June 30, 2022, Defendants Gay, Monroe, Rattelade, and Gay filed an Answer to Plaintiffs' Amended Complaint (Doc. Nos. 64, 65, 66) and a Motion to Dismiss. (Doc. 62). Defendants Abdullah and Rolfe also filed Answers to the Amended Complaint on June 30, 2022. (Doc. Nos. 61 and 67). On July 14, 2022, the City of Raleigh, and Chief of Police Estella Patterson and City Manager Marchell Adams-David, who were sued in their official capacities, filed their Answer to the Amended Complaint. (Doc. 71).

On July 6, 2022, the Court entered a Scheduling Order. (Doc. 69). Pursuant to the Scheduling Order, all discovery concerning Plaintiffs' claims against the individual defendants, and the individual defendants' defenses thereto, shall be completed by December 20, 2022. Id. at ¶ 3(a).

On August 19, 2022, Plaintiffs moved to amend their Complaint a second time to replace defendants John and Jane Doe Officers 1-10 with the names of specific RPD SEU officers. (Doc. 89). The Court granted Plaintiffs' motion on August 31, 2022 and the Second Amended Complaint was filed on that same. (Doc. 92-93). All defendants except the recently-named RPD SEU officers have since filed responses to the Second Amended Complaint.

Abdullah now moves the Court to stay proceedings in this action pending resolution of a parallel criminal action against him concerning what appears to be the same subject matter that is currently pending in Wake County Superior Court. All defendants consent to a stay of the entire proceedings. Plaintiffs object.

**FACTS**

On May 21, 2020, Abdullah applied for a warrant to search 1628 Burgundy Street, Apartment B in Raleigh – the home of Plaintiff Irving. (Doc. 41, ¶ 92). The application was based on a controlled drug buy made at the residence the previous day by confidential informant Dennis

Williams ("C.I. Williams"), who had been working with Abdullah and the RPD Vice Unit.  (Doc. 41, ¶ 94).  A search warrant was issued.  (Doc. 41, ¶ 104).  That afternoon, according to Plaintiffs, members of the RPD SEU entered Plaintiff Irving's home without knocking and searched the home for contraband.  The RPD SEU members also entered and searched the neighboring apartment, 1628 Burgundy Street, Apartment A – the home of Plaintiff Walton – after one of the Minor Plaintiffs who had been sitting on the stoop of Apartment B fled to Apartment A when he saw RPD SEU approaching.  Plaintiff Walton gave verbal consent for RPD to enter and search her home.  (Doc. 61, ¶¶ 118, 136).

Plaintiffs contend that these searches were part of a larger conspiracy on the part of Abdullah, Gay, Rattelade, Monroe, and Rolfe, along with C.I. Williams, to fabricate heroin trafficking charges against numerous individuals beginning in November 2019.  (Doc. 41, ¶¶ 64-67).  This alleged wide-reaching conspiracy resulting in multiple arrests was the subject of another lawsuit in this Court, *Washington, et al. v. The City of Raleigh, et al.*, Case No. 21-CV-00194 (the "Washington Litigation").  Specifically, Plaintiffs allege that C.I. Williams produced fake heroin in connection with a series of controlled buys made over a six month period which resulted in the arrests of more than 15 individuals on heroin-related offenses.  (Doc. 41, ¶¶ 64-67, 74).  Plaintiffs further allege that Abdullah and the other RPD Vice officers knew that the heroin reportedly purchased by C.I. Williams during these controlled buys was counterfeit and had been analyzed by the CCBI lab and tested negative for a controlled substance.  (Doc. 41, ¶ 97).  Abdullah denies that he knew that the substance C.I. Williams returned with from controlled buys was not, in fact, heroin.  (Doc. 61, ¶ 74).  Plaintiffs maintain that based on C.I. Williams' history of purchasing counterfeit heroin from other individuals, Abdullah knew that C.I. Williams had not purchased

heroin from Plaintiff Irving's home on May 20, 2020 and, further, that his statement to the contrary in the May 21, 2020 search warrant application was false. (Doc. 41, ¶¶ 100-104).

On or about July 26, 2022, a grand jury empaneled in Wake County returned a true bill of indictment against Abdullah for unlawfully, willfully, and feloniously obstructing justice by providing false statements to a judicial official pertaining to a fake and counterfeit substance represented by Mr. Abdullah to be heroin. Dyshart Declaration ¶ 4, Sept. 15, 2022; Bill of Indictment[1]. The indictment stems from false statements allegedly made by Abdullah on May 21, 2020 while pursuing heroin trafficking charges against Marcus Vanirvin. Id. Abdullah voluntarily surrendered to the Wake County Detention Center on July 29, 2022 and was arrested. Dyshart Declaration ¶ 5. He has been charged with felony obstruction of justice and is currently awaiting trial. Id. at ¶¶ 5-6.

