IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CASE NO. 5:22-cv-68-BO

YOLANDA IRVING, individually and as the natural parent and guardian of J.I, JUWAN HARRINGTON, CYDNEEA HARRINGTON, KENYA WALTON, individually and as the natural parent and guardian of R.W., ZIYEL WHITLEY, DYAMOND WHITLEY, KAMISHA WHITLEY, NANETTA GRANT as the natural parent and guardian of Z.G., and EMANCIPATE NC, INC.,

    Plaintiffs,

v.

THE CITY OF RALEIGH, Officer OMAR I. ABDULLAH, Sergeant WILLIAM ROLFE, Officer RISHAR PIERRE MONROE, Officer MEGHAN CAROLINE GAY, Officer DAVID MEAD, Officer JESUS ORTIZ, Officer, KYLE PERRIN, Officer MICHAEL MOLLERE, Officer KYLE THOMPSON, Officer VINCENT DEBONIS, Officer DANIEL TWIDDY, Officer THOMAS WEBB, Officer DAVID MCDONALD, Officer DAVID GARNER, Chief of Police ESTELLA PATTERSON, and City Manager MARCHELL ADAMS-DAVID, in their individual capacities,

    Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF SEU DEFENDANTS' MOTION TO DISMISS UNDER RULES 12(B)(6) AND 12(B)(1)**

Defendant Officers David Mead, Jesus Ortiz, Kyle Perrin, Michael Mollere, Kyle Thompson, Vincent Debonis, Daniel Twiddy, Thomas Webb, David McDonald, and David Garner, who are members of the Raleigh Police Department's Selective Enforcement Unit (collectively the "SEU Defendants"), through counsel, respectfully submit this memorandum of law in support of their motion to dismiss under Rules 12(b)(6) and Rule 12(b)(1) of the Federal Rules of Civil Procedure.

## NATURE OF THE CASE

This case is about the execution of a search warrant on May 21, 2020, in Raleigh, North Carolina, at the homes of Plaintiffs Yolanda Irving and Kenya Walton. The search warrant was executed by the SEU Defendants, after the warrant had been obtained by officers of the drugs and vice unit of the Raleigh Police Department ("RPD"). Ms. Irving, Ms. Walton, and other occupants of their residences who were detained during the execution of the search warrant have brought claims against the City of Raleigh, the RPD officers who obtained the warrant, and the SEU officers who executed it. These Plaintiffs seek redress for injuries they allegedly suffered during the execution of the search warrant. The sole claim asserted against the SEU Defendants (Claim Eight) is that the SEU Defendants used excessive force by pointing their firearms at the individual Plaintiffs when the SEU Defendants entered the residences at issue and first encountered each of the individual Plaintiffs.

The SEU Defendants have moved to dismiss Claim Eight for failure to state a claim under Rule 12(b)(6) and the qualified immunity doctrine. Dismissal of Claim Eight is warranted because there is no clearly established law that would have put the SEU Defendants on notice that it was unconstitutional to enter Ms. Irving's and Ms. Walton's residences with their firearms drawn, and to have the firearms drawn when they encountered each of the Plaintiffs. On the contrary, Fourth Circuit precedent indicates that such conduct is constitutionally permissible. This sole claim against the SEU officers thus fails as a matter of law and should be dismissed.

The SEU Defendants also move to dismiss Emancipate NC, Inc. as a Plaintiff under Rule 12(b)(1) because Emancipate NC lacks standing to pursue claims based on the warrant execution at issue in this case. On this issue, the SEU Defendants join in the analogous motion to dismiss filed by the City of Raleigh, Chief of Police Estella Patterson, and City Manager

Marchell Adams-David (the "City Defendants"), and adopt the arguments in support of the City Defendants' motion that are articulated in the City Defendants' supporting memoranda and reply briefs. See DE 59, 60, 102, & 124. This memorandum also sets forth a few additional points regarding Emancipate NC's lack of standing to pursue claims based on the warrant execution at issue in this case.

## STATEMENT OF FACTS

On February 21, 2022, Plaintiffs Yolanda Irving and Kenya Walton, and other occupants of their homes, filed their Complaint against the City of Raleigh, several officers of the RPD's drugs and vice unit, and John and Jane Doe SEU officers 1-10. DE 2. Plaintiffs initially asserted two causes of action against the SEU Defendants: (1) unlawful entry and search (Claim One) and, (2) excessive force (Claim Seven). Id. pp. 19-21, 27-28.

