IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:22-cv-00068-BO

YOLANDA IRVING, et al.,

Plaintiffs,

v.

THE CITY OF RALEIGH, et al.,

Defendants.

**CITY OF RALEIGH AND OFFICIAL CAPACITY DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR A PROTECTIVE ORDER**

Pursuant to Federal Rule of Civil Procedure 26(c), defendants City of Raleigh, Chief of Police Estella Patterson ("Chief Patterson") in her official capacity, and City Manager Marchell Adams-David in her official capacity (collectively the "City") move the Court for a protective order forbidding the deposition of Chief Patterson noticed for November 2, 2022. As explained further below, Chief Patterson is a high-ranking official who does not have unique personal knowledge of the relevant facts and other means for obtaining the information sought exist. A protective order is necessary to prevent the disruption in her official duties and to prevent the harassment of, and undue burden on, her.

## NATURE OF THE CASE

This case arises out of the issuance of a search warrant for 1628 Burgundy Street, Apartment B, in Raleigh, North Carolina ("Apartment B"), on May 21, 2020 based on an alleged undercover purchase of heroin at this location by a confidential informant. (*See generally* Second Am. Comp., ECF No. 93, ¶¶ 101-13). Plaintiffs filed this action on February 22, 2022. After several Defendants, including the City of Raleigh, filed motions to dismiss, Plaintiffs filed an

amended complaint, adding Chief Patterson as a defendant only in her official capacity, among other things. (ECF No. 41).

On July 6, 2022, the Court entered a Scheduling Order, bifurcating discovery and dispositive motions into two phases. (*See* ECF No. 69 at 1). Phase I concerns the individual defendants' liability, and Phase II concerns the City's liability under *Monell*.[1] (*See id.*; Rule 26(f) Plan, ECF No. 49, at 2-3). On July 21, 2022, Plaintiffs noticed depositions of several current and one former Raleigh Police Department ("RPD") officers to be taken by stenographic and video means over the course of one week, concluding with Chief Patterson's deposition on November 2, 2022.[2] (Ex. 1).

On August 31, 2022 and with leave of Court, Plaintiffs filed their Second Amended Complaint, adding additional RPD officers as defendants. (ECF No. 93). Against the City, Plaintiffs bring four claims under 42 U.S.C. § 1983 based on *Monell* and seek compensatory damages and injunctive and declaratory relief.

## STATEMENT OF FACTS

According to Plaintiffs' allegations, prior to the issuance of the subject search warrant, defendant Omar Abdullah, a member of the RPD Vice unit, recruited a confidential informant, Dennis Williams, to work with the RPD. (Second Am. Compl., ECF No. 93, ¶¶ 44, 60, 70). Abdullah, Williams, and the defendant Vice officers allegedly conspired over a six-month period from 2019 to 2020 to fabricate heroin charges against, and wrongfully arrest, over 15 individuals. (*See id.* ¶¶ 73-76).

---

[1] *Monell v. Department of Social Services*, 436 U.S. 658 (1978).
[2] Recently, Plaintiffs amended this notice of depositions, rescheduling all depositions except those of one RPD officer and Chief Patterson.

2

On May 21, 2020, Abdullah obtained a search warrant for Apartment B, the home of Plaintiff Yolanda Irving and her children. (*Id.* ¶¶ 101, 113). Plaintiffs allege that the warrant falsely claimed that Williams had purchased heroin at Apartment B and that RPD detectives had seen Williams entering Apartment B. (*Id.* ¶¶ 109-11). Plaintiffs further allege that the warrant resulted in the defendant Selective Enforcement Unit ("SEU") officers bursting unannounced into Apartment B as well the apartment next door, the home of Plaintiff Kenya Walton and her children. (*Id.* ¶¶ 2, 116-17, 126, 134). In addition to these events, Plaintiffs allege that SEU officers improperly executed five other search warrants from December 2019 to April 2021. (*See id.* ¶¶ 168-69).

On May 22, 2020, Williams was suspended as a confidential informant. (*Id.* ¶ 152). Several months later, Abdullah was placed on administrative leave and ultimately terminated from RPD. (*Id.* ¶¶ 153-54). Abdullah currently faces an indictment charging him with felony obstruction of justice, apparently related to the search warrant he obtained for Apartment B on May 21, 2020. (*See* Def.'s Br. Supp. Mot. to Stay, ECF No. 119, at 4).

