IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

Case No. 5:22-CV-00068-BO

| | |
|---|---|
| YOLANDA IRVING, et al., <br><br> Plaintiffs, <br><br> v. <br><br> THE CITY OF RALEIGH, et al., <br><br> Defendants. | **REPLY BRIEF IN SUPPORT OF DEFENDANT OMAR I. ABDULLAH'S MOTION TO STAY PROCEEDINGS** |

Plaintiffs' opposition to Defendant Omar I. Abdullah's ("Abdullah") Motion to Stay Proceedings and Alternative Motion for Partial Stay of Discovery hangs largely on Plaintiffs' unsupported assertion that any stay of this civil matter would necessarily be interminable because Abdullah's criminal liability "goes far deeper" than the single felony obstruction of justice charge he is currently awaiting trial on and the "threat of criminal prosecution will continue to haunt [him]." (Doc. 128, p. 2, hereinafter referred to as "Response"). Plaintiffs further contend that the prejudice they would suffer in the form of lost evidence and difficulty recovering a monetary judgment in the event a complete or partial stay is granted warrants denial of Abdullah's request. Neither argument carries the day for Plaintiffs.

**I.    There was no delay by Abdullah in seeking this stay.**

As part of the procedural history of this case offered by Plaintiffs, they note that a Rule 26(f) conference was held before the Honorable Robert Numbers on June 27, 2022 at which time Plaintiffs' counsel asked whether any defendant intended to invoke his or her Fifth Amendment privilege in this action. (Response, p 4). Defense counsel did not respond. Id. Plaintiffs are correct. What they neglect to include, however, is that at that time, there was no criminal

indictment against Abdullah. Indeed, as Plaintiffs reference elsewhere in their Response, the indictment against Abdullah was not issued until a month later, on July 26, 2022. (Response, p 10). Undersigned counsel for Abdullah had no reason to anticipate that an indictment or criminal charges would be forthcoming as of the date of the Rule 26(f) conference. Once Abdullah was made aware of criminal charges and the significant issues surrounding simultaneous parallel civil and criminal proceedings concerning the same matter, and with written discovery responses due in September and party depositions scheduled to take place in October, he promptly filed this Motion on September 19, 2022. (Doc. 118).[1]

## II. The constitutional burden Abdullah faces by simultaneously participating in this civil action and the parallel criminal proceeding outweighs any prejudice to Plaintiffs occasioned by a stay.

Plaintiffs cite the correct legal standard for consideration of a motion to stay in this Court. However, they misapply it in this case. Plaintiffs conflate suffering *some* prejudice with the *substantial* prejudice required to defeat a motion to stay where a civil party's Fifth Amendment privilege is squarely implicated. Courts do not contemplate that plaintiffs will not be inconvenienced or prejudiced in some manner by a stay of their civil lawsuits in the face of a parallel criminal action. Indeed, if this were not the case, plaintiffs would presumably generally consent to such motions. Rather, given the gravity of a party's Fifth Amendment right against self-incrimination, plaintiffs opposing a stay must show they would suffer *real and substantial* prejudice if their actions were stayed. Plaintiffs have not done – and cannot do – this.

Plaintiffs argue that the prejudice to them will be "great" if this litigation is stayed and that the motion to stay should, therefore, be denied. (Response, p 13). Specifically, Plaintiffs maintain that while waiting for resolution of the pending criminal case against Abdullah, "the memories of

---

[1] Most of the party depositions have since been re-scheduled to November and December. Plaintiffs now seek to depose Abdullah on December 15, 2022.

