IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Case No. 5:22-cv-0068-BO

YOLANDA IRVING, individually and as the natural parent and guardian of J.I., JUWAN HARRINGTON, CYDNEEA HARRINGTON, KENYA WALTON individually and as the natural parent and guardian of R.W., ZIYEL WHITLEY, DYAMOND WHITLEY, KAMISHA WHITLEY, NANETTA GRANT as the natural parent and guardian of Z.G., and
EMANCIPATE NC, INC.,

        *Plaintiffs*,

  v.

THE CITY OF RALEIGH, Officer OMAR I. ABDULLAH, Sergeant WILLIAM ROLFE, Officer RISHAR PIERRE MONROE, Officer JULIEN DAVID RATTELADE, and Officer MEGHAN CAROLINE GAY, Officer DAVID MEAD, Officer JESUS ORTIZ, Officer KYLE PERRIN, Officer MICHEAL MOLLERE, Officer KYLE THOMPSON, Officer VINCENT DEBONIS, Officer DANIEL TWIDDY, Officer THOMAS WEBB, Officer DAVID MCDONALD, Officer DAVID GARNER, Chief of Police ESTELLA PATTERSON and City Manager MARCHELL ADAMS-DAVID, in their official capacities.

        *Defendants*.

**PLAINTIFFS' BRIEF IN OPPOSITION TO THE SEU DEFENDANTS'
MOTION TO DISMISS**

1

Plaintiffs Yolanda Irving, Juwan Harrington, Cydneea Harrington, Kenya Walton, Ziyel Whitley, Dyamond Whitley, Kamisha Whitley, Nanetta Grant and Emancipate, NC ("Plaintiffs") hereby submit this memorandum in opposition to the Select Enforcement Unit Officers, David Mead, Jesus Ortiz, Kyle Perrin, Michael Mollere, Kyle Thompson, Vincent Debonis, Daniel Twiddy, Thomas Webb, David McDonald, and David Garner's ("SEU Defendants" or "Defendants") motion to dismiss the Second Amended Complaint pursuant to Rule 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiffs are ten Black women and children whose homes were illegally raided by officers in the Raleigh Police Department ("RPD").[1] On May 21, 2020, Officer Omar Abdullah and individual officers in the RPD VICE unit conspired to fabricate evidence which was used to procure an illegal search warrant. In addition to the fabricated evidence, the officers also wrote the incorrect address on the warrant which resulted in the raid of the homes of Plaintiffs who were entirely innocent of any offense.

RPD Selective Enforcement Unit ("SEU") officers executed the warrant and entered Plaintiffs' homes using "No Knock" or "Quick Knock" tactics in violation of the Fourth Amendment.[2] During the raid, the SEU officers pointed their assault weapons at Plaintiffs, including children as young as 12, while Plaintiffs were compliant and posed no threat to the officers. The SEU officers now move to dismiss the Second Amended Complaint ("SAC").

---

[1] Emancipate NC files suit as an organizational plaintiff.
[2] A "No Knock" raid or "No Knock" warrant is a colloquial term used to refer to the execution of a search warrant by law enforcement by entering a premises without warning, and without providing an opportunity for the occupants of the premises to voluntarily answer or open the door. SAC ¶ 3. The practice of law enforcement announcing itself and immediately entering a premises by force is known colloquially as a "Quick Knock." *Id.* ¶ 162.

2

First, the SEU Defendants allege the "sole claim" asserted against them is the Eighth Claim, for excessive force. This is incorrect. When Plaintiffs filed the SAC and added the names of SEU defendants, they listed each by name in the body of the Second Claim for Relief and stated that the SEU officers violated the Fourth Amendment when they illegally entered Plaintiffs' homes using "No Knock" or "Quick Knock" tactics. Plaintiffs, in the body of the Second Claim, went on to explain that Emancipate NC sought equitable relief, but that the individual Plaintiffs sought compensatory and punitive damages, remedies only available to claims against the individual SEU officers not the City Defendants.

The SEU Defendants are named in relation to the Fourth Amendment illegal entry in the following paragraphs of the SAC:

- 126 & 127: RPD SEU Officers Kyle Thompson and Vincent Debonis immediately burst into the Walton's apartment. Kenya Walton's apartment was not listed on the search warrant.

