IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CASE NO. 5:22-cv-68-BO

| | |
|---|---|
| YOLANDA IRVING, individually and as the natural parent and guardian of J.I, JUWAN HARRINGTON, CYDNEEA HARRINGTON, KENYA WALTON, individually and as the natural parent and guardian of R.W., ZIYEL WHITLEY, DYAMOND WHITLEY, KAMISHA WHITLEY, NANETTA GRANT as the natural parent and guardian of Z.G., and EMANCIPATE NC, INC.,<br><br>                Plaintiffs,<br><br>v.<br><br>THE CITY OF RALEIGH, Officer OMAR I. ABDULLAH, Sergeant WILLIAM ROLFE, Officer RISHAR PIERRE MONROE, Officer MEGHAN CAROLINE GAY, Officer DAVID MEAD, Officer JESUS ORTIZ, Officer KYLE PERRIN, Officer MICHAEL MOLLERE, Officer KYLE THOMPSON, Officer VINCENT DEBONIS, Officer DANIEL TWIDDY, Officer THOMAS WEBB, Officer DAVID MCDONALD, Officer DAVID GARNER, Chief of Police ESTELLA PATTERSON, and City Manager MARCHELL ADAMS-DAVID, in their individual capacities,<br><br>                Defendants. | **REPLY IN SUPPORT OF SEU DEFENDANTS' MOTION TO DISMISS UNDER RULES 12(B)(6) and 12(B)(1)** |

Defendant Officers David Mead, Jesus Ortiz, Kyle Perrin, Michael Mollere, Kyle Thompson, Vincent Debonis, Daniel Twiddy, Thomas Webb, David McDonald, and David Garner, members of the Raleigh Police Department's Selective Enforcement Unit (collectively,

1

the "SEU Defendants"), through counsel, respectfully submit this Reply Memorandum in support of their Motion to Dismiss under Rules 12(b)(6) and 12(b)(1) of the Federal Rules of Civil Procedure.

## INTRODUCTION

In their Memorandum in Support of their Motion to Dismiss, the SEU Defendants demonstrated that, under Fourth Circuit precedent, Plaintiffs failed to state a claim of excessive force based on allegations that the SEU Defendants pointed their firearms when they first encountered the Individual Plaintiffs. DE 130 at 6–8. The SEU Defendants also showed Emancipate NC lacked standing to bring claims based on the officers' warrant execution in this case because Emancipate NC was not injured by that conduct. Id. at 8–11. In their response, Plaintiffs add a new argument: They contend their Second Amended Complaint (hereafter "the Complaint") stated a claim of unlawful entry against the SEU Defendants, even though this claim does not name the officers as defendants. DE 142 at 9–12.

Plaintiffs' response fails to support either an excessive force claim or an unlawful entry claim—and fails to address the SEU Defendants' arguments, as to their Motion to Dismiss Under Rule 12(b)(1), that Emancipate NC lacks standing to challenge the officers' warrant execution in this case. For these reasons, as explained in more detail below, all claims against the SEU Defendants fail, and the officers should be dismissed as defendants from this action. Similarly, Emancipate NC should be dismissed as a plaintiff from Plaintiffs' Tenth Claim, because it does not have standing to pursue that claim.

## ARGUMENT

I.  **This is Not a "Quick Knock" or "No Knock" Case.**

As an initial matter, there is an inaccuracy in Plaintiffs' Complaint and response—which relates to several of the claims at issue here: the contention that this case involved a "Quick

2

Knock" or "No Knock" warrant. DE 93 ¶¶ 3–5,8, 44, 100, 225, 285, 293–94. Plaintiffs argue they "clearly alleged that the SEU Defendants violated the Fourth Amendment" by "using 'No Knock' or 'Quick Knock'" entry into the homes of Plaintiffs Yolanda Irving and Kenya Walton. DE 142 at 9–10. However, the Complaint's allegations, themselves, show that this is not so.

