IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:22-cv-00068-BO

| | |
|---|---|
| YOLANDA IRVING, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>THE CITY OF RALEIGH, et al.,<br><br>Defendants. | **CITY OF RALEIGH AND OFFICIAL CAPACITY DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR A PROTECTIVE ORDER** |

Pursuant to Federal Rule of Civil Procedure 26(b) and 26(c), defendants City of Raleigh, Chief of Police Estella Patterson in her official capacity, and City Manager Marchell Adams-David in her official capacity (collectively the "City") move the Court for a protective order forbidding the deposition of the corporate representative of the Raleigh Police Department ("RPD") noticed for January 5, 2023 until the next phase of discovery and narrowing the topics of examination. The topics listed in the deposition notice pertain to matters which are not within the scope of discovery the parties agreed upon and the Court ordered. In addition, the topics exceed the bounds of discovery permitted by Rule 26 and do not meet the particularity requirement of Rule 30(b)(6). For these reasons, the Court should issue a protective order to prevent the undue burden on the RPD.

## NATURE OF THE CASE

This case arises out of the issuance of a search warrant for 1628 Burgundy Street, Apartment B, in Raleigh, North Carolina ("Apartment B"), on May 21, 2020 based on an alleged undercover purchase of heroin at this location by a confidential informant. (*See generally* Second Am. Comp., ECF No. 93, ¶¶ 101-13). The individual Plaintiffs filed this action on February 22,

2022. After several Defendants, including the City of Raleigh, filed motions to dismiss, Plaintiffs filed an amended complaint, adding Emancipate NC, Inc. ("Emancipate NC") as a plaintiff as well as alleging additional claims against the City. (ECF No. 41).

On July 6, 2022, the Court entered a Scheduling Order, bifurcating discovery and dispositive motions into two phases. (*See* ECF No. 69 at 1). Phase I concerns the Individual Defendants' liability,[1] and Phase II concerns the City's liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). (*See id.*; Rule 26(f) Plan, ECF No. 49, at 2-3). The parties are currently engaged in Phase I discovery.

On August 31, 2022 and with leave of Court, Plaintiffs filed their Second Amended Complaint, adding additional RPD officers as defendants. (ECF No. 93). Against the City, Plaintiffs bring four claims under 42 U.S.C. § 1983 based on *Monell* and seek compensatory damages and injunctive and declaratory relief.

On December 2, 2022, Emancipate NC served a Notice of 30(b)(6) Deposition for the corporate representative of the RPD on January 5, 2023. (Ex. 1). It attached to the Notice a list of topics for examination, which concern RPD's policies, practices, and procedures, organizational structure, disciplinary actions, decisions regarding a policy, understanding of constitutional requirements, and basis for an assertion regarding a policy. (*Id.*, Ex. A).

## STATEMENT OF FACTS

Relevant to the instant motion, on May 21, 2020, defendant Omar Abdullah, a member of the RPD Vice unit, obtained a search warrant for Apartment B, the home of Plaintiff Yolanda Irving and her children. (Second Am. Compl., ECF No. 93, ¶¶ 101, 113). Plaintiffs allege that the warrant resulted in the defendant Selective Enforcement Unit ("SEU") officers bursting

---

[1] The Individual Defendants are the defendant officers who are sued in their individual capacities. The Chief of Police Estella Patterson and City Manager Marchell Adams-David are sued in their official capacities.

unannounced into Apartment B as well the apartment next door, the home of Plaintiff Kenya Walton and her children. (*Id.* ¶¶ 2, 116-17, 126, 134). They contend that the RPD has a practice in executing search warrants of knocking while simultaneously entering regardless of the circumstances, (*see id.* ¶¶ 161-63), and that the RPD's warrant execution policy is otherwise deficient, (*see id.* ¶¶ 193-95).

