IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:22-cv-00068-BO

| | |
|---|---|
| YOLANDA IRVING, et al., <br><br> Plaintiffs, <br><br> v. <br><br> THE CITY OF RALEIGH, et al., <br><br> Defendants. | **CITY OF RALEIGH'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL** |

Defendant City of Raleigh, (the "City") respectfully asks the Court to deny Plaintiffs' motion to compel because the City has provided discovery responses as agreed at the parties' conferences. While open to further collaboration on electronically stored information ("ESI"), Plaintiffs' current demands are disproportionate, duplicative, disruptive, and unduly burdensome as explained below and in Detective R.J. Pike's accompanying declaration (Pike Decl., City Ex. 7).

## NATURE OF THE CASE

This case arises out of the issuance and execution of a search warrant for 1628 Burgundy Street, Apartment B, in Raleigh, North Carolina ("Apartment B"), on May 21, 2020. The warrant followed an undercover purchase of supposed heroin at Apartment B as reported by Dennis Williams, a confidential informant whom Plaintiffs allege was unreliable. (*See generally* Second Am. Compl., ECF No. 93, ¶¶ 101-13). Plaintiffs claim that Raleigh Police Department ("RPD") Selective Enforcement Unit ("SEU") officers entered both Apartment B and the apartment next door ("Apartment A") illegally on a "no knock" or "quick knock" basis. (*Id.*, ¶¶ 161-63.) Plaintiffs allege a conspiracy among certain RPD detectives and their supervisor to fabricate heroin trafficking offenses. (*Id.*, ¶¶ 234, 255.) No Plaintiff here was arrested or cited.

On July 6, 2022, the Court entered a Scheduling Order bifurcating discovery and dispositive motions into two phases. (*See* ECF No. 69 at 1). Phase I concerns the individual defendants' liability and Phase II concerns the City's liability under *Monell*.[1] (*See id.*; Rule 26(f) Report, ECF No. 49, at 2-3). The parties are currently engaged in Phase I and discovery closes on that phase on March 3, 2023. (ECF No. 156.) The parties agreed and the Court ordered that the scope of discovery for Phase I was limited to all factual allegations, claims, and alleged damages asserted against or defenses raised by the individual defendants. (*See* ECF No. 69, at 1; ECF No. 49, at 3). The parties also agreed that, during Phase I, they could serve discovery to the City relevant to Plaintiffs' claims against and defenses of the individual defendants. (*Id.*) At issue here are the City's responses to Plaintiffs' First Consolidated Set of Document Requests, which led to the City's distribution of over 15,700 pages of documents.

## STATEMENT OF FACTS

The City has a history of cooperation in matters stemming from the criminal misconduct of confidential informant Williams. Well before this litigation commenced, the City provided investigative files and law enforcement recordings to Plaintiffs' counsel through consent orders entered in Wake Superior Court. (See Pls.' Ex. B, ECF No. 148-2, at 5-7.) As litigation progressed here, the City has provided Plaintiffs' counsel with more recordings through the State Court disclosure process. *See* N.C. Gen. Stat. § 132-1.4A.

Plaintiffs served their First Consolidated Set of Document Requests on all appearing Defendants on July 21, 2022. Defendants responded and objected to certain aspects of the

---

[1] *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Against the City, Plaintiffs claim Fourth Amendment violations based on (1) the SEU officers' entry of the Irving and Walton families' homes by failing to knock and announce their presence, (Second Am. Compl., ECF No. 93, ¶ 225); (2) the City's search warrant execution practice, (*id.* ¶ 284); (3) the City's failure to institute proper policies and/or failure to train/supervise RPD Vice unit officers in the review and handling of drug evidence, (*id.* ¶ 301); and (4) the City's failure to adopt proper policies and practices regarding warrant execution, (*id.* ¶ 310).

2

requests, with the City serving its initial responses and objections on September 19, 2022. All counsel met on September 30, 2022 and addressed Plaintiffs' concerns, which focused on personnel records and Defendants' objections to producing them. The parties agreed that the City would provide personnel records, including RPD Internal Affairs investigations, to counsel for each individual defendant who would then provide personnel records directly to Plaintiffs' counsel. The City did as it agreed, and defense counsel produced records to Plaintiffs.

At the September 30, 2022 conference, Plaintiffs' counsel explained that "the Incident" described in their document requests meant not just the May 2020 incident, but also included every drug buy made by Williams. Thus, document requests relating to "the Incident" sought records spanning August 16, 2018, when Williams began work as a confidential informant, through May 22, 2020, when RPD suspended Williams. The City commenced a rolling production[2] of documents related to "the Incident" as Plaintiffs defined it.

