# EXHIBIT C



January 17, 2023

Mayor Mary-Ann Baldwin &
Members of the Raleigh City Council
222 West Hargett Street
Raleigh, North Carolina 27601

**RE:** *Irving, et al. v. City of Raleigh, et al.* **litigation**

Dear Mayor Baldwin and Members of the City Council,

      We represent, with co-counsel, the ten individual plaintiffs in *Yolanda Irving, et al. v. City of Raleigh, et al.*, a federal civil rights lawsuit filed on behalf of three Black mothers, Yolanda Irving, Kenya Walton, and Nanetta Grant, and their children, as a result of an errant raid conducted by members of Raleigh PD's Selective Enforcement Unit on May 21, 2020. This operation, which was conducted pursuant to an erroneously-issued search warrant intended for another person at another address, who was himself being framed with fake heroin by a now-indicted police officer and informant, endangered the lives of our clients, who include a then-pregnant woman and a young man suffering from severe physical disabilities and traumatic brain injury. As one might imagine, this event was deeply traumatizing to all the individual plaintiffs, and particularly to the young people involved.[1]



*The Plaintiffs during depositions with the City*

      In defending this case, the City of Raleigh has elected to use taxpayer money to pay four private law firms, along with two City Attorneys, to employ a defense strategy that has included accusing these innocent mothers and children of criminal wrongdoing and subjected them to a battery of invasive and inappropriate questions.[2] As the elected leaders in Raleigh, it is important

---

[1] In depositions with the city, the plaintiffs' children described their memories of the incident when questioned by police attorneys. One said, "I seen guns. I'm scared for my life. I'm going to die. I'm scared for my mom and brothers." Another said: "I get to shaking. I can't control my thoughts. I be suicidal a little bit." Another, recounting having a gun put in his face by an RPD officer, said: "He told me to cover my face with my hands. I don't know why."

[2] Lines of questioning have included: "Are you in touch with your birth father at all? Have you ever been?" "When was the last time you had a job, if ever?" "Do you have a particular rap artist you like?" "What's the significance of your tattoos?"

you understand the tactics that the City's attorneys are choosing to employ against two innocent Black families on your behalf.

We note first that the error that led to Yolanda Irving's address being listed on the search warrant is obvious and has been thoroughly-documented.[3] No evidence exists whatsoever to connect any of the plaintiffs to the people or the activity that engendered police attention on May 21, 2020. These facts alone should have foreclosed any argument that the Irvings or Waltons did something to invite police scrutiny upon themselves. Nevertheless, the City has continued to pursue, and even center, this unfounded theory throughout the discovery process.[4]



*The Plaintiffs during depositions with the City*

That Yolanda Irving and Kenya Walton are Wake County public employees, each entrusted with the safety of the Raleigh's school children, makes the city's attempts to attack their character and the character of their children all the more mystifying.[5] In depositions, your attorneys have gone as far as to invoke the children's reasonable fears for their personal safety by gratuitously questioning them about the activities of street gangs in their neighborhood.[6] These questions are inappropriate, are steeped in racial stereotypes, and have been put to our clients despite a total absence of evidence that they or the SEU raid at issue had any connection to gang activity.[7]

---

[3] Much of the evidence in this case is subject to a protective order, but see generally Virginia Bridges, *Lawsuit Filed Against Fired Detective, City of Raleigh After Police Raid Wrong Apartment*, NEWS & OBSERVER, Feb. 22, 2022; Virginia Bridges, *No-Knock Search Terrified Raleigh Mom and Kids. And It Was the Wrong Home.* NEWS & OBSERVER, Feb. 3, 2022.

[4] City Attorneys have attempted, in depositions, to make much of concessions by some plaintiffs to past marijuana use—an admission that places them in a group with a majority of Americans. *See* Taylor Orth, *Half of Americans Have Tried Marijuana and Most Say Their Experiences Were Positive*, YOUGOVAMERICA, April 7, 2022, https://today.yougov.com/topics/society/articles-reports/2022/04/07/half-of-americans-have-tried-marijuana ("A recent YouGov poll shows that a little over half of Americans (52%) have tried marijuana.").

[5] *See* Jasmine Gallup, *Trauma and Lawsuits: Questions Linger in the Wake of Raleigh Police's 'No-Knock' Warrant Debacle*, INDY WEEK, Dec. 14, 2022, https://indyweek.com/news/wake/rpd-no-knock-raleigh-lawsuit/ ("If they would just give me a genuine apology, it would sit well with me. Instead, they're trying to make everybody a monster." (quoting Kenya Walton)).

[6] The Deputy City Attorney, for example, asked one teenage plaintiff: "Do you remember seeing people who wore colors? Gang colors? Do you remember anybody being involved in gang activity who lived on Burgundy Street? What gangs lived on Burgundy Street? Like Bloods? Crips? Both Bloods and Crips? Tell me the things that the members of the Bloods gang would do on Burgundy Street. Do you know if any gang members sold drugs out of their homes on Burgundy Street? How many gang members sold drugs out of their homes? Did it make you fearful that there were gang members selling drugs in Raleigh North? Were you there at Raleigh North when there were shootings into the buildings at Raleigh North?"

[7] The only gang member involved in the case is Dennis Williams, the informant at the heart of the scandal, who collected thousands of dollars from the City of Raleigh for his efforts.

