# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**WESTERN DIVISION**

YOLANDA IRVING, et al,

Plaintiffs,

vs.

THE CITY OF RALEIGH, et al,

Defendants.

CASE NO. 5:22-CV-68-BO

**THURSDAY, OCTOBER 20, 2022**
**MOTION HEARING**
**HELD IN RALEIGH, NORTH CAROLINA**
**BEFORE THE HONORABLE TERRENCE W. BOYLE**
**UNITED STATES DISTRICT JUDGE**

**MICHELLE A. McGIRR, RMR, CRR, CRC**
**Official Court Reporter**
**United States District Court**
**Raleigh, North Carolina**

**APPEARANCES:**

**On Behalf of the Plaintiffs:**

**(EMANCIPATE NC)**
**ELIZABETH GUILD SIMPSON, Esquire**
PO Box 309
Durham, North Carolina 27702

**ABRAHAM RUBERT-SCHEWEL, ESQUIRE**
**Tin Fulton Walker & Owen**
119 East Main Street
Durham, North Carolina 27701

On Behalf of the Defendant:

**(City of Raleigh)**
**DOROTHY V. KIBLER, Esquire**
**AMY CAMPBELL PETTY, Esquire**
**City of Raleigh**
**City Attorney's Office**
PO Box 590
Raleigh, North Carolina 27602

**(Omar Abdullah)**
**JASON R. BENTON, Esquire**
**Parker Poe Adams & Bernstein LLP**
620 South Tryon Street, Suite 800
Charlotte, North Carolina 28202

**(Sergeant William Rolfe)**
**NORWOOD P. BLANCHARD, III, Esquire**
**Crossley McIntosh Collier Hanley & Edes, PLLC**
5002 Randall Parkway
Wilmington, North Carolina 28403

**(David Mead)**
**LESLIE C. PACKER, Esquire**
**Ellis & Winters LLP**
4131 Parklake Avenue, Suite 400
Raleigh, North Carolina 27612

(Thursday, October 20, 2022)

**P R O C E E D I N G S**

(Open Court at 2:14 p.m.)

THE COURT: This is Irving v. City of Raleigh and there are a number of people here in the case.

One of the first claims is a motion to stay by Abdullah -- and I'll hear that -- and then I'll move on to the motions to dismiss that the defendants have filed.

Defendant Abdullah is a former police officer or is a police officer?

MR. BENTON: Former officer, your Honor.

THE COURT: And he's been charged criminally by the State in Wake County --

MR. BENTON: That's correct, your Honor.

THE COURT: -- in Wake County Superior Court?

MR. BENTON: That's correct, your Honor.

THE COURT: And this is a civil action against him for his misconduct, right?

MR. BENTON: This is a civil action. Yes, your Honor.

THE COURT: I don't foresee any reason to retard the civil action. They can go a parallel tracks.

MR. BENTON: Your Honor, our concern -- and Jason Benton, your Honor, for Omar Abdullah. Our concern is that the indictment that was handed down in July -- that we learned about in late July,

early August -- has everything to do with and is substantially similar to the facts in the civil suit.

And obviously our concern, your Honor, is that it puts Mr. Abdullah in a position -- an almost impossible position -- if he provides testimony in the civil suit and invokes his Constitutional right to the Fifth Amendment, then he's at great risk for an adverse inference that harms him in the civil action.

Of course, if he doesn't invoke that Fifth Amendment right under the Constitution and provides testimony in response to questions that we think will directly relate to the criminal action, then he risks putting himself, again, at risk for the criminal action itself.

We think there's enough commonality between the criminal action and the civil action that this is one of those cases where either a stay of the entire matter is warranted or at minimum, a limited stay or limited protection for Abdullah himself such that there can be no discovery by way of interrogatories or requests for admissions or deposition of him in this case, your Honor.

That's the principal interest at play here, right. We're looking at factors. That is the factor that we think plays in favor for Mr. Abdullah.

The plaintiffs' interest -- and it's been articulated in their response brief. We do, your Honor, have a reply brief that's due Monday that we haven't yet filed with the Court. But the plaintiffs' interest, according to their response brief, is in

avoiding delay of the civil action.

THE COURT: Which is legitimate.

MR. BENTON: Understood, your Honor.

THE COURT: I haven't been in the superior courts for roughly 40 years, but I'm familiar with, by reputation, the speed at which they operate and the lack of speed thereof. So to hold this case captive in federal court because there's some collateral related criminal case in state court offers me little interest.

MR. BENTON: Understood, your Honor. I will point out that --

THE COURT: I mean, I don't want to be the dog wagged by that tail.

MR. BENTON: I understand. Some of the case law, your Honor, that we've put before the Court, at least with our initial briefing, does provide a path forward where there can be --

THE COURT: But it doesn't know Wake County and it doesn't know the Eastern District of North Carolina and so it's just theoretical.

MR. BENTON: Understood, your Honor. There could be, though, a pathway forward in which there is that limited stay as to discovery with respect to Mr. Abdullah --

THE COURT: You could bifurcate the case and take him and put him on a shelf and go forward with the rest of the case.