## STANDARD

The Fifth Amendment privilege against self-incrimination is "one of our most cherished fundamental rights" and one which is "jealously guarded" by courts. North River Ins. Co., Inc. v. Stefanou, 831 F.2d 484, 486 (4th Cir. 1987). This constitutional privilege protects an individual from becoming a witness against himself in a criminal proceeding and from responding to allegations in a complaint or serving responses to interrogatories in a civil proceeding where such responses and answers may incriminate him in a criminal action. Id. at 486-87.

Parties in civil proceedings face an "acute dilemma" when they are also targets of a related criminal prosecution: they must either waive their Fifth Amendment privilege against self-incrimination by testifying in the civil action and risk their testimony being used against them in the criminal action; *or* exercise their Fifth Amendment protection by remaining silent in the civil

---

[1] Attached hereto as, respectively, Exhibits A and B.

action, and jeopardize their ability to mount an adequate defense in the civil action. In re Phillips, Beckwith & Hall, 896 F. Supp. 553, 557-58 (E.D. Va. 1995). The "horns of this dilemma" are "especially sharp" for parties who choose to remain silent in the civil action for the sake of a criminal case, as the fact-finder in the civil action may draw an adverse inference from the parties' refusal to testify. In re Anderson, 349 B.R. 448, 458 (E.D. Va. 2006); see Drolett v. Robinson, No. 1:20 CV 213, 2021 WL 737135, at *4 (W.D.N.C. Feb, 25, 2021) (citing Gilbert v. United States, 203 F.3d 820, n.2 (4th Cir. 2000)). In light of this catch-22, it is within the Court's discretion to stay civil proceedings pending resolution of a parallel criminal action. In re Phillips, Beckwith & Hall, 896 F. Supp. 553, 557-58 (E.D. Va. 1995) (citing United States v. Kordel, 397 U.S. 1, 12 & n.27 (1970)); see Securities and Exchange Comm'n v. Dresser Indus., Inc. 628 F.2d 1368 (D.C. Cir. 1980) (quoting Kordel, 397 U.S. at 12, n.27) ("[A] court may decide in its discretion to stay civil proceedings, postpone civil discovery, or impose protective orders and conditions 'when the interests of justice seem( ) to require such action.'")).

The power to stay proceedings is incidental to every court's inherent power to control its docket. Williford v. Armstrong World Indus., Inc., 715 F.2d 124, 127 (4th Cir. 1983). Parties seeking a stay must establish a clear case of hardship or inequity that outweighs any potential harm to the non-movant. Id.; Drolett, 2021 WL 737135, at *2. In balancing the equities, courts consider (1) the interest of the plaintiff in proceeding expeditiously against prejudice to the plaintiff caused by delay; (2) the burden on the defendant; (3) convenience to the court; (4) interests of persons not party to the civil litigation; and (5) the public interest. Suntrust Mortg., Inc. v. Busby, Nos. 2:09 CV 3 -15, 2009 WL 4801347, at *7 (W.D.N.C. Dec. 7, 2009). A stay is most appropriate where a defendant's Fifth Amendment right is "under real and present duress," such as where the defendant is under indictment. Id.; Dresser; 628 F.2d at 1376; Drollet, 2021 WL 737135, at *4.

**ARGUMENT**

I.     **The constitutional burden Abdullah faces by simultaneously participating in this civil action and the parallel criminal proceeding outweighs any prejudice to Plaintiffs occasioned by a stay.**

Abdullah is under indictment for a felony criminal offense and, at the same time, must defend a civil action concerning the same or similar subject matter. His Fifth Amendment privilege against self-incrimination is, therefore, "under real and present duress." Busby, 2009 WL 4801347, at *7. If a stay of this action were not granted, Abdullah would be forced to make an impossible choice: waive his constitutional protection against self-incrimination and gain an advantage in the civil action while potentially giving prosecutors incriminating evidence to use against him in the criminal case *or* assert his Fifth Amendment privilege and hurt his civil defense.