On May 16, 2022, Plaintiffs filed an Amended Complaint, which added as a plaintiff Emancipate NC, Inc.—a nonprofit organization whose mission is to end mass incarceration and structural racism in the legal system. DE 41 ¶ 19. Plaintiffs also added Chief of Police Estella Patterson and City Manager Marchell Adams-David as defendants. See id. ¶¶ 29-30. As to the SEU Defendants (but not other RPD officer defendants), Plaintiffs abandoned their cause of action for unlawful entry and search. See id. pp. 25-27. The Amended Complaint asserted only an excessive force (Claim Eight) against the SEU Defendants. Id. p. 34.

On August 31, 2022, Plaintiffs amended their Complaint a second time to name each of the SEU Defendants, by name, as defendants in this action. DE 93 ¶¶ 28-37. Other than these additions, the factual allegations and claims in the Second Amended Complaint are essentially identical to those in the Amended Complaint. See DE 41, 93.

In those allegations, the named Plaintiffs assert that they are black women and children whose homes were illegally raided based on an allegedly invalid search warrant that was based upon fabricated evidence. See DE 93 ¶ 1. Plaintiffs allege a conspiracy by Defendant Omar Abdullah, a rogue confidential informant Dennis Williams, and other RPD officers to fabricate evidence, and contend that, in this instance, the conspiracy resulted in an unlawful "no knock" raid of the Plaintiffs' homes. Id. ¶ 2. Plaintiffs allege that other Raleigh residents have also been subject to "no knock" raids. Id. ¶ 8.

With regard to their injuries, Plaintiffs alleged that Defendant Abdullah secured a search warrant for the residence at 1628 Burgundy Street, Apartment B ("Apartment B"), which is Ms. Irving's home, based on a false heroin buy made by Informant Williams. See id. ¶¶ 100-01. Plaintiffs allege that, before this transaction, Informant Williams had repeatedly fabricated buys in his work with Defendant Abdullah and other RPD drugs and vice officers, and that Defendant Abdullah and the other RPD officers were aware of these facts. See id. ¶¶ 77-112. Plaintiffs do not allege that the SEU Defendants—who focus on warrant executions rather than investigations—were aware of the alleged misconduct or the circumstances under which the warrant at issue in this case was obtained. See id.

On May 21, 2020, the SEU Defendants executed the warrant to search Apartment B. See id. ¶¶ 114, 116. As they approached the front entrance of Apartment B, the SEU Defendants observed several teenage boys on the stoop, who are named Plaintiffs. Id. ¶ 118-21. When they saw the officers approaching, some of the boys fled into Apartment B and other boys fled into the apartment next door (Apartment A). Id. ¶¶ 123-24, 130-31. The SEU Defendants followed the boys into the two apartments, secured them and other individuals in each apartment, and

4

searched Apartment B, pursuant to the search warrant. Id. ¶¶ 126, 128-29, 134-47. No drugs or contraband were found. Id. ¶ 146.

Plaintiffs allege that, as the SEU Defendants approached 1628 Burgundy Street, the SEU Defendants pointed their assault rifles at the individual Plaintiffs who were on the stoop, and that they similarly pointed their rifles at each of the Plaintiffs who were inside the apartments, when the officers first encountered these Plaintiffs in the apartments. Id. ¶¶ 121, 130, 135, 136-37, 139.

With regard to Emancipate NC, the Second Amended Complaint alleges that it is a non-profit organization, whose mission is to end mass incarceration and structural racism in the legal system in North Carolina through community education, narrative shift, and litigation. Id. ¶ 196. One way that Emancipate NC carries out this mission is to investigate allegations of police misconduct, and to offer support to individuals who may be victims of such conduct. Id. ¶ 198. Specifically, Emancipate NC has a "rapid response" initiative, in which community members can report incidents of police misconduct, among other issues, and seek advice. Id. Emancipate NC deploys a staff person to analyze what response, if any, the organization will take, which could include informal administrative advocacy, media advocacy, litigation, or other forms of moral support. Id. ¶ 199. There is no allegation that any of the individual Plaintiffs at issue here contacted Emancipate NC after the warrant execution at issue in this case.[1]

---

[1] The Second Amended Complaint also contains allegations about alleged "no knock" or "quick knock" warrants that were executed on several other occasions. See DE 93 ¶¶ 164-89. There similarly are no allegations that any of these individuals contacted Emancipate NC after warrants were executed on their homes.