## ARGUMENT

Pursuant to Rule 26(c), and for good cause, the Court may issue an order protecting a person "from annoyance, embarrassment, oppression or undue burden or expense" by forbidding discovery, among other things. Fed. R. Civ. P. 26(c)(1). "It is well established that high-ranking government officials may not be deposed or called testify about their reasons for taking official actions absent 'extraordinary circumstances.'" *In re McCarthy*, 636 F. App'x 142, 143 (4th Cir. 2015) (citing cases); *see also Blakenship v. Fox News Network, LLC*, No. 2:19-cv-00236, 2020 WL 7234270, at *6 (S.D. W. Va. Dec. 8, 2020) ("A 'party must demonstrate exceptional circumstances justifying the deposition' of a high-ranking government official." (collecting cases)). In this vein, to justify taking

3

a high-ranking government or corporate officer's deposition, exceptional circumstances may be shown by demonstrating "that the official has unique first-hand knowledge related to the litigated claims or that the necessary information cannot be obtained through other, less burdensome or intrusive means." *Lederman v. N.Y.C. Dep't of Parks & Recreation*, 731 F.3d 199, 203 (2d Cir. 2013) (citing cases); *see also Smithfield Bus. Park, LLC v. SLR Int'l Corp.*, No. 5:12-cv-282-F, 2014 WL 547078, at *2 (E.D.N.C. Feb. 10, 2014) ("[B]efore a plaintiff may depose a corporate defendant's high ranking officer, the plaintiff must show '(1) the executive has unique or special knowledge of the facts at issue and (2) other less burdensome avenues for obtaining the information sought have been exhausted.'" (quoting *Performance Sales & Mktg., LLC*, No. 5:07-cv-00140-RLV, 2012 WL 4061680, at *3-4 (W.D.N.C. Sept. 14, 2012)). Protecting these officials from routinely being deposed or called to testify is necessary "because they have 'greater duties and time constraints than other witnesses.' If courts did not limit these depositions, such officials would spend 'an inordinate amount of time tending to pending litigation.'" *Id.* (citations omitted).

The doctrine—frequently referred to as the "apex" doctrine—is rooted in Rule 26 to "ensur[e] that the liberal rules of procedure for depositions are used only for their intended purpose and not as a litigation tactic to create undue leverage by harassing the opposition or inflating its discovery costs." *Performance Sales*, 2012 WL 4061680, at *3.

> Put simply, the apex doctrine is the application of the rebuttable presumption that the deposition of a high-ranking corporate executive either violates Rule 26(b)(2)(C)'s proportionality standard or, on a party's motion for a protective order, constitutes "good cause" for such an order as an "annoyance" or "undue burden" within the meaning of Rule 26(c)(1). Should the deposing party fail to overcome this presumption, the court must then limit or even prohibit the deposition.

*Id.* at *4.

Numerous courts have applied the apex doctrine to bar the depositions of high-ranking law enforcement officers in § 1983 cases when a plaintiff asserts a *Monell* claim. *See, e.g., Topete v. City*

*of Mesa*, No. CV-18-03127-PHX-ROS (ESW), 2020 WL 8872800, at *2 (D. Az. Apr. 29, 2020) (granting motion for protective order preventing the former chief of police's deposition where the plaintiff had not shown the former chief "has unique first-hand, non-repetitive knowledge of material facts" and had not pursued depositions of "witnesses who are familiar with the enactment of policies and procedures and the training of officers relevant to Plaintiff's *Monell* claims"); *Fletcher v. Whittington*, No. 5:18-cv-01153, 2020 WL 11272098, at *2 (W.D. La. Feb. 18, 2020) (concluding the plaintiff had failed to show the sheriff "has individual knowledge of the case that cannot be obtained from non-Apex witnesses" and granting motion for protective order prohibiting his deposition); *Watts v. Parr*, No. 1:18-cv-079 (LAG), 2019 WL 13175550, at *3 (M.D. Ga. Oct. 24, 2019) (barring the plaintiff from deposing the sheriff because the plaintiff failed to show the sheriff "has any unique knowledge about the [search and seizure] policy in effect in 2016 or that this information could not be obtained by other, less burdensome means"); *Sargent v. City of Seattle*, No. C12-1232 TSZ, 2013 WL 1898213, at *4-5 (W.D. Wash. May 7, 2013) (concluding the plaintiff had not shown that the police chief had personal information pertaining the material facts or that the city's relevant policies and procedures could not be obtained from another source, such as a Rule 30(b)(6) witness); *Spadaro v. City of Miramar*, No. 11-61607-CIV, 2012 WL 3614202, at *3-4 (S.D. Fla. Aug. 21, 2012) (overruling the plaintiff's objections to the magistrate judge's order granting the city's motion for a protective order because the plaintiff did not provide sufficient allegations for the Court to conclude that the police chief and assistant police chief possessed relevant information or that information could not be obtained from lower level employees). The same rationale applies here to preclude the deposition of Chief Patterson.