*Officer Abdullah's colleagues and co-defendants* – who will be the key witnesses in this litigation – will undoubtedly fade" and emails, text messages and other evidence will be difficult to obtain. (Response, p. 14). Curiously, however, Plaintiffs' fear of fading memories and lost evidence only became an issue once Abdullah sought a stay. Their professed interest in preserving evidence certainly did not motivate them to promptly file suit, as they waited nearly *two years* to commence this action. Additionally, and notably, Plaintiffs are already in possession of the voluminous State Bureau of Investigation ("SBI") file concerning the allegations in this matter, which file contains multiple witness interviews and statements – including interviews and statements by the co-defendants – obtained during its multi-year investigation. Accordingly, the SBI has already conducted the gathering and preservation of much of the evidence Plaintiffs suggest might be lost during a stay. Indeed, the witness interviews and statements can be used to mitigate against any fading memories of such witnesses. Further, if the risk of fading memories of the co-defendants and "key witnesses" is still a concern, this can be sufficiently mitigated by a partial stay of discovery in this matter, prohibiting any discovery or deposition of Abdullah only from going forward.

Plaintiffs cite two cases in which courts in this Circuit have found that plaintiffs may suffer prejudice in the form of a deterioration of evidence due to the delay associated with a stay: In re Phillips, Beckwith & Hall, 896 F. Supp. 553 (E.D. Va. 1995) and Avalonbay Communities v. San Jose Water Conservation Corp., No. 07-306, 2007 WL 2481291 (E.D. Va. Aug. 27, 2007) (Response, p. 12). What Plaintiffs conveniently omit, however, is that the defendants seeking stays in both cases were *not* under criminal indictment. Avalonbay Communities, No. 07-306, at *2 ("The burden on Defendants is not sufficient to outweigh Plaintiff's prejudice because Defendants have not been indicted and do not have to prepare a defense in simultaneous cases.");

In re Phillips, 896 F.Supp. at 558 (dissolving existing stay where "no charges have been filed, and it is currently unclear when, if ever, any charges will be brought" against attorneys and employees of defendant law firm.)[2] This distinction is an important one given that federal courts have consistently held that a stay is most appropriate where a party is under indictment for a serious offense. Avalonbay Communities, No. 07-306, at *3; Suntrust Mortg., Inc. v. Busby, Nos. 2:09 CV 3 -15, 2009 WL 4801347, at *7 (W.D.N.C. Dec. 7, 2009); Securities and Exchange Comm'n v. Dresser Indus., Inc. 628 F.2d 1368, 1376 (D.C. Cir. 1980). In this case, Abdullah is under indictment for a felony criminal offense and, unlike the defendant movants in In re Phillips and Avalonbay Communities, his Fifth Amendment privilege against self-incrimination is "under real and present duress." Busby, 2009 WL 4801347, at *7.

Plaintiffs posit that there is "no clear end in sight" to Abdullah's criminal proceeding and a stay of this case would therefore be "inestimable" despite Abdullah's federal constitutional right to a speedy trial. (Response, pp 2, 14). However, based on their own authority, a North Carolina criminal defendant's right to a speedy trial generally "kicks in" after the one year mark. (Response, p 14) (citing Jeff Welty, *Speedy Trial*, N.C. CRIM. L. BLOG (UNC Sch. Gov't, March 10, 2009). A possible one-year stay of this civil action while the criminal action is allowed to progress and resolve is far shorter than the time that elapsed between the search of Plaintiffs' homes and the filing of this lawsuit.

---

[2] In re Phillips involved a government forfeiture proceeding against a law firm to forfeit attorney fees paid to the firm by a client charged with drug trafficking. 896 F. Supp. 553, 555. During the pendency of the forfeiture action, the government identified one of the firm's principals and the firm's bookkeeper as targets of a grand jury investigation for crimes including making false statements to government agents, falsification of documents, and tax offenses. Id. at 556. The law firm requested a stay on the basis of the Fifth Amendment dilemma these individuals would face should the government initiate criminal prosecution. Id. at 557. The Court *granted* the motion and stayed the forfeiture action for several months with the expectation that "further light would be shed on the government's intentions with respect to the criminal prosecutions." Id. However, when this expectation was not met, the Court, faced with whether to continue or dissolve the stay of the forfeiture action, opted to dissolve the stay where the "government remains uncertain even today whether it will proceed with criminal charges against any member or employee of the Phillips firm." Id.