- 134: The SEU and VICE officers burst into the Irvings' apartment without knocking or announcing their intentions or cause to be at the premises

- 225 & 226: The RPD SEU Officers David Mead, Jesus Ortiz, Kyle Perrin, Michael Mollere, Kyle Thompson Vincent Debonis, Daniel Twiddy, Thomas Webb, David McDonald and David Garner, followed by Abdullah, Monroe, Rattelade, and Gay, in violation of the Fourth Amendment, entered the homes of Ms. Irving and Ms. Walton using "No Knock" or "Quick Knock" execution. As to this count, Plaintiff Emancipate NC seeks injunctive and declaratory relief; the Individual Plaintiffs seeks compensatory and punitive damages.

3

Plaintiffs have more than satisfied the pleading standard of Fed. R. Civ. P. 8(a)(2), which requires only "that the pleaded claim afford the opposing party fair notice of the nature and basis or grounds of the claim and a general indication of the type of litigation involved." *Labram v. Havel*, 43 F.3d 918, 920 (4th Cir. 1995). Plaintiffs have satisfied this standard through the detailed factual allegations against the SEU Defendants and by naming the SEU officers individually in the body of the Second Claim and stating that they had violated the Fourth Amendment through their illegal entry. Because the SEU Defendants have not moved to dismiss the Second Claim, and the allegations are properly pled, Plaintiffs must be permitted to proceed against the SEU Defendants for the illegal "No Knock" and "Quick Knock" entry of their homes.

Second, the SEU Defendants move to dismiss the Eighth Claim for relief and argue that they did not commit excessive force because they are protected by qualified immunity for the pointing of assault weapons at Plaintiffs. The SEU Defendants appear to ignore the binding precedent set out in *Bellotte v. Edwards*, 629 F.3d 415, 426 (4th Cir. 2011), which held that once an officer realizes that a suspect does not "pose an immediate threat to the safety of the officers or others," the officer should not use "force or weapons at all." Here, because Plaintiffs have alleged that the SEU Defendants continued to point firearms at Plaintiffs, many of whom were children—while they were compliant and clearly not a safety threat to the officers—the SEU Defendants are not entitled to qualified immunity.

Plaintiffs have already deposed two SEU defendants and are scheduled to depose more. Plaintiffs also recently sat for their depositions. The deposition testimony confirms that SEU Officers Mead and Ortiz were personally involved in the execution of this illegal raid and that the SEU Defendants continued to point firearms while Plaintiffs were compliant and not a safety

4

threat. This Court should deny the SEU Defendants' motion and allow discovery against the officers to continue.

## PROCEDURAL HISTORY

Plaintiffs filed suit in this matter on February 22, 2022. D.E. 2 (Complaint). In the initial Complaint, Plaintiffs were unaware of the identities of the SEU Defendants and named them as John and Jane Doe Officers. *Id.* On May 16, 2022, Plaintiffs amended their Complaint and added Emancipate NC as an organizational plaintiff seeking injunctive and declaratory relief. D.E. 41 (Amended Complaint).

On August 8, 2022, counsel for the SEU Defendants provided a letter to Plaintiffs identifying each of the SEU officers pictured in body camera footage of the raid of Plaintiffs' homes. On August 18, 2022, Plaintiffs filed a motion to amend and file a Second Amended Complaint ("SAC"). D.E. 89. The SAC named each of the individual SEU Defendants. *Id.* The Court granted Plaintiffs' motion to amend. D.E. 93 (SAC). On October 18, 2022, SEU Defendants filed the motion before the Court seeking to dismiss claim eight as well as seeking to dismiss Emancipate NC as a plaintiff for lack of standing. D.E. 129-130 (Motion to Dismiss).