Plaintiffs allege that, on the afternoon of May 21, 2020, teenagers J.I., Ziyel Whitley, Dyamond Whitley, and Z.G. were sitting outside when the SEU Defendants arrived. DE 93 ¶¶ 118, 121. Z.G. and Dyamond ran into Ms. Walton's apartment and "began screaming that SEU officers were coming." Id. ¶¶ 123–24. Plaintiffs allege that two SEU Defendants followed the teenagers to Ms. Walton's apartment. Id. ¶¶ 126–27. The two officers then "ordered everyone to come downstairs," and the occupants complied. Id. ¶¶ 128–29. Meanwhile, Z.G. fled and ran with J.I. and Ziyel into Ms. Irving's home and announced the officers' presence by "screaming up the stairs yelling, 'SWAT, SWAT, SWAT!'" Id. ¶¶ 130–32. In other words, the teenagers who ran into each apartment had alerted the occupants that the officers were coming before the officers entered the apartments.

Plaintiffs describe "Quick Knock" or "No Knock" entries as "the execution of a search warrant by law enforcement by entering a premises without warning, and without providing an opportunity for the occupants of the premises to voluntarily answer or open the door." DE 142 at 2 n.2. Notably, here, the search warrant for Ms. Irving's apartment—which was available to Plaintiffs' counsel when they filed the Complaint—did not suggest the officers should enter without knocking or announcing themselves. See DE 32.2. Rather, as described in greater detail below, infra II.B, clearly established law allowed the SEU Defendants to respond to the situation in the manner alleged as it unfolded before them. Furthermore, the allegations demonstrate the officers' presence was thoroughly known upon their entry, as multiple individuals announced their

3

presence to the occupants of each home. Under these circumstances, it was reasonable for the officers not to knock and wait before entering Ms. Irving's home, and before engaging with the occupants of Ms. Walton's home. See United States v. Dunnock, 295 F.3d 431, 435 (4th Cir. 2002) (holding separate knock and announce was not necessary where occupant already knew about the officers' presence).

Because the Complaint's allegations refute the general and repeated assertions that this was a "No Knock" or "Quick Knock" case, these assertions should be disregarded. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (discussing the Court's obligation to look past general conclusions to the complaint's actual factual allegations).

## II. Plaintiffs' Second Claim fails to state <u>any</u> claim against the SEU Defendants.

Plaintiffs' failure to state a claim against the SEU Defendants for unlawful entry is two-fold: (A) the Complaint does not name the SEU officers as defendants for this claim; and (B) even if the Complaint did name the SEU Defendants, the allegations show the officers lawfully entered, both because their presence was known to the occupants and because exigent circumstances rendered a knock-and-announce unnecessary.

### A. Plaintiffs' Second Claim fails as a matter of form.

Plaintiffs' Second Claim fails to state a claim of unlawful entry against the SEU Defendants, as they are not named parties in the claim, giving the officers no notice of the claim being asserted against them. DE 93 at 28. See Fed. R. Civ. P. 8(a).

Plaintiffs rely on Wenzel v. Knight, No. 3:14-CV-432, 2015 WL 3466863 (E.D. Va. June 1, 2015), but that case does not show that the SEU Defendants were properly named here—rather, it shows the opposite. DE 142 at 10. In Wenzel, the heading for Count V of the plaintiff's negligence claim named all individual defendants and excluded all entity defendants. Wenzel, 2015 WL 3466863, at *11. The statements that followed, however, appeared to apply to some

individual defendants and some entity defendants.  Id. at *11.  The district court found it was "not at all clear from the . . . complaint against whom [the plaintiff] alleged Count V."  Id.  The district court thus dismissed the claim of negligence as to the individual defendants and one entity defendant.  Id. at *12.

Similarly, here, it is "not at all clear" from Plaintiffs' Second Claim that it should be read as asserting a claim against the SEU Defendants.  See id. at *11.  The heading only names the City of Raleigh, Chief Patterson, and the City Manager.  DE 93 at 28.  Because the heading does not name the SEU Defendants, they were not on notice that Plaintiffs intended to assert the Second Claim against them.  Accordingly, this Court should dismiss this claim as purportedly against the SEU Defendants.  See Wenzel, 2015 WL 3466863, at *12.