Against the City, Plaintiffs claim violations of the Fourth Amendment based on (1) the SEU officers' entry of the Irving and Walton families' homes by failing to knock and announce their presence ("Second Claim"), (*id.* ¶ 225); (2) the City's search warrant execution practice ("Tenth Claim"), (*id.* ¶ 284); (3) the City's failure to institute proper policies and/or failure to train/supervise RPD Vice unit officers in the review and handling of drug evidence ("Eleventh Claim"), (*id.* ¶ 301); and (4) the City's failure to adopt proper policies and practices regarding warrant execution ("Twelfth Claim"), (*id.* ¶ 310).

## ARGUMENT

Pursuant to Rule 26, the scope of any discovery in a civil case is limited by relevancy, proportionality, and the terms of any court order. Fed. R. Civ. P. 26(b)(1). The discovery "sought must be 'relevant to any party's claim or defense.'" *Va. Dep't of Corr. v. Jordan*, 921 F.3d 180, 188 (4th Cir. 2019) (quoting Fed. R. Civ. P. 26(b)(1)). It "must also be 'proportional to the needs of the case.'" *Id.* (quoting Fed. R. Civ. P. 26(b)(1)). In assessing proportionality, a court must consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

3

In addition to being subject to these discovery limits, the party noticing the deposition of an entity "must describe with reasonable particularity the matters for examination." Fed. R. Civ. P. 30(b)(6). "To allow th[is] Rule to effectively function, the requesting party must take care to designate with painstaking specificity, the particular subject areas that are intended to be questioned, and that are relevant to the issues in dispute." *Fish v. Air & Liquid Sys. Corp.*, Civ. No. GLR-16-496, 2017 WL 697663, at *20 (D. Md. Feb. 21, 2017) (alteration, internal quotation marks, and citation omitted).

If a party seeking discovery does not operate within any of these parameters, a party may move for a protective order. Fed. R. Civ. P. 26(c)(1). For good cause, the Court may then issue an order protecting "a party or person from annoyance, embarrassment, oppression, or undue burden or expense" by forbidding the discovery sought, among other things. *Id.* Additionally, on motion, a court may limit "discovery otherwise allowed" if "(i) the discovery sought is unreasonably cumulative or duplicative . . . ; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

Here, the discovery Emancipate NC seeks is not within the scope of Phase I discovery under the Court's Scheduling Order or the limits under Rules 26 and 30(b)(6). As required prior to the Court's entry of the Scheduling Order, all parties met and memorialized their agreement in their Report of F.R.C.P. 26(f) Conference and Proposed Discovery Plan, (ECF No. 49). In relevant part, the parties agreed that in Phase I, discovery will be needed on "all factual allegations, claims asserted . . . against the Individual Defendants and all defenses raised by the Individual Defendants." (*Id.* ¶ 3(b)(1)). In the Scheduling Order, the Court expressly limited the scope of discovery for Phase I to these issues. (*See* ECF No. 69, at 1 ("The scope of discovery for Phase I in this matter is limited to the issues identified in Paragraph 3(b)(1) of the Rule 26(f) Report.")). The parties further agreed, and

4

the Court ordered, that discovery and dispositive motions on *Monell* claims and defenses will occur, if at all, during Phase II. (*See* Rule 26(f) Report, ECF No. 49, ¶ 3(a) (agreeing to bifurcate "discovery and dispositive motions into Phase I (Individual Defendants) and Phase II (*Monell* Discovery)"), ¶ 3(a)(1) ("The parties will propose a Phase II (*Monell*) discovery plan within 14 days after a Court order denying Defendants' dispositive motions."), ¶ 3(c) ("If necessary, the parties will propose a schedule for Phase II Discovery after the Court's ruling on dispositive motions filed after Phase I Discovery."); Scheduling Order, ECF No. 69, at 1 n.1 ("The parties will propose a discovery plan for Phase II within 14 days of a court order denying Defendants' dispositive motions.").

Despite these provisions of the parties' agreement in the Rule 26(f) report and the Court's Scheduling Order, Plaintiffs contend that the discovery Emancipate NC seeks is permissible because the Scheduling Order does not identify the Second Claim as a *Monell* claim and because Emancipate NC's claim for declaratory and injunctive relief against the City, located in the Second Claim, is not a *Monell* claim. (*See* City's Ex. 4, at 2). Their contention is an odd one because the Second Claim is either a *Monell* claim or it is a § 1983 claim against the City based only on vicarious liability.