Discussions concerning discovery continued, as did the City's rolling production. After exchanging correspondence in early November, (see Pls.' Ex. C, ECF No. 148-3), and the City's correspondence in response (see 11-11-2022 Correspondence from Ms. Petty, City's Ex. 2), all counsel held a second conference on November 22, 2022. Plaintiffs' discussions centered around ESI.[3] Counsel for the City expressed concerns about the requests and—so thought the City—negotiated an agreement with Plaintiffs' counsel on how to proceed. Plaintiffs' claim that the City agreed to produce all documents described by Plaintiffs'—foregoing all objections it previously lodged—is not accurate. (See Pls.' Mem., ECF No. 149, at 5.) The parties negotiated

---

[2] The City produced supplementary documents on October 12, 2022, October 26, 2022, November 4, 2022, December 1, 2022, December 9, 2022, December 14, 2022, and December 19, 2022. The rolling production of case jackets began with the City's First Supplemental Production on October 12, 2022 shortly after the Court entered its October 5, 2022 protective order (ECF No. 126), not after November 7, 2022 as Plaintiffs indicate in their certification. (See ECF No. 149, at 11.)

[3] The conference also covered Defendants' concerns about Plaintiffs' discovery responses.

3

certain agreements concerning the ESI during their November 22, 2022 meet-and-confer session. The agreements, as the City's counsel understands them, are detailed below.

**Agreement Concerning Emails (Motion to Compel Item (b)).**[4]  As documented in an email to Plaintiffs' counsel, Plaintiffs and the City agreed that the City would search City email accounts of defendants Abdullah, Gay, Rattelade, Rolfe, and Monroe for emails using the following search parameters:

1. For the period 8-16-2018 through June 13, 2020, search those mailboxes for the following terms: "Aspirin," "Dennis Williams."

2. For the period 5-13-2020 through June 13, 2020, search those mailboxes for the following term: "Burgundy."

(12-14-2022 Email from Ms. Kibler, City's Ex. 3.)  If additional searches were needed, the parties would discuss any further request.  The City and Plaintiffs also agreed to confer if these searches produced more than 10,000 entries.  No Defendant objected to this approach.

Using these parameters, the City provided responsive emails on December 14, 2022 after a preliminary search by the City Attorney's Office.  (*Id.*) The City's Information Technology Department ("IT") also conducted a search based on these parameters.  The IT search revealed no additional responsive emails, a fact communicated to counsel for the parties on December 19, 2022. (12-19-2022 Email from Ms. Kibler, City's Ex. 4, at 2.)  A search for responsive emails on Abdullah's cellphone by Det. Pike, an RPD Forensic Examiner, yielded one additional draft email that was provided to the parties on December 19, 2022.  (See *id.* at 1.)  Thus, the City has carried out the production as agreed.

**Agreements Concerning Text Messages/Abdullah's City cellphone (Motion to Compel Items (a) and (c)).**  The City agreed to certain searches of Abdullah's City-issued

---

[4]  The City objected to each of the document requests that Plaintiffs use as the basis for this motion. (See Pls.' Ex. B, ECF No. 148-2, at 10-11, 18-30.)  Although the City has worked in good faith to resolve the discovery dispute and has provided documents as a result of those efforts, it has not otherwise waived its objections.

cellphone that was secured by RPD as a part of an Internal Affairs investigation. It did not agree to hand over the cellphone to Plaintiffs' counsel.

Plaintiffs requested text messages "between the Individual Defendants related to the Incident and all communications between Individual Defendants and Dennis Williams." (Request 11, ECF No. 148-2, at 18.) In its November 11 letter, the City explained that an initial Cellebrite extraction had produced a pdf report of more than 55,000 pages and that the cellphone contained information about criminal investigations and informants unrelated to Williams. (See City's Ex. 2, at 2.) The phone also contains personal communications between Abdullah and his family, what appears to be a personal password, as well as other items that do not fall within the scope of Plaintiffs' Request 11.

At the November 22, 2022 meeting, counsel reiterated the City's objections and explained concerns about producing text messages. Counsel for Plaintiffs suggested that the City could use the same search parameters as used for email and determine what that search revealed. Counsel for Plaintiffs also asked for texts from cellphones held by Rolfe, Monroe, Rattlelade, Gay, Gwinn, and Nance that discuss or express concerns about Williams or discuss arrests with which Williams was involved. No specific search terms were provided.