These practices reflect poorly on the City of Raleigh. We also believe some of these questions push the bounds of professional ethics.[8] We want to be clear: The continued pursuit of a defense strategy centered on maligning the character of our clients will only increase the cost of resolving this case. We are deeply committed to seeking accountability for the misconduct that occurred. We note the last time police attorneys in North Carolina brazenly attempted to suggest demonstrably innocent civil rights plaintiffs did something to invite misfortune upon themselves that they were punished with the largest verdict in state history.[9]

Here, there is no mystery as to the cause of the raid: A corrupt Raleigh detective, Omar Abdullah, along with his VICE colleagues, worked with a dishonest criminal informant, Dennis Williams, to arrest more than dozen Black men for felonies that they did not commit, in a scheme centered around access to a cash-based city informant fund. Because of the VICE team's misconduct, this scheme continued for nearly two years, ending only with the erroneous raid on our clients' homes. Prior to that raid, it appears as many as five VICE officers were aware of Williams' and Abdullah's repeated fabrications and pattern of false arrests. In the process of framing one such man for selling heroin, Marcus VanIrvin,[10] whose exact address Williams did not know, Detective Abdullah deployed an armed SEU team to the home of our client Yolanda Irving and her family, who lived nearby. Upon arriving at the property, SEU made a spontaneous decision to also enter the adjacent apartment of our client Kenya Walton after deciding to pursue our teenage clients, who fled into her home when suddenly confronted with a group of officers armed with assault weapons.[11]

Paperwork generated by Detective Abdullah on the day before the raid on Plaintiffs' homes makes plain that the reason for the assault had nothing to do with Plaintiffs' actions and everything to do with SEU and VICE's inattention to detail. To see this, one need look no further than the Offense/Incident Report in which Detective Abdullah used Marcus VanIrvin and Yolanda Irving's addresses interchangeably in the same document.

| Name: VANIRVIN, MARCUS DARIEN<br>Address: 1620 BURGUNDY ST B<br>RALEIGH, NC 27610 | Officer Narrative<br>Within the past 72 hours a confidential informant was utilized to purchase an amount of heroin from a black male who goes by the name Marcus and same is residing at 1628 Burgundy St. Apt. B Raleigh, NC 27610. According to the confidential informant, Marcus is selling heroin out of the apartment. |
|---|---|
| **Page 1 of the report** | **Page 3 of the same report** |

---

[8] *See* N.C. Rules of Prof. Conduct 0.1[5] ("A lawyer should use the law's procedures only for legitimate purposes and not to harass or intimidate others.").

[9] *See* Andrew Carter, *Jury Awards Wrongfully Convicted NC Brothers $75 Million in Federal Civil Rights Case*, NEWS & OBSERVER, May 14, 2021, https://www.newsobserver.com/news/local/crime/article251411148.html ("MacLatchie's attempt to cast doubt on McCollum and Brown's innocence reflected law enforcement's overall defense strategy from the beginning of the civil case. . . . In various court filings over the years, their attorneys implied at times that McCollum and Brown might be guilty, after all, despite their exonerations and pardons. The jury on Friday delivered a swift rejection of the law enforcement's denial of wrongdoing."). That case also resulted in over six million dollars in attorneys' fees awarded to Plaintiffs' counsel. *See* Order, Tarlton *ex rel.* McCollum, et al. v. Sealey, et al., No. 5:15-CV-451-BO, at *13 (E.D.N.C. Nov. 05, 2021). If this case should continue to trial, the fees incurred by Plaintiffs' counsel and the four firms representing the RPD officers involved will be significant.

[10] The city previously reached a settlement with Marcus VanIrvin for his wrongful arrest and incarceration.

[11] In the minds of your officers and attorneys, the children's fear in that moment apparently warranted their pursuit. As one attorney asked in deposition, "Why did you run from the police if you knew you weren't doing anything wrong?"

We are bound by confidentiality orders that preclude discussion of much of the discovery in this case, but suffice to say, there is ample corroborative evidence that Detective Abdullah's oversight—and the failure of anyone on the SEU or VICE teams to catch it—was the proximate cause of Plaintiffs' injuries.[12]

Against this backdrop, your attorneys have asked at times why our organization, Emancipate NC, which is committed to fighting structural racism in the North Carolina criminal justice system, feels as strongly as it does about a case that ultimately revolves around a wrong address. And yet, in electing to defend the case as they have, and aggressively seeking to malign the character of innocent Black public workers and their children, they have answered their own question.[13] The innocence of our clients is apparently of little consequence, at least so long as a belief persists that an opportunity to demean their character may yet still present itself.

We intend to vindicate the rights of our clients.

Respectfully,

| | |
|---|---|
| *<u>Ian A. Mance</u>* | *<u>Elizabeth G. Simpson</u>* |
| Ian A. Mance | Elizabeth G. Simpson |
| N.C. Bar No. 46589 | N.C. Bar No. 41596 |
| EMANCIPATE NC | EMANCIPATE NC |
| Post Office Box 309 | Post Office Box 309 |
| Durham, NC 27702 | Durham, NC 27702 |
| Tel: (828) 719-5755 | Tel: (919) 682-1149 |
| ian@emancipatenc.org | elizabeth@emancipatenc.org |
| *Attorney for all Plaintiffs* | *Attorney for all Plaintiffs* |

---

[12] Det. Abdullah's deposition is not subject to any such protective order. When asked, "Are you aware that Marcus VanIrvin's address was 1620 Burgundy Street?" he replied, "On advice of counsel, I choose not to answer based on my Fifth Amendment rights." Depo. of Omar Abdullah, at 68 (Dec. 15, 2022).

[13] The city, of course, could remedy this wrong by offering our clients just compensation for their injuries, rather than giving that money to four private firms, who will be happy to continue billing for their services as long as this dispute persists.