MR. BENTON: Pardon me, your Honor?

THE COURT: I said it could be bifurcated. You could put

him on a shelf, so to speak, euphemistically, and go forward with the rest of the case.

MR. BENTON: Correct. I think there could be --

THE COURT: Then he'd stand the risk of being alone later on after everybody else had been resolved.

MR. BENTON: Understood.

THE COURT: Is there anything about that that is unclear?

MR. BENTON: No, that is clear, your Honor. What we were asking for alternative to a stay, is that limited stay as to discovery with respect to Mr. Abdullah and for a limited period of time.

What we could do is put a clock on it for, let's say, 90 days and then we revisit it to see where the criminal action is.

I do have -- Mr. Abdullah's criminal defense attorney is here today as well and if your Honor has any questions related to that matter --

THE COURT: I don't want to get involved in the criminal case.

MR. BENTON: Yes, your Honor.

It's our position, your Honor, that the interest that Abdullah has -- that Mr. Abdullah has in pausing these proceedings, at least as it relates to discovery as to him, is an interest that outweighs the other interests, the other factors.

THE COURT: Suppose he wasn't a defendant at all, but the plaintiffs chose to call him as a material witness. He'd take the

Fifth and that's the end of it. I mean, he just -- did you do anything? I decline to answer on the grounds, whatever. I mean, isn't that a scenario?

MR. BENTON: It's not the scenario here, but certainly there is a -- that could have been a possibility at some point.

THE COURT: Yeah. Still could be.

MR. BENTON: Potentially. Unless --

THE COURT: Take a dismissal without prejudice. Call him as your first witness. He says, I won't say anything, I'm under threat of prosecution. I'm going to take the Fifth.

MR. BENTON: Right.

THE COURT: Move on. Call your next witness.

MR. BENTON: Right.

THE COURT: What about that do you not expect?

MR. BENTON: It's a scenario I haven't envisioned, your Honor.

THE COURT: Why not?

MR. BENTON: The scenario that I've -- that we've concerned ourself with is the one where he --

THE COURT: He's an agent or employee of the City defendant.

MR. BENTON: Formerly. Yes, sir.

THE COURT: The principal can be sued and have its employees testify.

MR. BENTON: That's correct, Your Honor. Although we do

have bifurcated discovery in the matter. There is a phase I discovery that concerns individual officer liability.

THE COURT: Where did that come from?

MR. BENTON: It's in our scheduling order.

THE COURT: Who put that out?

MR. BENTON: The parties agreed to it and I believe we had a hearing with Judge Numbers.

THE COURT: Okay. All right. Well, that doesn't have my okay, just for the record. Okay.

MR. BENTON: Understood. Understood.

Your Honor, in my reading of the case law, the principal concern as it relates to delay, the plaintiffs' interest, which you're right, is a legitimate interest, the delay concerns itself with the potentiality for fading memories, fading or lost evidence.

Here we have an incident that is alleged to have occurred in May of 2020 and perhaps some incidents that plaintiff intends to get into that occurred a few months before. What I want to point out to the Court and your Honor is that the risk of faded memories and lost evidence is minimal in a case like this where you have the State Bureau of Investigation that has conducted a robust investigation. Has put together a file concerning its investigation. Interviewing officers, et cetera. The parties all have that file.

Memories can be refreshed if there's any risk of them being lost. We have that evidence. That's been collected.

Discovery at this point, there's been over a thousand pages, by my last review, your Honor, of documents produced by the City in this matter. So we don't see delay as an interest here that outweighs the potential harm to Mr. Abdullah.

Your Honor, the other delay point that I think you'll hear from the plaintiff by way of -- plaintiffs, by the way of their interest -- is the risk that monetary recovery might later be difficult if during the pendency of a stay, there's a conviction on the criminal matter.

We would submit that that interest simply doesn't outweigh the interest that Abdullah faces with the harm from simultaneous parallel actions. And frankly, there's a possibility of that risk, regardless of any sort of conviction or stay because of the allegations in this case.

And if plaintiff ostensibly proves its case on fabrication of evidence and some of the intentional conduct, then there is risk of no monetary recovery anyway in that regard. And so the stay doesn't really change that, your Honor.

And finally, we don't at this point have a trial date. I understand that the Court has an interest in moving its docket along and moving cases along. We don't yet have a trial date. It's our position that at least asking for a limited stay as to discovery against Abdullah and for a limited period of time does not put in harm either plaintiffs' interest, the public interest or the Court's interest, your Honor.

THE COURT: All right. Thank you.

MR. BENTON: Thank you.

THE COURT: Do you want to respond to that at all?

MR. RUBERT-SCHEWEL: Briefly, your Honor.

THE COURT: What's your name?

MR. RUBERT-SCHEWEL: Abraham Rubert-Schewel on behalf of the plaintiffs.

THE COURT: Okay.

MR. RUBERT-SCHEWEL: Good afternoon, your Honor.

THE COURT: Yes, good afternoon.