This constitutional burden greatly outweighs any prejudice Plaintiffs would suffer as a result of a stay of this action. Although a prolonged delay in proceeding with their lawsuit could result in the inability of some witnesses to recall detailed factual information, any concern on the part of Plaintiffs that a delay will work a hardship on their ability to gather evidence is mitigated by the fact that Abdullah's criminal charges will be resolved expeditiously pursuant to his constitutional right to a speedy criminal trial. Drolett, 2021 WL 737135, at *4 (quoting Trustees of The Plumbers v. Transworld Mech., 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995) ("[T]he prejudice to the plaintiffs in the civil case is reduced since the criminal case will likely be resolved quickly due to Speedy Trial Act considerations."); Avalonbay Communities v. San Jose Water Conservation Corp., No. 07-306, 2007 WL 2481291, at *3 (E.D. Va. Aug. 27, 2007). Further, Plaintiffs, *who waited nearly two years to file their lawsuit*, are represented by the same attorneys who represented the plaintiffs in the related Washington Litigation and who gathered considerable evidence concerning the alleged conspiracy between the members of the RPD Vice unit and C.I. Williams in that litigation.

The balance of equities in this case, therefore, tips heavily in favor of a stay. In re Phillips, 896 F.Supp. at 558 ("[C]ourts have held that some attempt must be made to accommodate a civil litigant's Fifth Amendment concerns, and therefore a stay should be granted if one party requests it and the other party will not be substantially prejudiced.").

## II.     The convenience of the Court and the interests of non-parties weigh in favor of a stay.

Both the convenience of the Court, and the interests of non-parties to the ligation, including the public, weigh in favor of a stay of the civil action. This Court would not be inconvenienced by a stay of this action. In fact, to the contrary, a stay would promote judicial economy because any discovery exchanged in the criminal matter could be used in this action. This could effectively reduce the amount of time spent gathering and producing evidence in this action. See Drolett, 2021 WL 737135, at *3.

In addition, the government and the public have an interest in enforcement of the North Carolina criminal statutes. Here, the public has already demonstrated an interest in the pending criminal action through the Grand Jury's decision to indict Abdullah and the District Attorney's decision to prosecute him. To the extent there is a public interest in Plaintiffs proceeding with their civil claims against Abdullah and the other defendants, a stay of the civil action would not substantially harm this interest. Dresser, 628 F.2d at 1376 ("If delay of the noncriminal proceeding would not seriously injure the public interest, a court may be justified in deferring it.").

If Abdullah's request for a stay were denied, he would be squarely between Scylla and Charybdis – forced to choose between vigorously defending the civil action and risk incriminating himself criminally or remaining silent in the civil action and risk jeopardizing his civil defenses. The hardship and inequity that would be imposed on Abdullah if forced to make this choice substantially outweighs any prejudice Plaintiffs may experience if this civil action were stayed.

## **CONCLUSION**

For the reasons discussed above, Omar Abdullah respectfully requests that the Court grant his Motion to Stay Proceedings and enter an Order staying this civil action until resolution or disposition of the parallel criminal action. In the alternative, if the Court is not inclined to stay these civil proceedings in their entirety, Omar Abdullah respectfully requests that the Court enter a partial stay of discovery in this matter, and order that no interrogatories, requests for admission, or deposition of Abdullah shall be had until resolution or disposition of the parallel criminal action.

Respectfully submitted, this the 19th day of September, 2022.

/s/ Jason R. Benton
Jason R. Benton
N.C. State Bar No. 27710
Daniel E. Peterson
N.C. State Bar No. 41251
**PARKER POE ADAMS & BERNSTEIN LLP**
Bank of America Tower
620 S. Tryon St., Suite 800
Charlotte, NC 28202
Telephone: (704) 372.9000
Facsimile: (704) 334.4706
Email: jasonbenton@parkerpoe.com
danielpeterson@parkerpoe.com

*Attorneys for Defendant Omar I. Abdullah*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this date, the foregoing **Brief in Support of Defendant Omar I. Abdullah's Motion to Stay Proceedings** was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send notification and serve same upon counsel of record via the Court's electronic case filing system.

This the 19th day of September, 2022.

/s/ Jason R. Benton
Jason R. Benton
N.C. State Bar No. 27710
Daniel E. Peterson
N.C. State Bar No. 41251
**PARKER POE ADAMS & BERNSTEIN LLP**
Bank of America Tower
620 S. Tryon St., Suite 800
Charlotte, NC 28202
Telephone: (704) 372.9000
Facsimile: (704) 334.4706
Email: jasonbenton@parkerpoe.com
danielpeterson@parkerpoe.com

*Attorneys for Defendant Omar I. Abdullah*