# LEGAL STANDARDS

## Rule 12(b)(6)

In ruling on a motion to dismiss under Rule 12(b)(6), the Court focuses on the legal sufficiency of the complaint. See Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). In conducting this review, the Court takes the facts in the light most favorable to the plaintiffs, but does not accept legal conclusions drawn from the facts. Id. The complaint must be dismissed if the facts alleged do not state a claim to relief that is plausible on its face. Id.

## Rule 12(b)(1)

In reviewing standing challenges, the Court accepts material allegations as true. S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC, 713 F.3d 175, 181-82 (4th Cir. 2013). The Court is not, however, required to accept allegations that are nothing more than legal conclusions or naked assertions. Id.

# ARGUMENT

**I. Claim Eight fails to state a claim against the SEU Officers, who should thus be dismissed as defendants from this lawsuit.**

Plaintiffs' Second Amended Complaint asserts one claim against the SEU Defendants: Excessive Force. The excessive force claim focuses on allegations that the SEU Defendants "pointed their firearms at Plaintiffs." DE 93 ¶ 274. Specifically, the Second Amended Complaint asserts the following:

- During their execution of the search warrant at issue, several of the SEU Officers "rushed toward" several of the plaintiffs, including two minor Plaintiffs, "in full body armor and with their firearms, including assault rifles, pointed at them." DE 93 ¶ 275.

- Several officers then "burst into the Irvings' home and pointed their firearms" at several of the Plaintiffs, including one minor Plaintiff. Id. ¶ 276.
- Two other officers "then entered the Walton's apartment and pointed their firearms" at four of the Plaintiffs, including one minor Plaintiff, who "had their hands raised and were following the officers orders and were standing in the kitchen." Id. ¶ 277.

Even assuming that these allegations are true for the purpose of the Rule 12(b)(6) motion, Plaintiffs fail to state a claim against the SEU Defendants.

As police officers, the SEU Defendants are entitled to qualified immunity for the Plaintiffs' excessive force claim, which is asserted under section 1983. See City of Tahlequah, Oklahoma v. Bond, 142 S. Ct. 9, 11 (2021); DE 93 p. 35. To escape dismissal of a complaint on qualified immunity grounds, a plaintiff must (1) allege a violation of a right (2) that is clearly established at the time of the violation." Evans v. Chalmers, 703 F.3d 636, 646 (4th Cir. 2012) (quoting Pearson v. Callahan, 555 U.S. 223, 231 (2009)). Plaintiffs have not done so here.

Instead, the SEU Defendants are entitled to qualified immunity on the Plaintiffs' excessive force claim because there was not, at the time of the conduct at issue here, nor is there now, any clearly established law holding that it is unconstitutional for a police officer, when executing a search warrant for drug offenses, to approach and enter a home with weapons drawn, particularly when, as here, some of the occupants already have seen the officers and are in the process of fleeing. See DE 93 ¶¶ 123, 130-32. Rather, Fourth Circuit case law holds that it is reasonable for officers to point their firearms at unknown occupants of a residence when entering the residence to execute a search warrant. See, e.g., Unus v. Kane, 565 F.3d 103, 110–11, 118 (4th Cir. 2009) (holding pointing of firearms upon entry into residence was reasonable, as

7

officers are reasonably entitled to believe that the drawing of weapons is necessary to gain control of a fluid situation and ensure the safety of all involved); Bellotte v. Edwards, 629 F.3d 415, 425-26 (4th Cir. 2011) (same); see also United States v. Sinclair, 983 F.2d 598, 602-03 (4th Cir. 1993) (holding officers acted reasonably in drawing weapons when stopping suspected drug traffickers, even when officers had no reason to believe suspects were armed and dangerous). Thus, to the extent that the SEU Officers directly "pointed" their firearms at the Plaintiffs, as is alleged in the Second Amended Complaint, the SEU Officers would have done so in conformance with clearly established law.[2]

For these reasons, Plaintiffs' Claim Eight in their Second Amended Complaint, which is the only claim asserted against the SEU Defendants, should be dismissed, and the SEU Defendants should be dismissed as parties from this action.