As Chief of Police, Chief Patterson "oversee[s] and direct[s] all activities of the RPD," (Patterson Decl. ¶ 3), the State's second largest municipal police department and third largest law

enforcement agency, with approximately 800 employees, (*id.* ¶ 2). She "serve[s] as its official representative." (*Id.* ¶ 3). Also, she is "directly responsible for the Department's promotions, selection of new employees, submission of the annual budget, and fiscal management, among other duties." (*Id.*) Accordingly, she easily qualifies as a high-ranking government official. *See Spadaro*, 2012 WL 3614202, at *2 ("Numerous cases have held that police chiefs are high-ranking government officials who may not be deposed absent extraordinary circumstances.") (citing cases).

Despite this status and the fact that the parties are not engaged in Phase II/*Monell* discovery, Plaintiffs "intend to question Chief Patterson on the department's policies and procedures related to the claims in the lawsuit." (Ex. 3). Notably, Plaintiffs do not suggest Chief Patterson had any personal involvement in the events complained of. Nor could they, as she was not employed by the City at the time of those events and lacks personal knowledge of them. (*See* Ex. 2, Patterson Decl. ¶¶ 5-6). Her knowledge is second-hand, coming through the City's attorneys and other supervisors with knowledge. (*Id.* ¶ 6).

Because she was not employed by the City at the time of the alleged events, she is not responsible for the RPD's policies and procedures that existed at that time. Similarly, any alleged violation of policy or procedure occurred prior to her employment. Furthermore, Plaintiffs allege only two things which have occurred since Chief Patterson's appointment—Abdullah's termination and a February 2022 media interview. (Second Am. Compl., ECF No. 93, ¶¶ 154, 291). Neither is material to Plaintiffs' claims given that Chief Patterson did not make the final Departmental decision to terminate Abdullah's employment (nor hear his appeal) or make any statements in the interview in reference to this case. (*See* Ex. 2, Patterson Decl., ¶¶ 7-8). In the absence of Chief Patterson's unique personal knowledge related to the facts at issue and because *Monell* discovery is not permitted now,

there is only one explanation for Plaintiffs' decision to notice her deposition: to harass and embarrass her. On this ground alone, the Court should prohibit Chief Patterson's deposition.

Aside from their inability to show Chief Patterson has unique personal knowledge, Plaintiffs cannot demonstrate that the relevant RPD's policies and procedures cannot be obtained from other sources, such as written discovery or deposing other persons. In fact, the City has previously produced to Plaintiffs copies of the RPD policies and procedures from January 2018 to the present, as they requested. The parties have yet to begin the depositions of any RPD officers. Any further information Plaintiffs may seek about RPD policies and procedures is appropriately obtained through a Rule 30(b)(6) deposition. However, that must occur, if at all, during Phase II/*Monell* discovery. Plaintiffs have not exhausted these less burdensome means of discovery. Failing to do so, they should not be allowed to depose Chief Patterson, particularly during Phase I discovery.

Additionally, allowing Plaintiffs to take Chief Patterson's deposition would be disruptive to her official duties. In light of the recent mass shooting in the City, Chief Patterson has devoted, and continues to devote, time supporting the deceased and injured officers' families, providing guidance to the Department, and maintaining connection with the community. (Ex. 2, Patterson Decl. ¶ 10). Also, the RPD has recently experienced, and expects to experience in the next month, several high-level retirements, including a Deputy Chief, whose position has not been filled. (*Id.*) With these events, it is extremely important that Chief Patterson "maintain [her] focus and involvement with day-to-day activities of the Department." (*Id.*) As a part of her leadership responsibilities, Chief Patterson is obligated to be out of State on November 2, 2022, the date Plaintiffs noticed for her deposition. (*Id.*) Under the circumstances, deposing her would significantly interfere with the performance of her duties on behalf the RPD.