As evidence of the "most severe" prejudice they would suffer if a stay of this action were granted, Plaintiffs point to the difficulty they may face in collecting a monetary judgment in this action. (Response, p. 15). According to Plaintiffs, *if* Abdullah is criminally convicted of obstruction of justice, the City of Raleigh *may* refuse to indemnify Abdullah's alleged misconduct and any civil judgment against him, which would therefore make recovery more difficult and costly for Plaintiffs. Id. Speculation aside, Plaintiffs overlook the fact that this is a potential issue *with or without a stay*. If, for instance, Plaintiffs successfully convince a jury that Abdullah conspired with a confidential informant to fabricate evidence as alleged in the Amended Complaint, then it is plausible that the City of Raleigh might still choose not to indemnify him – regardless of whether he has been convicted criminally of related offenses. Plaintiffs, therefore, cannot demonstrate any prejudice – much less "severe prejudice" – as to their ability to collect a monetary judgment *as a result of the stay*.

Unlike Plaintiffs, Abdullah would suffer real and irreparable harm if forced to choose between vigorously defending this action at the risk of incriminating himself criminally or remaining silent in this action at the risk of jeopardizing his civil defenses. Plaintiffs' concerns about stale evidence and difficult judgment collection certainly do not outweigh the hardship and inequity he would undeniably suffer if this civil action were not stayed. See In re Phillips, 896 F.Supp. at 558 ("[C]ourts have held that some attempt must be made to accommodate a civil litigant's Fifth Amendment concerns, and therefore a *stay should be granted if one party requests it and the other party will not be substantially prejudiced*.") (emphasis added).

**III. Plaintiffs' contention that Abdullah may face additional criminal charges is pure speculation.**

Plaintiffs complain that the stay Abdullah seeks will not "cure his Fifth Amendment dilemma" which dilemma "will continue indefinitely." (Response, pp 2, 15). Plaintiffs, however,

provide no support for this assertion. According to Plaintiffs, Abdullah and C.I. Williams conspired to fabricate heroin trafficking offenses and wrongfully arrest at least 15 individuals, 11 of whom were represented by Plaintiffs' counsel in a separate civil lawsuit, *Washington, et al. v. The City of Raleigh, et al.*, Case No. 21-CV-00194. (Response, p 2; Doc. 93 ¶ 73). This alleged conspiracy began, according to Plaintiffs, on or about August 16, 2018 and ended on May 21, 2020, the day of the raid on Plaintiff Irving and Plaintiff Walton's homes. (Response, p 6; Doc. 93 ¶¶ 63, 74-76). Plaintiffs further maintain that the SBI's investigation into this alleged conspiracy began on September 25, 2020. (Response, p 10). By Plaintiffs' own admission, then, the alleged scheme involving Abdullah and C.I. Williams ended and the SBI's investigation into it began *more than two years ago.*

Purportedly as a result of the SBI's "long-standing" investigation, Abdullah was indicted and charged with a single count of felony obstruction of justice in connection with statements made in a warrant application on May 21, 2020, the same day of the searches that are the subject of this civil suit[3] and the last date of alleged misconduct by Abdullah in furtherance of the conspiracy. Plaintiffs suggest that there are approximately 30 other controlled drug buys Abdullah made with the assistance of C.I. Williams for which Abdullah could face criminal prosecution. (Response, pp 2, 13). However, presumably, any criminal charges involving Abdullah's controlled buys with C.I. Williams that occurred *prior to* the searches of Plaintiff Irving's and Plaintiff Walton's homes would have been considered and brought by now. There is no indication that any other criminal charges are forthcoming. Indeed, neither Abdullah nor his attorneys (civil or criminal) have been informed that Abdullah is the target of any further criminal investigation.

---

[3] Although not specifically alleged in the Amended Complaint, Plaintiffs state in the Response that Abdullah also made false statements to a magistrate in connection with charging Marcus VanIrvin with trafficking heroin on May 21, 2020. (Response, p 11).