## STATEMENT OF FACTS

**A.     RPD Officers Fabricate Evidence Using an Unreliable Confidential Informant**

In August of 2018, RPD VICE officers arrested Dennis Williams, a target who the officers suspected of selling cocaine. *Id.* ¶¶ 55-59. Mr. Williams was arrested after making a sale to a confidential informant employed by the RPD VICE unit. *Id.* He sold the confidential informant crushed Aspirin and claimed it was cocaine. *Id.* Mr. Williams was arrested and charged with selling fake narcotics. *Id.* After the arrest, RPD VICE Officers David Chadwick Nance and Omar Abdullah recruited Mr. Williams, who had a lengthy history of violent crime, to work as a confidential

5

informant for the VICE team. *Id.* ¶¶ 60-62. The VICE officers gave Mr. Williams the code name "Aspirin" because he had sold the confidential informant aspirin while claiming it was cocaine. *Id.*

On August 16, 2018, Informant Williams was approved to work as a confidential informant for the VICE team. *Id.* ¶ 63. Informant Williams and the VICE officers conspired to fabricate heroin trafficking charges and wrongfully arrest and seize over 15 individuals. *Id.* ¶ 74. As a result of these fabricated charges, many innocent bystanders, including the families of Yolanda Irving and Kenya Walton, had their homes illegally raided or were wrongfully seized. *Id.* ¶ 75. The first of the fabricated heroin arrests—involving the RPD VICE squad and Mr. Williams—occurred on or around November 29, 2019. *Id.* ¶ 76. The last occurred on May 21, 2020, and resulted in the illegal raid of the homes of Yolanda Irving and her family and Kenya Walton and her family.

**B.**     **RPD Officers and Informant Williams Fabricate Evidence to Procure a Warrant to Search the Home of Yolanda Irving and Her Family**

On May 21, 2020, Officer Abdullah applied for a warrant to search 1628 Burgundy St., Apt B, Raleigh, NC. *Id.* ¶ 101. The warrant application was based on a buy allegedly made by Mr. Williams at this location the day before. *Id.* ¶ 103. At the time of this alleged buy, Abdullah and the RPD VICE officers knew that Mr. Williams had repeatedly fabricated heroin buys and produced fake heroin that tested negative for a controlled substance. *Id.* ¶ 105. Abdullah and RPD VICE officers knew that all the alleged heroin purchased by Mr. Williams—that had been analyzed by the CCBI lab—had tested negative for a controlled substance. *Id.* ¶ 106. RPD VICE officers Monroe, Rattelade, and Gay informed Officer Abdullah on multiple occasions that the alleged heroin had field tested negative for a controlled substance, did not look like heroin, and was not packaged like heroin. *Id.* ¶ 107.

Still, Abdullah, with the knowledge of RPD VICE officers, falsely claimed in the search

6

Case 5:22-cv-00068-BO    Document 142    Filed 11/22/22    Page 6 of 17

warrant application that Mr. Williams had provided information in the past that "has always been proven to be truthful and reliable." *Id.* ¶ 108. The search warrant also falsely alleged that Mr. Williams had purchased heroin from an individual at 1628 Burgundy St, Apt B—the home of Yolanda Irving and her children. *Id.* ¶ 109. The RPD VICE officers knew that these statements were false, that Mr. Williams had been proven to be unreliable on numerous occasions, and that he should not have been used as a confidential informant. *Id.* ¶ 111. The RPD VICE officers also knew that Mr. Williams had not actually purchased any heroin and that no detectives had observed him entering the home of Yolanda Irving and her family (1628 B). *Id.* ¶ 112. Marcus Van Irving actually resided at 1620 Burgundy Street – the home with the red door and large tree in front which was pictured in the warrant. This combination of fabricated (existence of heroin) and mistaken (address of Van Irvin) information resulted in a warrant being issued to search the home of Yolanda Irving and her three children – all of whom are innocent of any criminal activity whatsoever. *Id.* ¶ 113.

**C. RPD VICE and SEU Officers Raid the Homes of Yolanda Irving and Kenya Walton**

On May 21, 2020, Yolanda Irving lived at 1628 Burgundy St, Apt B, with her three children, J.I., Juwan Harrington and Cydneea Harrington. *Id.* ¶¶ 114-115. Kenya Walton lived in the apartment next door, 1628 Burgundy St., Apt A, with her children R.W., Dyamond Whitley, Ziyel Whitley, and Kamisha Whitley. *Id.* ¶¶ 116-117. On the afternoon of May 21, J.I. was sitting outside on his front stoop hanging out with his neighbors Ziyel Whitley, Dyamond Whitley, and their friend, Z.G. *Id.* ¶ 118. At the time of this incident, J.I was 12 years old, Z.G. was 15 years old, Ziyel Whitley was 16 years old, and Dyamond Whitley was 18 years old. *Id.* ¶ 120.