**B.     Exigent circumstances authorized the SEU Defendants' conduct.**

Even if the claim were properly pled against the SEU Defendants, however, it still fails to state a claim and thus should be dismissed, because the allegations do not describe an impermissible entry.

It is well established that exigent circumstances permit entry into a house without a warrant.  See Payton v. New York, 445 U.S. 573, 590 (1980).  Exigent circumstances are found when a "suspect [i]s fleeing or likely to take flight" or when "evidence or contraband [i]s threatened with removal or destruction."  See Johnson v. United States, 333 U.S. 10, 15 (1948).

In their response, Plaintiffs rely on United States v. Banks, 540 U.S. 31 (2003), suggesting it shows the SEU Defendants had to wait 15 to 20 seconds before entering the apartments.  Banks shows no such thing.

The Banks Court found the officers at issue had lawfully entered a home when they knocked and waited 15 to 20 seconds before entering, not that officers should generally be

5

Case 5:22-cv-00068-BO   Document 145   Filed 12/06/22   Page 5 of 12

expected to knock and wait 15 to 20 seconds in all circumstances in which drugs are suspected to be inside. Banks, 540 U.S. at 40. In fact, the Court reiterated well-established law: The issue of whether officers have committed an unlawful entry is determined "case by case," id. at 36, and, "if the circumstances support a reasonable suspicion of exigency when the officers arrive at the door, they may go straight in," id. at 37 (citing Richards v. Wisconsin, 520 U.S. 385, 394 (1997)).

Banks fully supports a finding of exigent circumstances here. As the Complaint describes, the SEU Defendants witnessed teenage boys flee upon seeing the officers; these boys then ran into the two apartments at issue and announced the officers' presence to other occupants. DE 93 ¶¶ 123–24, 130–32. The first home was immediately adjacent to the other, which was suspected to contain drugs. Id. ¶¶ 109, 114, 116, 123–24. Based on these factors, the SEU Defendants had a reasonable suspicion of an imminent risk of destruction or concealment of drugs, and exigent circumstances authorized the SEU Defendants' entry without knocking and waiting. See Banks, 520 U.S. at 37–38.[1] Plaintiffs thus have failed, on the merits, to state an unlawful entry claim. See id.

### III. Plaintiffs' arguments attempting to save their excessive force claim are mistaken on the law and facts.

Plaintiffs' response similarly fails to save their allegations of excessive force, based on the SEU Defendants' allegedly pointing their firearms upon entry into the apartments. Plaintiffs' response falls flat in two ways. First, it relies on the assertion that the SEU Defendants continued to point their firearms at the Individual Plaintiffs even after first encountering them—an assertion contrary to the Complaint's allegations. Second, Plaintiffs rely on a misreading of Bellotte v.

---

[1] In any event, the officers' body camera video, which also was available to Plaintiffs' counsel when the Complaint was filed, demonstrates that, even though their presence already had been announced, the SEU Defendants in fact announced their presence and purpose upon entry.

Edwards, 629 F.3d 415 (4th Cir. 2011). DE 142 at 12–13. Though Plaintiffs try to depict Bellotte as holding that use of weapons is warranted only in exceptional cases, Bellotte does not stand for that proposition.

Plaintiffs' Complaint does not reflect their new argument that the SEU Defendants "continued to point their firearms at the children and their mothers even after they had established that the occupants were not a threat to safety." DE 142 at 13. Rather, the allegations demonstrate the officers' use of weapons, if taken as true, was momentary. DE 93 ¶¶ 121–54.[2]

Furthermore, the SEU Defendants' conduct here is well within the conduct authorized in Bellotte. Bellotte demonstrates it is reasonable for an officer, when entering a residence with unknown occupants, to initially point a firearm at the unknown occupants, until the officer is assured that the occupants are complying and present no safety risk. See Bellotte, 629 F.3d at 425 ("[T]he risk of harm to both the police and the occupants is minimized if the officers routinely exercise unquestioned command of the situation." (citation omitted)).