A local government cannot be held vicariously liable under § 1983. In *Monell*, "[t]he Court . . . held that municipalities were 'persons' under § 1983." *Los Angeles Cnty., Cal. v. Humphries*, 562 U.S. 29, 35 (2010) (citation omitted).

> Although municipalities, unlike public officials, cannot claim immunity from suit, the Supreme Court has expressly cabined their liability: under *Monell*, a municipality is liable *only* for its *own* illegal acts. Pursuant to this standard, a municipality is liable under § 1983 *if* it follows a custom, policy, or practice by which local officials violate a plaintiff's constitutional rights. *Only if* a municipality subscribes to a custom, policy, or practice can it be said to have committed an independent act, the *sine qua non* of *Monell* liability.

*Owens v. Baltimore City State's Att'ys Off.*, 767 F.3d 379, 402 (4th Cir. 2014) (citations omitted) (emphases added); *see also Walker v. Prince George's Cnty., Md.*, 575 F.3d 426, 431 (4th Cir. 2009)

("Under *Monell*, a municipality's liability arises *only* where the constitutionally offensive actions of employees are taken in furtherance of some municipal policy or custom." (citation and internal quotation marks omitted) (emphasis added)). In fact, the very case Plaintiffs cite in support of the Second Claim recognizes as much. *See Betton v. Knowles*, No. 4:15-CV-04638-AMQ-KDW, 2018 WL 4404073, at *15 (D.S.C. May 21, 2018) ("The U.S. Supreme Court in *Monell* . . . held that municipalities can be liable *only* for their own illegal acts. . . . Under *Monell*, municipal liability can result 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'" (citation omitted) (emphasis added), *report and recommendation adopted*, 2018 WL 3744957 (D.S.C. Aug. 7, 2018), *aff'd sub nom. Betton v. Belue*, 942 F.3d 184 (4th Cir. 2019). (*See also* Second Am. Compl., ECF No. 93, at 28 n.6).

That a plaintiff seeks injunctive or declaratory relief does not change the standard of liability. *See Humphries*, 562 U.S at 39 ("[W]e hold that *Monell's* 'policy or custom' requirement applies in § 1983 cases irrespective of whether the relief sought is monetary or prospective."). The Declaratory Judgment Act establishes only an additional available remedy, not an independent ground for liability. The Act creates neither jurisdiction nor substantive rights. *See CGM, LLC v. BellSouth Telecomms., Inc.*, 664 F.3d 46, 55–56 (4th Cir. 2011); *Crowder v. N.C. Admin. Off. of the Cts.*, 374 F. Supp. 3d 539, 543 (E.D.N.C. 2019); *see also Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–72 (1950). Accordingly, "[a] request for declaratory relief is barred to the same extent that the claim for substantive relief on which it is based would be barred." *CGM*, 664 F.3d at 55-56 (alteration in original) (internal quotation marks and citation omitted). Therefore, to the extent Plaintiffs seek to hold the City liable on the Second Claim, they must do so under the dictates of *Monell* or not at all,

6

Case 5:22-cv-00068-BO   Document 153   Filed 12/22/22   Page 6 of 12

and none of Plaintiffs, including Emancipate NC, may conduct discovery on any *Monell* claims until Phase II.[2]

It is true that the Scheduling Order does not list the Second Claim among the *Monell* claims. (*See* Scheduling Order, ECF No. 69 at 1 n.1 ("The parties propose bifurcation of discovery into two phase[s]: Phase One (Individual Defendants) and Phase II (*Monell* claims – Counts Ten, Eleven, and Twelve of the Amended Complaint).")). However, the Rule 26(f) report and the Scheduling Order evidence that the parties intended, as did the Court, discovery and dispositive motions on *all Monell* claims and defenses would occur, if at all, in Phase II, not Phase I. Otherwise, the bifurcation of discovery and dispositive motions on some, but not all, *Monell* claims would be nonsensical.