Consistent with what the parties discussed during their November 22 meeting, on December 19, 2022, the City produced two preliminary extraction reports from Abdullah's former cellphone. (See City's Ex. 4, at 1.) The first was five pages in length and contained photographs taken on May 21, 2020 during the encounter at Apartment B. The second was 1,033 pages in length and contained 3,668 items, including group chats related to the encounter at Apartment B. The transmittal e-mail explained that the City had added the phrase "CI Dennis" in addition to the agreed search terms, thus capturing more data. (*Id*.) The City's email

5

also explained that providing the cellphone records was a time-consuming undertaking and asked that Plaintiffs' counsel discuss "specific information you need and how to reduce the burden in providing information." (*Id*.) The City received no response.

The City has produced cellphone information requested. A qualified RPD expert is working to identify additional potentially responsive data based on the agreed search terms plus "CI Dennis," if any such additional data exists. (Pike Decl., ¶ 14, City's Ex. 7.)

As for the other phones, Gay's counsel advised that he held her City-issued cellphone and that of Detective Gwinn; the City does not. (City's Ex. 4, at 1.) Gay's counsel provided records on December 19, 2022 and the City's counsel scanned and distributed those records to all parties. (12-19-2022 Email from Ms. Kibler to Mr. Davis, City's Ex. 5.) The City's counsel also advised that the only remaining City-issued cellphone in use on or before May 22, 2020 was that of Rattelade. She asked the parties to discuss whether a full extraction and analysis was necessary given the documents provided from Abdullah's City-issued cellphone and the burden of providing the data. (City's Ex. 4, at 2.) Again, the City received no response.

**Other Documents Requested.**

***Motion to Compel Item (d): Gay's Logs***. At the November 22, 2022 conference, Plaintiffs requested logs showing when Gay prepared draft warrants for Abdullah. The City agreed to inquire with RPD's Information Technology staff about that log. The City did as it agreed and reported to the parties on December 19, 2022 that no such information was available from the City. (City's Ex. 4, at 2.) Plaintiffs also deposed Gay on October 28, 2022. Gay joined the Drugs & Vice Unit in December 2019. Plaintiffs' counsel already obtained information directly from Gay about draft warrants she prepared for Abdullah.

6

*Motion to Compel Item (e): CI Log and Packet*. The Receipts of Informant funds logging payments, CI log, and CI packet concerning Williams were produced in discovery on various dates.[5] Plaintiffs have not explained what has allegedly not been produced.

*Motion to Compel Item (f): Communication with District Attorney's Office by City/City's Lawyers*. Searches for relevant emails and the contents of City cellphones are discussed above. Requests relating to the City's contact with the District Attorney's Office is appropriate, if at all, during Phase II discovery which has not commenced. Plaintiffs' Request 12 seeks communication "between Defendants and the Wake County District Attorney's Office," not the City's lawyers. The City lodged objections to Request 12 that are set out in detail at ECF No. 148-2, at 19-20. At the conference, Plaintiffs proposed production of emails from Chief Patterson, who was first employed with the City more than a year after this incident, and City Manager Adams-David, again indicating that the request relates to Phase II. (See Patterson Decl., ¶ 1, ECF No. 131-2.) Plaintiffs have not shown how communications with the District Attorney and these officials relate to their factual allegations, claims, and damages against the individual defendants or the defenses they have raised, the subjects of Phase I discovery.

*Motion to Compel Item (g): Records showing use of surveillance software.* Plaintiffs have not served discovery requests that would entitle them to "[a]ll documents showing the usage of 10-21 software and each occasion on which it was used by the VICE officers or the SEU team." Neither their Request 4 nor 11 seeks any such ESI. (See ECF No. 148-2, at 10, 18.) Regardless, there are no documents to produce. The City has not been able to provide the information through its software access. The City has asked its software vendor to provide

---

[5] They are marked as documents COR 000246 – COR 000329, COR 007886 – COR 007907, COR 007935 – COR 007937, and COR 014735 – COR 014737.

information showing use by the individual defendants during the relevant period but has received no responsive documents as of the time of this filing.