MR. RUBERT-SCHEWEL: A stay of this litigation will not cure Officer Abdullah's Fifth Amendment dilemma. As your Honor already noted, it is very unpredictable what will happen in state court.

I checked today on the AOC's website. There are currently 900 cases pending in Wake County Superior Court that have been active for over 730 days. Over two years.

We know that the investigation by the Wake DA and the SBI --

THE COURT: That's because the district attorney controls the calendar. Isn't that still the practice in North Carolina?

MR. RUBERT-SCHEWEL: That is the practice, your Honor.

THE COURT: So the Court is just inert. It's sitting there deaf, dumb and blind and the district attorney manages all the flow of traffic so that -- what does that matter?

MR. RUBERT-SCHEWEL: Well, it matters because if your Honor does grant a stay, it's -- this case could be continued for years.

THE COURT: Or it could be the first case called.

MR. RUBERT-SCHEWEL: It could be the first called, but the evidence shows that there are many, many cases that are still pending.

Importantly, it is also very likely that, as your Honor mentioned, that whenever Officer Abdullah is deposed --

THE COURT: Why don't you take a voluntary dismissal and go against the other people and reserve your right. And later on, if you need to join him back in, you can refile. Did you ever think of that?

MR. RUBERT-SCHEWEL: I have not, your Honor --

THE COURT: I'm not telling you what to do, I'm just saying that's one pathway through the complaint. Another pathway is to just hold on and see what happens.

MR. RUBERT-SCHEWEL: We intend to proceed how we have against Abdullah and all the officers and the City.

THE COURT: Okay. You represent the families and the victims or do you represent the agency?

MR. RUBERT-SCHEWEL: We -- I represent everyone, your Honor.

THE COURT: Okay.

MR. RUBERT-SCHEWEL: Emancipate NC and all of the

families.

THE COURT: Okay.

MR. RUBERT-SCHEWEL: The reason why, as you mentioned --

THE COURT: This is a 1983 action.

MR. RUBERT-SCHEWEL: It is, your Honor.

THE COURT: Yeah. Okay.

MR. RUBERT-SCHEWEL: It's also -- we also bring claims under state law.

THE COURT: Well, those would be ancillary claims.

MR. RUBERT-SCHEWEL: They would be, your Honor.

THE COURT: Yeah.

MR. RUBERT-SCHEWEL: As you mentioned, Officer Abdullah will continue to invoke his Fifth Amendment right whether or not he is deposed or whether he is subpoenaed as a material witness. And he's going to do this in response to the 30 or so controlled buys that he organized and held along with his confidential informant, Dennis Williams, and the vice team. The vast majority, if not all of which, involved fake drugs or fabricated evidence.

Officer Abdullah's silence is also likely to continue because he has no real defense here. What exactly is he going to testify to that will aid his civil case? His lawyer has offered no indication of any evidence that he would put on.

THE COURT: You're making your closing argument. This is just a motions hearing.

MR. RUBERT-SCHEWEL: Your Honor, I'm happy to answer any

other questions you have --

THE COURT: I don't have any other questions.

MR. RUBERT-SCHEWEL: Well, I would like to then just close on the prejudice to the plaintiffs.

The public has a great interest in this litigation. They've shown an interest in this litigation. They're interested in our *Monel* claims and our claims against the City. They're also interested in justice for the individual victims.

Because of the reasons you mentioned and because of the reasons in our brief, there is great prejudice to the plaintiffs if your Honor grants a stay and we would ask that you consider the equities --

THE COURT: How is there any prejudice?

MR. RUBERT-SCHEWEL: Your Honor, the prejudice is --

THE COURT: He's available as a witness. Call him as a witness.

MR. RUBERT-SCHEWEL: Well, the prejudice is he is one of our defendants in this case who we are suing. We are seeking a judgment against him right now. If he is convicted at trial, he may -- they may not be able to pay that judgment. The City may refuse that judgment.

THE COURT: But this is all about insurance or -- probably and of little other consequence. Nobody who's a criminal defendant is going to have any money to pay a judgment.

MR. RUBERT-SCHEWEL: It's very likely that if the civil

defendants continue without Officer Abdullah, they will be able to blame Officer Abdullah's conduct as Officer Abdullah not being here to defend himself at trial.

And we would like to -- we have conspiracy claims against the defendants. We have claims involving all the defendants. We have claims that the defendants failed to intervene against Officer Abdullah. And we believe that we should be able to bring those claims altogether as we have done.

THE COURT: All right. Thank you. I'll make a ruling on that.

Who wants to be heard on the claims against the organization as not having standing?

MS. KIBLER: Good afternoon, your Honor. I'm Dorothy Kibler with the City of Raleigh. I'm also joined by Amy Petty, who represents the City. The official capacity defendants as well.

It's our initial motion and both we and counsel for the SEU officers and counsel for the individual co-defendants are ready to proceed with our motion.

THE COURT: Yeah, I want to hear about the standing issue --

MS. KIBLER: Yes, sir.

THE COURT: -- for the organization.

MS. KIBLER: And from our --

THE COURT: It's a 1983 case. We do, you know, hundreds or thousands of those. There is a long history of it. The rights