II. **Emancipate NC lacks standing to pursue claims based on the warrant execution in this case, and should thus be dismissed for lack of standing.**

The SEU Defendants also move to dismiss Emancipate NC as a plaintiff, under Rule 12(b)(1) of the Federal Rules of Civil Procedure, because Emancipate NC lacks standing to assert claims based on the warrant execution at issue in this case.

Federal courts have jurisdiction only to resolve actual cases or controversies. Simon v. E. Kentucky Welfare Rights Org., 426 U.S. 26, 37 (1976). A threshold question in determining whether a federal court has jurisdiction is whether the plaintiff has standing under Article III of

---

[2] While the Plaintiffs claim that they were frightened by having firearms pointed at them, whether the Plaintiffs were frightened is not the relevant question. Instead, the relevant question is whether the SEU Defendants would have violated clearly established law in pointing their firearms at the Plaintiffs. The answer to that question, under Fourth Circuit precedent, is no. See Unus, 565 F.3d at 118-19 ("To be sure, the federal agent defendants' forced entry into the Unus residence must have been a harrowing experience for the plaintiffs. The federal agent defendants were entitled, however, to exercise lawful force in entering the Unus residence, and they thus acted reasonably in drawing and pointing their weapons.").

8

the United States Constitution. Id. The Article III standing inquiry "focuses <u>on the party</u> seeking to get his complaint before a federal court and <u>not on the issues</u> [that party] wishes to have adjudicated." Id. at 38 (emphasis added).

To satisfy Article III standing, a plaintiff must show that it suffered (1) an injury in fact, (2) that is fairly traceable to the defendant's alleged misconduct, and (3) is likely to be redressed by a favorable decision. <u>Lane v. Holder</u>, 703 F.3d 668, 671 (4th Cir. 2012). The standing inquiry is the same for an organizational plaintiff as it is for an individual plaintiff. Id. at 674. An organization suing on its own behalf must have suffered an injury in fact that <u>impeded its purpose</u> with an associated drain on its resources. Id.

"[A]n organization's abstract concern with a subject that could be affected by an adjudication" is not sufficient to demonstrate injury for standing purposes. <u>Simon</u>, 426 U.S. at 40. Further, "a 'mere interest in a problem,' no matter how longstanding the interest and no matter how qualified the organization is in evaluating the problem" does not confer standing on an organization. <u>Sierra Club v. Morton</u>, 405 U.S. 727, 739 (1972) (finding organizational plaintiff, whose mission was to protect the environment, lacked standing to challenge a proposed development that allegedly contravened federal laws).

Moreover, a "mere expense" does not constitute an injury in fact sufficient to confer standing on an organizational plaintiff. <u>Lane</u>, 703 F.3d at 675. While a "diversion of resources" may cause harm to an organization, such harm is insufficient to constitute an injury in fact for purposes of Article III standing if the diversion results from the organization's <u>budgetary choices</u> rather than <u>the defendant's alleged misconduct</u>. Id. at 675. Significantly, an organization does not suffer a cognizable injury sufficient to satisfy Article III simply by responding to member inquiries or undertaking litigation. Id.

9

Applying these principles shows that Emancipate NC lacks standing here. Emancipate NC's stated mission is to end mass incarceration and racism in the legal system. DE 93 ¶ 196. One way Emancipate NC does that is by serving as a resource for individuals who have been subject to police misconduct, and filing lawsuits to redress such conduct. See id. ¶¶ 196, 198-200. However, to have standing, Emancipate NC would have to show that the conduct of which it complains is not just an alleged instance of the type of conduct that the organization seeks to eradicate, and one on which the organization has decided to focus, but, instead, that the conduct at issue has <u>prevented</u> Emancipate NC from carrying out its mission to eradicate such conduct. <u>Sierra Club</u>, 405 U.S. at 739; <u>Simon</u>, 426 U.S. at 40; <u>Lane</u>, 703 F.3d at 674-75. That Emancipate has not done and cannot do on the facts of this case.