In conclusion, exceptional circumstances do not exist to justify taking the deposition of the City's highest ranking law enforcement officer. Rather, good cause exists to preclude her deposition. She lacks unique personal knowledge of the relevant facts; other sources of discovery regarding RPD policies and procedures exist; and her need to remain focused on her official duties is particularly important considering recent events in the City and RPD. To prevent the harassment and burdening of Chief Patterson, the Court should grant the motion for a protective order and forbid the taking of her deposition.

Respectfully submitted, this the 19th day of October 2022.

**CITY OF RALEIGH**
**Robin L. Tatum, City Attorney**

By: /s/ Dorothy V. Kibler
DOROTHY V. KIBLER
Deputy City Attorney
N.C. Bar No. 13751

By: /s/ Amy C. Petty
AMY C. PETTY
Senior Associate City Attorney
N.C. Bar No. 20894
PO Box 590
Raleigh, NC 27602
Tel: (919) 996-6560
Fax: (919) 996-7021
Dorothy.Kibler@raleighnc.gov
Amy.Petty@raleighnc.gov

*Counsel for Defendants City of Raleigh, Chief of Police Estella Patterson, and City Manager Marchell Adams-David*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:22-cv-00068-BO

YOLANDA IRVING, et al., )
)
        Plaintiffs, )
)
v. ) **CERTIFICATE OF SERVICE**
)
THE CITY OF RALEIGH, et al. )
)
        Defendants. )

I hereby certify that on October 19, 2022, I electronically filed the foregoing **CITY OF RALEIGH AND OFFICIAL CAPACITY DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR A PROTECTIVE ORDER** with the Clerk of Court using the CM/ECF system, which sends notification of such filing to all counsel of record as follows:

| | |
|---|---|
| Abraham Rubert-Schewel<br>Tin Fulton Walker & Owen, PLLC<br>119 E. Main Street<br>Durham, NC 27701<br>schewel@tinfulton.com<br>*Counsel for Plaintiffs* | Jason Benton<br>Daniel Peterson<br>Jessica Dixon<br>Parker Poe Adams & Bernstein, LLP<br>620 South Tyson Street, Suite 800<br>Charlotte, NC 28202<br>jasonbenton@parkerpoe.com<br>jessicadixon@parkerpoe.com<br>*Counsel for Defendant Abdullah* |
| Emily Gladden<br>Tin Fulton Walker & Owen, PLLC<br>204 N. Person Street<br>Raleigh, NC 27601<br>egladden@tinfulton.com<br>*Counsel for Plaintiffs* | Rodney Pettey<br>Yates McLamb & Weyher, LLP<br>PO Box 2889<br>Raleigh, NC 27602<br>rpettey@ymwlaw.com<br>*Counsel for Defendants Monroe, Rattelade, and Gay* |
| Michael Littlejohn, Jr.<br>Littlejohn Law, PLLC<br>PO Box 16661<br>Charlotte, NC 28297 | Norwood Blanchard, III<br>Crossley McIntosh Collier, & Edes, PLLC<br>5002 Randall Parkway<br>Wilmington, NC 28403 |

mll@littlejohn-law.com
*Counsel for Plaintiffs*

Ian Mance
Elizabeth Simpson
Emancipate NC, Inc.
ian@emancipatenc.org
elizabeth@emancipatenc.org
*Counsel for Plaintiffs*

norwood@cmclawfirm.com
*Counsel for Defendant Rolfe*

Leslie Packer
Michelle Liguori
Ellis & Winters, LLP
PO Box 335500
Raleigh, NC 27636
Leslie.Packer@elliswinters.com
Michelle.Liguori@elliswinters.com
*Counsel for Defendants Garner, McDonald, Twiddy, Mead, Ortiz, Perrin, Thompson, Mollere, Webb, and Debonis*

**CITY OF RALEIGH**
**Robin L. Tatum, City Attorney**

By: /s/ Amy C. Petty
AMY C. PETTY
Senior Associate City Attorney
N.C. Bar No. 20894
PO Box 590
Raleigh, NC 27602
Tel: (919) 996-6560
Fax: (919) 996-7021
Amy.Petty@raleighnc.gov

*Counsel for Defendants City of Raleigh, Chief of Police Estella Patterson, and City Manager Marchell Adams-David*