While Plaintiffs' counsel may be "explor[ing] the roughly 30 prior fabricated controlled buys" conducted by Abdullah and C.I. Williams, their interest in obtaining additional civil litigants and monetary judgements does not dictate the District Attorney's decision to initiate criminal prosecution. (Response, p 15).

Plaintiffs can only theorize that Abdullah *may* face further criminal prosecution as a result of his alleged conspiracy with C.I. Williams and *may* invoke his Fifth Amendment privilege in a related civil action *if* one were pending at that time. This hypothetical dilemma does not tip the scales in Plaintiffs' favor.

### IV. A partial stay of this action has no bearing on the public interest identified by Plaintiffs.

Plaintiffs claim their civil lawsuit raises significant public policy implications and that the public interest, therefore, justifies denial of a stay. These purported public policy implications relate to the alleged unconstitutional practices of the Raleigh Police Department in conducting No-Knock raids, executing search warrants, and supervising confidential informants. In short, they concern Plaintiffs' claims against the *City of Raleigh* for policies and practices employed by the *Raleigh Police Department*. Importantly, Abdullah was not a participant in any No-Knock entry into Plaintiffs' homes. There is no present danger that Abdullah – who is no longer employed with the Raleigh Police Department – will engage in the type of alleged misconduct about which Plaintiffs complain. In fact, based on Plaintiffs' Response, there is no longer any threat to the public of being subject to an allegedly unconstitutional raid given the City's representation that the Raleigh Police Department no longer conducts No-Knock raids. (Response, pp 16-17). A stay of this action, whether partial or complete, would not, therefore, substantially harm any public interest. See Dresser, 628 F.2d at 1376 ("If delay of the noncriminal proceeding would not seriously injure the public interest, a court may be justified in deferring it.").

## CONCLUSION

For the reasons discussed above, as well as those set forth in the Brief in Support of Defendant Omar I. Abdullah's Motion to Stay Proceedings (Doc. 119), Omar Abdullah respectfully requests that the Court grant his Motion to Stay Proceedings and enter an Order staying this civil action until resolution or disposition of the parallel criminal action. In the alternative, if the Court is not inclined to stay these civil proceedings in their entirety, Omar Abdullah respectfully requests that the Court enter a partial stay of discovery in this matter, and order that no interrogatories, requests for admission, or deposition of Abdullah shall be had until resolution or disposition of the parallel criminal action.

Respectfully submitted, this the 21st day of October, 2022.

/s/ Jason R. Benton
Jason R. Benton
N.C. State Bar No. 27710
Daniel E. Peterson
N.C. State Bar No. 41251
Jessica C. Dixon
N.C. State Bar No. 36719

**PARKER POE ADAMS & BERNSTEIN LLP**
Bank of America Tower
620 S. Tryon St., Suite 800
Charlotte, NC 28202
Telephone: (704) 372.9000
Facsimile: (704) 334.4706
Email: jasonbenton@parkerpoe.com
danielpeterson@parkerpoe.com
jessicadixon@parkerpoe.com

*Attorneys for Defendant Omar I. Abdullah*

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this date, the foregoing **Reply Brief in Support of Defendant Omar I. Abdullah's Motion to Stay Proceedings** was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send notification and serve same upon counsel of record via the Court's electronic case filing system.

This the 21st day of October, 2022.

/s/ Jason R. Benton
Jason R. Benton
N.C. State Bar No. 27710
Daniel E. Peterson
N.C. State Bar No. 41251
Jessica C. Dixon
N.C. State Bar No. 36719

**PARKER POE ADAMS & BERNSTEIN LLP**
Bank of America Tower
620 S. Tryon St., Suite 800
Charlotte, NC 28202
Telephone: (704) 372.9000
Facsimile: (704) 334.4706
Email: jasonbenton@parkerpoe.com
danielpeterson@parkerpoe.com
jessicadixon@parkerpoe.com

*Attorneys for Defendant Omar I. Abdullah*