As the kids were talking, they saw nearly 15 SEU officers in SWAT gear running directly at them and pointing assault rifles at them. *Id.* ¶ 121. The children, all Plaintiffs, did not match any description of any suspect, had not been involved in any criminal activity and were not suspected to have any involvement in narcotics. *Id.* ¶ 122.

Plaintiffs, seeing the heavily armed officers running at them with guns pointed, then fled into their homes. *Id.* ¶¶ 123-131. SEU officers David Mead, Jesus Ortiz, Kyle Perrin, Micheal Mollere, Daniel Twiddy, Thomas Webb, David McDonald and David Garner followed the children and barged open the door to 1628 B without knocking and announcing. *Id.* ¶ 134. The officers then pointed firearms in the face of Ziyel Whitley who had tripped and was sitting on the floor against the wall. *Id.* ¶¶ 133-135. The SEU officers then ran to the stairs and pointed their firearms at 18-year-old Cydneea Harrington who was standing with her arms raised at the top of the stairs in her pajamas. *Id.* ¶ 136. The officers continued to point their firearms at Cydneea as they ran up the stairs and then trained their firearms on her mother Yolanda Irving, who was at the top of the stairs also in her pajamas. *Id.* ¶ 137. The SEU officers then entered the room at the back of the hall—where Juwan Harrington, who is disabled, was sitting on his bed—and pointed their firearms at him as they ordered him to sit on the floor. *Id.* ¶¶ 139-141.

At the same time, at 1628 A, SEU officers barged into the apartment without knocking or announcing and without a warrant. *Id.* ¶¶ 126-127. The address to this home was nowhere on the warrant and the officers had no authority to enter this home whatsoever. SEU officers Thompson and Debonis ordered Dyamond Whitley, Kamisha Whitley, Ziquis Grant and Robert Whitley to all come downstairs with their hands raised. *Id.* ¶¶ 128-129. The plaintiffs all walked downstairs with their hands raised and the officers continued to point their firearms at the children as they

8

stood in the kitchen following the officers' instructions. *Id.* ¶ 277. No drugs or contraband were found in either apartment. *Id.* ¶ 146.

## ARGUMENT

I. **Standard of Review**

When ruling on a motion to dismiss, the Court must accept as true all factual allegations contained in the Complaint. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). The Court must also draw all reasonable inferences from those facts in Plaintiff's favor. *Edwards v. City of Goldsboro*, 178 F. 3d 231, 244 (4th Cir. 1999). A motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated. *Neal v. McNeil*, No. 5:15-CT-3284-BO, 2018 WL 9849368, at *2 (E.D.N.C. Sept. 12, 2018). A claim is stated if the Complaint contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

II. **Plaintiffs Bring Two Claims Against the SEU Defendants**

   A. **The SEU Defendants Illegally Entered Plaintiffs' Homes**

Plaintiffs have clearly alleged that the SEU Defendants violated the Fourth Amendment by their illegal entry of Plaintiffs' homes. Plaintiffs' second claim alleges that Ms. Irving's and Ms. Walton's children were standing outside in front of their apartments when SEU officers in SWAT gear started running towards them. D.E. 93 ¶ 223 (Second Amended Complaint). Terrified, the children turned and ran into their homes. *Id.* ¶ 224 "RPD SEU officers David Mead, Jesus Ortiz, Kyle Perrin, Micheal Mollere, Kyle Thompson, Vincent Debonis, Daniel Twiddy, Thomas Webb, David Mcdonald and David Garner . . . in violation of the Fourth Amendment, entered the homes of Ms. Irving and Ms. Walton using "No Knock" or "Quick

9

Knock" execution." *Id.* ¶ 225. Plaintiffs then state that as a remedy, "the Individual Plaintiffs seek[] compensatory and punitive damages." ¶ 226.