The Complaint's allegations show this is what occurred here. The SEU Defendants witnessed Z.G. and Dyamond run into Ms. Walton's home and scream to other occupants of the officers' presence. DE 93 ¶¶ 123–24. Therein, the SEU Defendants encountered two unknown persons: R.W. and Kamisha Whitley.[3] Id. ¶¶ 125, 129. Then, Z.G., J.I., and Ziyel ran into Ms. Irving's home and announced the officers' presence. Id. ¶¶ 130–32. Therein, the SEU Defendants

---

[2] Furthermore, Plaintiffs' assertions that deposition testimony shows the SEU Defendants "continued" to point firearms at the Individual Plaintiffs is unfounded. See DE 142 at 4. The deposition testimony actually shows the opposite. See, e.g., Exhibit A.

[3] The Complaint does not allege that the SEU Defendants ever pointed their guns toward R.W. and Kamisha. DE 93 ¶¶ 126, 128–29.

7

encountered three more unknown persons: Ms. Irving, Cydneea Harrington, and Juwan Harrington. Id. ¶¶ 136–39.

This was a chaotic, fluid, and unsecured scenario. The allegations, even viewed in the light most favorable to Plaintiffs, support the conclusion that the SEU Defendants "drew their weapons only long enough to ensure their safety and control of the situation" upon encountering each unknown and unsecured individual. See Unus v. Kane, 565 F.3d 103, 118 (4th Cir. 2009); DE 93 ¶¶ 135–43. The SEU Defendants then "exercise[d] unquestioned command of the situation" by ordering the occupants to one place while the officers executed the search warrant and completed their investigation. See Bellotte, 629 F.3d at 425; DE 93 ¶¶ 135–43.

In short, the Complaint's own allegations show the SEU Defendants did not exercise excessive force here, and thus this Court should dismiss the Complaint's Eighth Claim.

## IV.     Emancipate NC does not have standing with respect to Plaintiffs' Tenth Claim.

Finally, Plaintiffs do not address the SEU Defendants' arguments in support of their Motion to Dismiss under Rule 12(b)(1) based on Emancipate NC's lack of standing, contending these arguments were addressed by the Court's Order denying the City Defendant's and other Individual Defendants' Motions to Dismiss Emancipate NC for Lack of Standing. DE 142 at 14–15; see also DE 141. While this Court denied the City's and the other Individual Defendants' Motions, the SEU Defendants' Motion focuses on claims arising from the SEU Defendants' conduct, and these defendants respectfully contend their arguments are not fully addressed by the Court's Order. See DE 129; DE 130 at 8–11.

In particular, the SEU Defendants' conduct is implicated in the Complaint's Tenth Claim, in which Emancipate NC seeks injunctive and declaratory relief based on an alleged "No Knock" or "Quick Knock" entry in this case, along with alleged "No Knock" or "Quick Knock" entries of five other residences, on five other occasions. See, e.g., DE 93 ¶¶ 285, 293–94. As explained

8

above, because the allegations demonstrate there was no "No Knock" or "Quick Knock" entry in this case, Emancipate NC could not have been injured by the conduct at issue here. Griffin v. Dep't of Lab. Fed. Credit Union, 912 F.3d 649, 653 (4th Cir. 2019) ("An injury in fact is an indispensable aspect of constitutional standing; no 'Case' or 'Controvers[y]' exists without injury." (alteration in original)). The other cases Emancipate NC references in the Complaint constitute other transactions or occurrences, and thus, to the extent it contends it was injured from these other transactions or incurrences, those would not be properly pursued in this case. See Fed. R. Civ. P. 20(a).[4]

For these reasons, along with those included in the SEU Defendants' Memorandum in Support of their Motion to Dismiss, DE 130, Emancipate NC should be dismissed as a party plaintiff from the Complaint's Tenth Claim.