Requiring Emancipate NC to conduct any such discovery in Phase II is not inequitable. The parties have litigated this case in a bifurcated manner from July 6, 2022 when the Court entered its Scheduling Order until Emancipate NC served its December 2, 2022 discovery requests. Plaintiffs, including Emancipate NC, agreed to the terms in the Rule 26(f) Report and failed to raise any issue about the Second Claim at that time. Also, reserving discovery on *Monell* claims promotes judicial economy and efficiency for all parties. *See Hayat v. Diaz*, No. 20-CV-02994-LKG, 2022 WL 17342049, at *2 (D. Md. Nov. 30, 2022) (granting motion to bifurcate a *Monell* claim to "promote judicial economy, prevent premature, and potentially unnecessary, discovery" (citation omitted)). Therefore, the City requests that the Court enforce the terms of the parties' agreement in the Rule 26(f) Report and the Court's Scheduling Order by prohibiting Emancipate NC from conducting the 30(b)(6) deposition in Phase I.

---

[2] During the December 14, 2022, conference, Emancipate NC did not accept the City's offer to discuss ways to align the deposition request to a topic relevant to the Individual Defendants. (*See* City's Ex. 2, at 2; Ex. 3, at 1). Plaintiffs did not contend that the expansive discovery deposition that Emancipate NC seeks pertains to any Individual Defendant's liability. Nor could they. RPD policies, procedures, and practices do not provide the standard for liability for a knock-and-announce claim under the Fourth Amendment. *See United States v. Dunnock*, 295 F.3d 431, 434 (4th Cir. 2002) (recognizing that whether exigent circumstances exist to excuse the knock and announce requirement is determined by the facts of each case).

Not only does the discovery Emancipate NC seeks exceed the scope of discovery for Phase I, but also it is not relevant to any party's claim or defense, proportional to the needs of this case, or described with reasonable particularity. And, it is unreasonably duplicative. First, topics 2 through 5 span an eight-year period (from January 1, 2015 to the present). (*See* City's Ex. 1, Ex. A). The alleged operative event occurred on May 21, 2020. Policies and disciplinary actions for the nearly five years prior to that event have no bearing on Plaintiffs' claims, and, as such, requiring the RPD to designate and prepare a witness on those topics would be unduly burdensome and disproportionate to what is needed.

Second, topics 3 and 4 are overly broad and not described with reasonable particularity. Both pertain to the SEU. Topic 3 seeks testimony about policies governing that team's operations. (*Id.*). Without greater specificity as to the type of operations, the RPD cannot designate an appropriate witness. Similarly, topic 4, which concerns disciplinary or corrective actions for eight years, encompasses *all* SEU officers and seeks "history" of those actions. (*Id.*). Not limiting this topic to officers by name and related to the May 21, 2020 event and not providing a more precise description of what "history" means is makes it unduly burdensome for the RPD to comply with its Rule 30(b)(6) obligations.

Third, topic 6 seeks testimony regarding the RPD's decisions related to codifying a policy in May 2022, to publicly disseminating that policy, and to changing a link for RPD detectives on the City's website. (*Id.*). Decisions which occurred two years after the alleged May 21, 2020 event and the decision to change a weblink are not relevant to Plaintiffs' claims. Accordingly, it would be unduly burdensome for the RPD to designate and prepare a witness to testify on these subjects.

Finally, through other sources and methods, Plaintiffs have obtained information regarding topics 1, 2, 3, and 5. Specifically, in response to Plaintiffs' request for production of documents, the

City has produced policies and procedures concerning warrant execution and planning for warrant execution from January 1, 2018 to the present (topics 2 and 5). Individual RPD officers have provided deposition testimony about the RPD's organizational structure (topic 1), policies, practices, and procedures regarding the execution of search warrants on residences (topic 2), and policies, practices, and procedures regarding the use of "No Knock" and "Knock and Announce" warrants (topic 5). Also, individual SEU officers have testified generally about SEU operations (topic 3). Because much of the discovery Emancipate NC seeks is unreasonably duplicative, requiring the RPD to provide the same information about these topics in a deposition places an undue burden on it.