# ARGUMENT

## I. AT THIS JUNCTURE, PLAINTIFFS ARE NOT ENTITLED TO COMPEL PRODUCTION OF ANY ADDITIONAL ESI.

As explained above, the City provided the documents agreed during the meet-and-confer session and did so by Plaintiffs' deadline.[6] The City provided a responsive (and explanatory) email, as well as a lengthy report from Mr. Abdullah's cellphone and a shorter report containing photographs, on December 19, 2022 at 6:21 p.m.[7] The City provided emails using Plaintiffs' search terms on December 14 and December 19. When Plaintiffs' lead counsel indicated that they had not received an electronic link to the December 19 production, the City's counsel sent another link on December 20. Since that date, Plaintiffs have made no effort to discuss ESI. From the City's perspective, as it has throughout Williams-related litigation, it provided in good faith the agreed data by the deadline Plaintiffs established. If the search by RPD's expert uncovers additional discoverable items from the cellphone, the City will supplement its response as appropriate, as it did with its email search. (Pike Decl., ¶¶ 10, 14, City's Ex. 7.)

Discovery rules are aimed at securing the "just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. Recognizing the burdens that ESI can present in litigation, the Rules pose specific requirements on litigants requesting ESI. The Federal Rules expressly require counsel to meet and confer on "any issues about disclosure, discovery, or preservation of electronically stored information, including the form or forms in which it should be produced[.]" Fed. R. Civ. P. 26(f)(3)(C). When ESI is not reasonably accessible because of

---

[6] Plaintiffs' correspondence directed that documents be provided on December 19, 2022, the day they set the deposition of RPD Detective Jason Gwinn. (*Compare* ECF No. 148-4, at 2 *with* 12-1-2022 Email from Mr. Davis, City's Ex. 6.)
[7] Plaintiffs filed their motion to compel on December 19, 2022 at 5:16 p.m.

undue burden or cost, specific limits apply to that discovery. Fed. R. Civ. P. 26(b)(2)(B). Det. Pike's declaration establishes the burden related to cellphone data.

It is well settled that "'electronic discovery should be a party-driven process.'" *Pyle v. Selective Ins. Co. of America*, No. 2:16-cv-335, 2016 WL 5661749, at *2 (W.D. Pa. Sept. 30, 2016) (citation omitted). "Among the items about which the court expects counsel to 'reach practical agreement' without the court having to micro-manage e-discovery are 'search terms, date ranges, key players and the like.'" *Id.* (citation omitted). The City approached production of ESI in a reasonable manner by negotiating search parameters with Plaintiffs. Courts have not only accepted, but in some cases have ordered, the use of keyword searching to define discovery parameters and resolve discovery disputes and because of the costs and burdens of increasingly vast volumes of electronic data, that approach makes good sense. *The Sedona Conference Best Practices Commentary on the Use of Search and Information Retrieval Methods in E-Discovery August 2007 Public Comment Version*, 8 Sedona Conf. J. 189, 200–01 (2007). The City has met its discovery obligations regarding Plaintiffs' requests for ESI. While open to further discussions among counsel for Plaintiffs and co-Defendants, there is no basis for a motion to compel at this time.

II. PLAINTIFFS' REQUESTS ARE DISPROPORTIONATE TO THE NEEDS OF THE CASE.

Rule 26 of the Federal Rules of Civil Procedure provides that parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). In determining whether a discovery request is proportional, courts look to six factors: importance of issues at stake in the litigation, amount in controversy, the parties' access to information, the parties' resources, the importance of discovery resolving the issues, and whether the burden will

9

outweigh the likely benefit. *Oxbow Carbon & Minerals LLC v. Union Pac. R.R. Co.*, 322 F.R.D. 1, 6 (D.D.C. 2017). The Court has substantial discretion to manage discovery, *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 929 (4th Cir. 1995), and it may limit discovery it determines to be unreasonably cumulative, duplicative, burdensome, or outside the permitted scope, Fed. R. Civ. P. 26(b)(2)(B). Bifurcating discovery, such as the division here into Phase I and Phase II, is another way to mitigate unnecessary, costly, and burdensome discovery and ensure proportionality. *See* Fed. R. Civ. P. 26(c)(1)(C) (allowing Courts to determine the time and place for discovery).

Requests for "all" ESI without further elaboration or limits are not proportional to the case. (*See* Pike Decl., ¶¶ 9, 16, City's Ex. 7.) Repetitive search requests are disruptive and burdensome. (*Id.* ¶ 9.) The amount of data involved in a cellphone extraction, 30 gigabytes of data here, requires use of software search tools and carefully crafted search terms. It is disproportionate and unduly burdensome to ask the City to review every entry in tens of thousands of pages of data. (See *id.* ¶ 11.) Asking for data when a deponent has already admitted the underlying facts to be established— that Gay "fairly often" prepared warrants for Abdullah's use (Gay depo., p. 122)—is duplicative, as is providing ESI from the Rattelade cellphone that has already been provided from joint texts from the Abdullah cellphone. *See National RR. Pass. Corp. v. Turner*, No. 4-15-CV-68-BO, 2016 WL 3078740, at *2 (E.D.N.C. May 23, 2016) (granting protective order for overbroad and duplicative discovery requests). All are relevant topics for further discussions by the parties, if desired, but they are not adequate support for the relief that Plaintiffs seek here.