This case involves the execution of a warrant on May 21, 2020, in Raleigh, North Carolina. <u>See</u> DE 93 ¶ 118. There are no allegations in the Second Amended Complaint that demonstrate that this warrant execution impeded Emancipate NC from carrying out its mission to end mass incarceration and structural racism, nor that this warrant execution drained Emancipate NC's resources. <u>See id.</u> ¶¶ 196-201. Rather, Emancipate NC—which was not a plaintiff when the original complaint in this matter was filed—has made a choice to focus on the warrant execution in this case, and the events that led up to it, because Emancipate NC has made a determination that doing so is consistent with Emancipate NC's mission, which includes calling attention to, and seeking redress for, alleged instances of police misconduct. <u>See</u> DE 2. This choice, which may have affected Emancipate NC's budget, does not constitute a constitutional injury, and it does not confer standing on Emancipate NC to be a party plaintiff in this lawsuit. <u>See</u> <u>Lane</u>, 703 F.3d at 674-75; <u>see also</u> <u>Sierra Club</u>, 405 U.S. at 739; <u>Simon</u>, 426 U.S. at 40.

For this reason, and those explained more fully in the City Defendants' analogous motion to dismiss, memorandum in support, and reply brief, DE 59, 60, 102, & 104, which the SEU Defendants adopt, Emancipate NC should be dismissed as a party plaintiff from this action.

## CONCLUSION

Based on the foregoing, the SEU Defendants respectfully request that this Court dismiss Plaintiffs' Claim Eight, which is the only claim asserted against the SEU Defendants, and that the Court thus dismiss the SEU Defendants as party defendants from this action. The SEU Defendants also respectfully request that Emancipate NC be dismissed as a party plaintiff because it lacks standing to pursue claims based on the warrant execution at issue in this case.

Respectfully submitted,

This the 18th day of October 2022.

/s/ Leslie C. Packer
Leslie C. Packer
N.C. State Bar No. 13640
Michelle A. Liguori
N.C. State Bar No. 52505
ELLIS & WINTERS LLP
P.O. Box 33550
Raleigh, North Carolina 27636
Telephone: (919) 865-7000
Facsimile: (919) 865-7010
leslie.packer@elliswinters.com
michelle.liguori@elliswinters.com

*Counsel for SEU Officer Defendants*

# CERTIFICATE OF SERVICE

I hereby certify that on October 18, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which sends notification of such filling to all counsel of record as follows:

Abraham Rubert-Schewel
Tin Fulton Walker & Owen, PLLC
119 E. Main Street
Durham, NC 27701
schewel@tinfulton.com
*Counsel for Plaintiffs*

Emily Gladden
Tin Fulton Walker & Owen, PLLC
204 N. Person Street
Raleigh, NC 27601
egladden@tinfulton.com
*Counsel for Plaintiffs*

Michael Littlejohn, Jr.
Littlejohn Law, PLLC
PO Box 16661
Charlotte, NC 28297
mll@littlejohn-law.com
*Counsel for Plaintiffs*

Ian Mance
Elizabeth Simpson
Emancipate NC, Inc.
ian@emancipatenc.org
elizabeth@emancipatenc.org
*Counsel for Plaintiffs*

Jason Benton
Parker Poe Admads & Bernstein, LLP
620 South Tyson Street, Suite 800
Charlotte, NC 28202
jasonbenton@parkerpoe.com
*Counsel for Defendant Abdullah*

Rodney Pettey
Samuel Thompson, Jr.
Yates McLamb & Weyher, LLP
PO Box 2889
Raleigh, NC 27602

*Counsel for Defendants Monroe, Rattelade, and Gay*

Norwood Blanchard, III
Crossley McIntosh Collier, & Edes, PLLC
5002 Randall Parkway
Wilmington, NC 28403
norwood@cmclawfirm.com
*Counsel for Defendant Rolfe*

Dorothy V. Kibler
City of Raleigh
PO Box 590
Raleigh, NC 27602
Dorothy.kibler@raleighnc.gov
*Counsel for Defendants City of Raleigh, Chief of Police Estella Patterson, and City Manager Marchell Adams-David*

        /s/ Leslie C. Packer
        Leslie C. Packer
        Michelle A. Liguori

        *Counsel for SEU Officer Defendants*