Under Fed. R. Civ. P. 8(a)(2), a complaint need only set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." "All that is required is that the pleaded claim afford the opposing party fair notice of the nature and basis or grounds of the claim and a general indication of the type of litigation involved." *Labram v. Havel*, 43 F.3d 918, 920 (4th Cir. 1995); *see also Sansotta v. Town of Nags Head,* 724 F.3d 533, 548 (4th Cir. 2013) ("We see no reason why the [plaintiffs] needed to use any special phrasing in their complaint, as this complaint gave the [defendant] 'fair notice' of the [plaintiffs'] claims.").

Perhaps Defendants will argue that they did not receive proper notice because the second claim's heading did not include the SEU Defendants, but only listed the City and Official Capacity Defendants. This argument would ignore the pleading standard set out in the federal rules. *See, e.g. Wenzel v. Knight*, No. 3:14-CV-432, 2015 WL 3466863, at *12 (E.D. Va. June 1, 2015) finding that, "although mislabeled in the heading, the allegations within Count V give sufficient notice to A8A and AFM of the negligence claim.") (citing *Labram v. Havel,* 43 F.3d 918, 920 (1995) ("Legal labels characterizing a claim cannot, standing alone, determine whether it fails to meet [Rule 8's] extremely modest standard."). Plaintiffs, in the body of the Second Claim, have listed each SEU officer by name and stated that they violated the Fourth Amendment when they illegally entered Plaintiffs' homes. D.E. 93 ¶ 225. The remedy sought also makes clear that Plaintiffs are not alone seeking equitable relief through this claim. Plaintiffs seek compensatory and punitive damages from the individual SEU officers. *Id.* ¶ 226.

Moreover, the factual portion of the SAC goes into great detail describing the SEU Defendants' illegal entry of Plaintiffs' homes. *Id.* ¶¶ 114-151. The SAC states "the SEU officers

had received no description matching the four children standing outside of the apartment and had no evidence or allegations that any of the children had been involved in selling drugs." *Id.* at ¶ 122. Still, the SEU Defendants rushed towards them and followed the Plaintiffs as they ran into their own homes first entering the "Irvings' apartment without knocking or announcing their intentions or cause to be at the premises", *Id.* ¶ 134, and then "burst[ing] into the Walton's apartment" *Id.* ¶ 126. The Fourth Amendment only permits officers to dispense of the knock and announce requirement if they have "reasonable suspicion" that it would be "dangerous or futile" to knock and announce. *United States v. Banks*, 540 U.S. 31, 36 (2003) (finding it reasonable to enter a home "15 to 20 seconds" after knocking and announcing when officers suspected "imminent loss of evidence."). Here, officers approached four teenagers standing in front of their own homes, who were not suspects or involved in any alleged crime. The fact that Plaintiffs turned and ran when faced down by nearly 15 officers in full body armor and armed with assault rifles did not give Defendants permission to dispense with their constitutional requirement to knock and announce.[3]

Furthermore, the officers did not have a warrant to enter the Walton's home (1628 A). Thus, their entry into 1628 A not only violated the Fourth Amendment's knock and announce requirement, but also violated the warrant requirement.

---

[3] *See Betton v. Knowles*, No. 415CV04638AMQKDW, 2018 WL 4404073, at *6 (D.S.C. May 21, 2018), report and recommendation adopted, No. 4:15-CV-04638-AMQ, 2018 WL 3744957 (D.S.C. Aug. 7, 2018), aff'd sub nom. *Betton v. Belue*, 942 F.3d 184 (4th Cir. 2019) ("[A]bsent exigent circumstances, the Fourth Amendment requires law enforcement officers to knock and announce their presence when executing a search warrant. Based on these instructions, the Fourth Circuit "requires a court to analyze the facts of each case to determine that the officers had some particularized basis for their suspicion." *United States v. Dunnock*, 295 F.3d 431, 434 (4th Cir. 2002)).