## **CONCLUSION**

Based on the foregoing, the SEU Defendants respectfully request that this Court dismiss Plaintiffs' Second and Eighth Claims as to the SEU Defendants, and that the Court dismiss the SEU Defendants as party defendants from this action. The SEU Defendants also respectfully request that Emancipate NC be dismissed as a plaintiff with regard to the Complaint's Tenth Claim, because it lacks standing to pursue claims based on the warrant execution at issue in this case.

---

[4] Emancipate NC's dual role in this matter is also curious. Plaintiffs amended their original complaint on May 16, 2022, thereby adding Emancipate NC as a party plaintiff seeking injunctive and declaratory relief. DE 41; see also DE 142 at 5. While the SEU Defendants understand, based on representations from Plaintiffs' counsel, that Emancipate NC was retained at the outset of this matter to represent Plaintiffs, the Complaint does not address the reason for Emancipate NC's addition as a party plaintiff. See DE 41; DE 93; DE 142 at 5.

Respectfully submitted,

This the 6th day of December 2022.

/s/ Leslie C. Packer
Leslie C. Packer
N.C. State Bar No. 13640
Michelle A. Liguori
N.C. State Bar No. 52505
ELLIS & WINTERS LLP
P.O. Box 33550
Raleigh, North Carolina 27636
Telephone: (919) 865-7000
Facsimile: (919) 865-7010
leslie.packer@elliswinters.com
michelle.liguori@elliswinters.com

*Counsel for SEU Officer Defendants*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.2(f)(3)

I hereby certify that the foregoing brief complies with the word limitation in Local Civil Rule 7.2(f)(3)(C) because the word count, excluding those parts of the brief identified in Local Civil Rule 7.2(f)(1), does not exceed 2800 words. According to counsel's word processing software, the word count is 2,595.

This the 6th day of December, 2022.

/s/ Leslie C. Packer
Leslie C. Packer
N.C. State Bar No. 13640

# CERTIFICATE OF SERVICE

I hereby certify that on December 6th, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which sends notification of such filling to all counsel of record as follows:

Abraham Rubert-Schewel
Tin Fulton Walker & Owen, PLLC
119 E. Main Street
Durham, NC 27701
schewel@tinfulton.com
*Counsel for Plaintiffs*

Emily Gladden
Tin Fulton Walker & Owen, PLLC
204 N. Person Street
Raleigh, NC 27601
egladden@tinfulton.com
*Counsel for Plaintiffs*

Michael Littlejohn, Jr.
Littlejohn Law, PLLC
PO Box 16661
Charlotte, NC 28297
mll@littlejohn-law.com
*Counsel for Plaintiffs*

Ian Mance
Elizabeth Simpson
Emancipate NC, Inc.
ian@emancipatenc.org
elizabeth@emancipatenc.org
*Counsel for Plaintiffs*

Jason Benton
Parker Poe Adams & Bernstein, LLP
620 South Tyson Street, Suite 800
Charlotte, NC 28202
jasonbenton@parkerpoe.com
*Counsel for Defendant Abdullah*

Rodney Pettey
Samuel Thompson, Jr.
Yates McLamb & Weyher, LLP
PO Box 2889
Raleigh, NC 27602
*Counsel for Defendants Monroe, Rattelade, and Gay*

Norwood Blanchard, III
Crossley McIntosh Collier, & Edes, PLLC
5002 Randall Parkway
Wilmington, NC 28403
norwood@cmclawfirm.com
*Counsel for Defendant Rolfe*

Dorothy V. Kibler
City of Raleigh
PO Box 590
Raleigh, NC 27602
Dorothy.kibler@raleighnc.gov
*Counsel for Defendants City of Raleigh, Chief of Police Estella Patterson, and City Manager Marchell Adams-David*

    /s/ Leslie C. Packer
    Leslie C. Packer
    Michelle A. Liguori

    *Counsel for SEU Officer Defendants*

12

Case 5:22-cv-00068-BO   Document 145   Filed 12/06/22   Page 12 of 12