In conclusion, the Rule 30(b)(6) deposition of the RPD should be taken, if at all, during Phase II discovery and the matters for examination should be narrowed. To prevent the undue burdening of the RPD, the Court should issue an appropriate protective order.

Respectfully submitted, this the 22nd day of December 2022.

**CITY OF RALEIGH**
**Robin L. Tatum, City Attorney**

By: /s/ Dorothy V. Kibler
DOROTHY V. KIBLER
Deputy City Attorney
N.C. Bar No. 13751

By: /s/ Amy C. Petty
AMY C. PETTY
Senior Associate City Attorney
N.C. Bar No. 20894
PO Box 590
Raleigh, NC 27602
Tel: (919) 996-6560
Fax: (919) 996-7021
Dorothy.Kibler@raleighnc.gov
Amy.Petty@raleighnc.gov

*Counsel for Defendants City of*

*Raleigh, Chief of Police Estella Patterson, and City Manager Marchell Adams-David*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:22-cv-00068-BO

| | |
|---|---|
| YOLANDA IRVING, et al., | ) |
| Plaintiffs, | ) |
| v. | ) **CERTIFICATE OF SERVICE** |
| THE CITY OF RALEIGH, et al. | ) |
| Defendants. | ) |

I hereby certify that on December 22, 2022, I electronically filed the foregoing **CITY OF RALEIGH AND OFFICIAL CAPACITY DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR A PROTECTIVE ORDER** with the Clerk of Court using the CM/ECF system, which sends notification of such filing to all counsel of record as follows:

Abraham Rubert-Schewel
Tin Fulton Walker & Owen, PLLC
119 E. Main Street
Durham, NC 27701
schewel@tinfulton.com
*Counsel for Plaintiffs*

Jason Benton
Daniel Peterson
Jessica Dixon
Parker Poe Adams & Bernstein, LLP
620 South Tyson Street, Suite 800
Charlotte, NC 28202
jasonbenton@parkerpoe.com
jessicadixon@parkerpoe.com
*Counsel for Defendant Abdullah*

Emily Gladden
Tin Fulton Walker & Owen, PLLC
204 N. Person Street
Raleigh, NC 27601
egladden@tinfulton.com
*Counsel for Plaintiffs*

Rodney Pettey
Yates McLamb & Weyher, LLP
PO Box 2889
Raleigh, NC 27602
rpettey@ymwlaw.com
*Counsel for Defendants Monroe, Rattelade, and Gay*

Michael Littlejohn, Jr.
Littlejohn Law, PLLC
PO Box 16661
Charlotte, NC 28297

Norwood Blanchard, III
Crossley McIntosh Collier, & Edes, PLLC
5002 Randall Parkway
Wilmington, NC 28403

mll@littlejohn-law.com
*Counsel for Plaintiffs*

Ian Mance
Elizabeth Simpson
Emancipate NC, Inc.
ian@emancipatenc.org
elizabeth@emancipatenc.org
*Counsel for Plaintiffs*

norwood@cmclawfirm.com
*Counsel for Defendant Rolfe*

Leslie Packer
Michelle Liguori
Ellis & Winters, LLP
PO Box 335500
Raleigh, NC 27636
Leslie.Packer@elliswinters.com
Michelle.Liguori@elliswinters.com
*Counsel for Defendants Garner, McDonald, Twiddy, Mead, Ortiz, Perrin, Thompson, Mollere, Webb, and Debonis*

**CITY OF RALEIGH**
**Robin L. Tatum, City Attorney**

By: /s/ Amy C. Petty
AMY C. PETTY
Senior Associate City Attorney
N.C. Bar No. 20894
PO Box 590
Raleigh, NC 27602
Tel: (919) 996-6560
Fax: (919) 996-7021
Amy.Petty@raleighnc.gov

*Counsel for Defendants City of Raleigh, Chief of Police Estella Patterson, and City Manager Marchell Adams-David*