## CONCLUSION

For the reasons described above, the Court should deny the motion to compel but permit the parties to continue their discussions. Such an approach would foster "cooperation rather than

contrariety, communication rather than confrontation." *Witt v. GC Servs. Ltd. Partnership*, 307 F.R.D. 554, 561 (D. Colo. 2014). The City also asks the Court not to award fees to any party, including the City, as such an award would be counter to collaborative efforts.

Respectfully submitted, this the 16th day of January, 2023.

<div style="margin-left: 40%;">

**CITY OF RALEIGH**
**Robin L. Tatum, City Attorney**

By: /s/ Dorothy V. Kibler
DOROTHY V. KIBLER
Deputy City Attorney
N.C. Bar No. 13751

By: /s/ Amy C. Petty
AMY C. PETTY
Senior Associate City Attorney
N.C. Bar No. 20894
PO Box 590
Raleigh, NC 27602
Tel: (919) 996-6560
Fax: (919) 996-7021
Dorothy.Kibler@raleighnc.gov
Amy.Petty@raleighnc.gov

*Counsel for Defendants City of Raleigh, Chief of Police Estella Patterson in her official capacity, and City Manager Marchell Adams-David in her official capacity*

</div>

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:22-cv-00068-BO

YOLANDA IRVING, et al.,

        Plaintiffs,

v.

THE CITY OF RALEIGH, et al.,

        Defendants.

**CERTIFICATE OF SERVICE**

I hereby certify that on January 16, 2023, I electronically filed the foregoing **CITY OF RALEIGH'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL** with the Clerk of Court using the CM/ECF system, which sends notification of such filing to all counsel of record as follows:

| | |
|---|---|
| Abraham Rubert-Schewel<br>Tin Fulton Walker & Owen, PLLC<br>119 E. Main Street<br>Durham, NC 27701<br>schewel@tinfulton.com<br>*Counsel for Plaintiffs* | Jason Benton<br>Daniel Peterson<br>Jessica Dixon<br>Parker Poe Adams & Bernstein, LLP<br>620 South Tyson Street, Suite 800<br>Charlotte, NC 28202<br>jasonbenton@parkerpoe.com<br>jessicadixon@parkerpoe.com<br>*Counsel for Defendant Abdullah* |
| Emily Gladden<br>Tin Fulton Walker & Owen, PLLC<br>204 N. Person Street<br>Raleigh, NC 27601<br>egladden@tinfulton.com<br>*Counsel for Plaintiffs* | Rodney Pettey<br>Yates McLamb & Weyher, LLP<br>PO Box 2889<br>Raleigh, NC 27602<br>rpettey@ymwlaw.com<br>*Counsel for Defendants Monroe, Rattelade, and Gay* |
| Michael Littlejohn, Jr.<br>Littlejohn Law, PLLC<br>PO Box 16661 | Norwood Blanchard, III<br>Crossley McIntosh Collier, & Edes, PLLC<br>5002 Randall Parkway |

Charlotte, NC 28297
mll@littlejohn-law.com
*Counsel for Plaintiffs*

Ian Mance
Elizabeth Simpson
Emancipate NC, Inc.
ian@emancipatenc.org
elizabeth@emancipatenc.org
*Counsel for Plaintiffs*

Wilmington, NC 28403
norwood@cmclawfirm.com
*Counsel for Defendant Rolfe*

Leslie Packer
Michelle Liguori
Ellis & Winters, LLP
PO Box 335500
Raleigh, NC 27636
Leslie.Packer@elliswinters.com
Michelle.Liguori@elliswinters.com
*Counsel for Defendants Garner, McDonald, Twiddy, Mead, Ortiz, Perrin, Thompson, Mollere, Webb, and Debonis*

                         **CITY OF RALEIGH**
                         Robin L. Tatum, City Attorney

By:   /s/ Dorothy V. Kibler
       DOROTHY V. KIBLER
       Deputy City Attorney
       N.C. Bar No. 13751
       PO Box 590
       Raleigh, NC 27602
       Tel: (919) 996-6560
       Fax: (919) 996-7021
       Dorothy.Kibler@raleighnc.gov

*Counsel for Defendants City of Raleigh, Chief of Police Estella Patterson in her official capacity, and City Manager Marchell Adams-David in her official capacity*