The SEU Defendants have of course not moved to dismiss the Second Claim, but failed to recognize their liability for their illegal entry of Plaintiffs' homes. Because this claim is clearly pled and gives the SEU Defendants more than adequate notice of their alleged liability this Court must permit Plaintiffs to proceed on this theory. If the Court finds Plaintiffs have not provided adequate notice Plaintiffs respectfully request leave to amend the heading of the Second Claim to identify the SEU defendants.

### B. Plaintiffs' Have Properly Pled Claims of Excessive Force

Plaintiffs have sufficiently alleged that the SEU Defendants used excessive force when they continued to point assault rifles at the Plaintiff children and their mothers while they were compliant and posed no threat to the officers. "As a species of excessive force claims, excessive-use-of-weapons allegations 'are properly analyzed under the Fourth Amendment's 'objective reasonableness' standard." *Bellotte v. Edwards*, 629 F.3d 415, 424–25 (4th Cir. 2011) *citing Graham v. Connor,* 490 U.S. 386, 388 (1989). The Court's application of the reasonableness standard to excessive-weapons claims "requires careful attention to the facts and circumstances of each particular case." *Id.* at 396. Relevant factors to the Court's analysis include "whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* Once officers realize a suspect does not "pose an immediate threat to the safety of the officers or others," the officers should not use "force or weapons at all." *Bellotte*, 629 F.3d at 426. "Pointing a firearm directly at a child calls for even greater sensitivity to what may be justified or what may be excessive under all the circumstances." *Holland ex rel. Overdorff v. Harrington,* 268 F.3d 1179, 1192–93 (10th Cir. 2001).

12

The SEU officers exited their transport vehicle and rushed towards four kids: a 12 year old, a 15 year old, a 16 year old and an 18 year old, standing in front of their own homes. D.E. 93 ¶¶ 118-121. As they did so, the SEU officers pointed their firearms at the children. *Id.* The children, all Plaintiffs, did not match any description of any suspect, had not been involved in any criminal activity and were not suspected to have any involvement in narcotics. *Id.* ¶ 122. In this instance, pointing assault rifles at children as young as 12 who are merely standing in their own yards rises to the level of excessive force. *See, e.g., Terebesi v. Torreso,* 764 F.3d 217, 240 ("Depending on the circumstances, a search may be unreasonable under the Fourth Amendment even if officers do no more than threaten the occupants with firearms."); *Baker v. Monroe Twp.,* 50 F.3d 1186, 1193 (3d Cir. 1995) (holding that the "use of guns . . . must be justified by the circumstances" and that officers violated the Fourth Amendment by handcuffing and pointing a gun in the direction of a 17-year old boy who was standing in the vicinity of a police raid with "simply no evidence of [him doing] anything."); *Holland ex rel. Overdorf* at 1194–95 (10th Cir. 2001) (affirming the District Court's finding that "the undisputed testimony that the SWAT team pointed weapons at young children during the entry raised a triable issue as to reasonableness").

Moreover, once the officers entered Plaintiffs' apartments, they continued to point their firearms at the children and their mothers even after they had established that the occupants were not a threat to their safety. First, the SEU officers pointed firearms in the face of Ziyel Whitley who had tripped and was sitting on the floor against the wall with his hands covering his face. *Id.* ¶¶ 133-135. The officers also handcuffed Ziyel Whitley. *Id.* The SEU officers then ran to the stairs and pointed their firearms at 18 year old Cydneea Harrington who was standing with her arms raised at the top of the stairs in her pajamas. *Id.* ¶ 136. The officers continued to point their firearms at Cydneea as they ran up the stairs and then trained their firearms on her mother

Yolanda Irving, who was at the top of the stairs also in her pajamas. *Id.* ¶ 137. The SEU officers then entered the room at the back of the hall—where Juwan Harrington, who is disabled, was sitting on his bed—and pointed their firearms at him as they ordered him to sit on the floor and continued to do so while his mother informed them that he was disabled and unable to sit. *Id.* ¶¶ 139-141.

Next door, at 1628 A, the SEU officers had barged into Kenya Walton's apartment without knocking or announcing and without a warrant. *Id.* ¶¶ 126-127. SEU officers Thompson and Debonis ordered Dyamond Whitley, Kamisha Whitley, Ziguis Grant and Robert Whitley to all come downstairs with their hands raised. *Id.* ¶¶ 128-129. The plaintiffs all walked downstairs with their hands raised, as ordered, and the officers continued to point their firearms at the children as they stood in the kitchen with their hands above their heads. *Id.* ¶ 277.

Unlike *Belotte*, where the officers holstered their weapons upon realizing they had entered the room of a 12-year old, here the officers continued to keep their weapons drawn and pointed past the time they knew that the children and other occupants of the house posed no threat to their harm or safety. *Bellotte,* 629 F.3d at 426 ("Once they realized that she did not pose[ ] an immediate threat to the safety of the officers or others the officers used no force or weapons at all on [the minor child]") (internal citations omitted). Simply put, Plaintiffs have pled more than enough to permit a plausible inference that the SEU Defendants used excessive force when they continued to hold compliant children and their mothers at gun point in their own homes.

### III.     Emancipate NC Has Standing To Pursue Injunctive Relief

Plaintiffs incorporate and rely on their previously filed response in opposition to the City and individual defendants motions to dismiss for lack of jurisdiction. *See* D.E. 122. Importantly,

14

Case 5:22-cv-00068-BO     Document 142     Filed 11/22/22     Page 14 of 17

the SEU Defendants are the very officers who routinely make the decision to enter homes using "No Knock" or "Quick Knock" tactics. As laid out in Plaintiffs SAC, the RPD SEU unit is responsible for "No Knock" or "Quick Knock" entries on at least five (5) separate occasions. These include, "No Knock" or "Quick Knock" raids "on December 11, 2019 (Blake Banks), February 12, 2020 (Kesha Knight), February 28, 2020 (Gregory Washington), March 19, 2020 (Keith Green), and April 7, 2021 (Amir Abboud and family)." Moreover, this Court has already rejected the very same arguments made by the City and other Individual Defendants in its Order Denying the Motion to Dismiss Emancipate NC for lack of standing. D.E. 141.

## CONCLUSION

For the foregoing reasons, Plaintiffs adequately allege claims Two and Eight against the SEU Defendants. And Emancipate NC has alleged sufficient facts to establish standing to pursue equitable relief. Plaintiffs therefore respectfully request that the motions to dismiss filed by the SEU defendants be denied.[4]

Respectfully submitted this the 22nd day of November, 2022.

/s/ Abraham Rubert-Schewel
Abraham Rubert-Schewel (NCSB #: 56863)
Email: schewel@tinfulton.com
TIN FULTON WALKER & OWEN, PLLC
119 E. Main Street
Durham, NC 27701
Telephone: (919) 451-9216

/s/ Emily D. Gladden
Emily D. Gladden (NCSB #: 49224)
Email: Egladden@tinfulton.com
TIN FULTON WALKER & OWEN, PLLC
204 N. Person Street
Raleigh, NC 27601

---

[4] Should the Court grant the motion to dismiss filed by the SEU Defendants in part or in full, Plaintiff respectfully requests leave to amend the operative complaint.

Telephone: (919) 720-4201
Facsimile: (919) 400-4516

/s/ Ian A. Mance
Ian A Mance (NCSB #:46589)
EMANCIPATE NC
P.O. Box 309
Durham, NC 27702
919-682-1149
ian@emancipatenc.org

/s/ Elizabeth G. Simpson
Elizabeth G. Simpson (NCSB # 41596)
EMANCIPATE NC
P.O. Box 309
Durham, NC 27702
919-682-1149
elizabeth@emancipatenc.org

**CERTIFICATE OF COMPLIANCE WITH LOCAL CIVIL RULE 7.2(f)**

      The undersigned attorney hereby certifies that the forgoing Plaintiffs' Opposition to SEU Defendants' Rule 12(b)(6) Motions to Dismiss contains 4,192 words in compliance with local civil rule 7.2(f).

      Respectfully submitted this the 22nd day of November, 2022.

/s/ Abraham Rubert-Schewel
Abraham Rubert-Schewel (NCSB #: 56863)
Email: schewel@tinfulton.com
TIN FULTON WALKER & OWEN, PLLC
119 E. Main Street
Durham, NC 27701
Telephone: (919) 451-9216

*Counsel for plaintiffs*