# Memo

**To:**        Counsel for All Parties

**From:**     Raleigh City Attorney's Office

**Date:**     February 1, 2023

**Re:**       January 26, 2023 Meet and Confer Session with Counsel for All Parties via Teams

---

In light of the outstanding discovery issues, the parties held a meet-and-confer session on January 26, 2023 through Teams.  The purpose of this memo is to set out the agreements reached during the meet-and-confer session.

In advance of the session, the parties compiled the following list of topics to discuss and the entity raising the particular topic:

> ➢ City:  Whether an analysis is needed of Det. Rattelade's cellphone.  If so, the parties need to discuss search parameters for any search and efforts to minimize the burden in connection with the search;

> ➢ All:  Clarifying the records produced by Rod Pettey at the Gwinn deposition (are those records from Det. Gay's cellphone or Det. Gwinn's cellphone?) (Appears to have been answered by an email from Alayna);

> ➢ Defendants:  Discussing access to Jalen Irving's cellphone information on and shortly after May 21, 2020;

> ➢ Defendants:  Plaintiffs' ESI production and whether there are technologies available to assist in the production of the requested ESI;

> ➢ Defendants:  Specific ESI requested from Abe's 1-13-2023 email asking about "Defendants' text message and email communications."

> ➢ Defendants:  We also need to discuss the substantial failure to provide Plaintiffs' medical records requested in July;

> ➢ Plaintiffs (re: Gay, Gwinn, Monroe):  Have you asked your clients to provide their passwords/ fingerprint to access the phones?;

> ➢ Plaintiffs (re: Gay):  The disclosure you provided of texts after Gwinn's deposition appears to be messages taken from both Gwinn's and Gay's phones. Do you have access to Gay's phone?; and,

➢ Plaintiffs (re: Gay, Rattelade, Monroe): We do not believe we have the complete personnel files for your clients. For example, we do not have performance evaluations.

In attendance for the meeting were counsel for Plaintiffs:

− Abraham Rubert-Schewel
− Nichad Davis

And counsel for Defendants:

− Dottie Kibler (for the City)
− Amy Petty (for the City)
− Rod Pettey (for Defendants Rattelade, Monroe and Gay)
− Alayna Poole (for Defendants Rattelade, Monroe and Gay)
− Norwood Blanchard (for Defendant Rolfe)
− Leslie Packer (for SEU Defendants)
− Michelle Liguori (for SEU Defendants)
− Jessica Dixon (for Defendant Abdullah)


**City Cell Phone for Detective Gay:**
This phone is in Rod Pettey's custody. The phone did not have print recognition and Detective Gay has not been able to open the phone using various passwords. They have sent her phone to an expert and been informed it will cost $3,500 or more to attempt to gain access to the phone, which will not necessarily be successful. Rod does not intend to seek this additional work but offered to have his vendor conduct the work at Plaintiffs' expense.

Abe wants to check with his cell phone vendor to see if an extraction can be attempted at a lower cost. Abe will circle back with Rod about next steps after speaking with his vendor.

Abe agreed that any extraction by Plaintiffs' vendor would be done under a confidentiality agreement signed by the vendor and that the only entities to whom the results would be released would be Rod or possibly Dottie/Amy. Plaintiffs would not get a copy of the extraction. Rod would then handle the search of the cell phone and produce responsive information using the agreed search terms and parameters discussed below.

**City Cell Phone for Detective Gwinn:**
This phone is in Rod's custody and has been sent for an extraction. Once completed, Rod will handle the search of the cell phone and produce responsive information, using the agreed search terms and parameters for phone extractions discussed below.

**City Cell Phones for Others – Defendants and Other City Employees**
Abe asked about City Cell phones for other Defendants.

➢ **Det. Monroe** doesn't have the same phone he had in 2020. Rod confirmed this. Abe asked if the City has possession of the phone and Dottie said to her knowledge, no. She explained that she has been told that City cell phones are returned to the vendor in bulk once new cell phones are given out. Abe asked if there is any paperwork associated with that and Dottie said she didn't know.

➢ **Det. Rattelade's** City cell phone was taken during the Abdullah IA investigation and is in City custody. Dottie asked whether an extraction was necessary given the information from the Abdullah cell phone and Abe advised that an extraction was needed. The City will perform an extraction on this phone. See note below for agreed search terms and parameters for phone extractions.

➢ In response to Abe's question about phones still in City custody, Dottie advised that **Lt. Bunch's** City cell phone and, of course, **Mr. Abdullah's** City cell phone were held as a part of the Abdullah IA investigation. Abe requested an extraction of Lt. Bunch's phone. The City will perform an extraction on that phone. Abe also requested additional search terms for Mr. Abdullah's phone. See note below for agreed search terms and parameters for phone extractions.

➢ Dottie's understanding is that the City does not have **Mr. Rolfe's** City cell phone in use on or before May 2020. Norwood confirmed that was also his understanding. The City has asked for Rolfe's old phone and cannot locate it. The City does not know if it was returned to the vendor. Mr. Rolfe is on the eve of retirement. His current City cell phone will be held in case it is needed later.

**Agreed Search Terms and Parameters for City Cell Phones**
*Discussion of Prior Search Terms*
Abe asked if the search terms for the cell phone extraction were broader than the search terms used for the email search. Dottie answered that during the prior meet-and-confer session, Elizabeth Simpson (not on the call) had suggested using the same search terms used for the email search as a place to start with the Abdullah cellphone search. Dottie said that she also included "CI Dennis" as a search term because she saw that this was one way Mr. Abdullah had listed Aspirin in the phone as a contact.

*Method Used to Produce Preliminary Search Results*
Abe asked how the cellphone search on the Abdullah extraction was conducted. Dottie explained that she provided preliminary search results using the agreed search terms in the Cellebrite search box and then tagging responsive items with the "evidence" tag. A report containing items marked as "evidence" was then produced as a preliminary report, along with pictures from May 21, 2020. She explained that she had minimal experience with Cellebrite searches and had asked Detective Pike, a forensic examiner, to complete a formal review to be sure that information responsive to the agreed search terms had all been produced. The detective hasn't completed his work and it is time-consuming and substantial. Abe asked if we anticipate getting that information by March 1 and Dottie said she continues to ask about it on a regular basis, but that it depends on other work assignments of Detective Pike.

*Agreed Search Terms and Parameters*
The parties discussed the Plaintiffs' desire for additional information and the concerns about burdens. The parties reached an agreement on search terms and parameters for the agreed cellphone searches.

The parties will conduct the same search on the Rattelade, Bunch, Gwinn, and (if possible) Gay City-issued cell phones in use in May 2020 that was already conducted on the Abdullah City-issued cell phone. Those search terms are described in footnote one of this memorandum, with the additional search term of "CI Dennis."

3

The parties agreed that a search would be conducted on the Rattelade, Bunch, Gwinn, (if possible) Gay, and Abdullah City-issued cell phones in use in May 2020 as follows:

A.  For the period August 16, 2018 through June 13, 2020, search using the search terms:
    i.    "sugar"
    ii.   "fake"
    iii.  "fake heroin."

    The parties agreed if this search requires more than three hours of time, Plaintiffs' counsel and the affected defense counsel would discuss ways to narrow the search.

B.  For the period May 1, 2021 through June 13, 2020, search using the search term:
    i.    "warrant."

    The parties agreed if the search requires more than three hours of time, Plaintiffs' counsel and the affected defense counsel would discuss ways to narrow the search.

For searches conducted by the City, the parties agreed that the City Attorney's Office could provide a preliminary report as it had before and that if there were concerns from any party, the City Attorney's Office could talk with Det. Pike about a more thorough assessment and discuss that issue with the parties.

Dottie asked Abe if he will need Detective Pike to search on Mr. Abdullah's City cell phone or if the preliminary search that has already been provided is sufficient. Abe said he would confer with his co-counsel and advise. He asked how time consuming it would be for Detective Pike. Dottie said it would be burdensome and said that Det. Pike's Declaration explained further.

**Personal Cell Phones**
The parties discussed the officers' personal cell phones.  Abe stated that some officers have testified that they used their personal cell phones from time to time for work. Abe said he will go back through the deposition testimony regarding use of personal cell phones and will follow up with counsel.

Rod's clients advised that they had not used their personal cell phones for work. Rod said he'll go back and follow up with them to make certain this was the case.

Jessica said they have conferred with Mr. Abdullah regarding his personal cell phone in the Weaver case. Mr. Abdullah said everything is on the RPD phone or email. Jessica will confirm this was the same for the Irving time frame.

Norwood said that Mr. Rolfe turned his RPD cell phone in and didn't believe he had anything on his personal cell phone.

**Email Searches**
*Search Method*
During the discussion of the Cellebrite report from the Abdullah City-owned cell phone, Abe asked how the search for responsive emails had been conducted.  Dottie stated that she had

4

conducted a preliminary search using the previously agreed search terms.[1]  She then provided the results of that search to the parties.  Dottie asked the City's IT Department to run the same search to be sure that nothing had been missed.  The IT search turned up no additional documents.  Detective Pike was then asked to search for emails on the City-issued cell phone for Mr. Abdullah and one additional draft email was located and produced to the parties.

*Additional Email Searches*
Abe requested the same added search terms of "sugar", "fake", "fake heroin", and "warrant" also be used as terms for the email searches of Abdullah, Gay, Rattelade, Monroe and Rolfe. Dottie agreed to conduct a preliminary search and will ask IT look behind her work. Abe said he is okay with Detective Pike not searching cellphones for additional emails as was done previously.

**Jalen Irving's Cell Phone**
Abe was asked about Jalen Irving's phone.  Abe said Jalen testified at his deposition that in May 2020 he had a different carrier and different phone number than he has now.  Abe stated that Jalen doesn't have the phone anymore.  Dottie asked Abe where the phone was and what counsel has done to locate the phone. Abe stated that they didn't ask what happened to the phone, but he will ask and let the defense counsel know what happened to it.

**Discovery Deadline Extension**
Abe asked about extending time to allow for production of ESI and the parties discussed the issue.  The parties didn't reach an agreement.  Abe was going to speak with the rest of Plaintiffs' counsel and would be back in touch with defense counsel.  There was discussion about circulating proposed language for an extension of time. The parties discussed addressing the timing for health care experts now and see if it's necessary later to address the ESI.

**Plaintiffs' Medical Records**
Defense counsel explained that they view the failure to provide complete medical records as a significant issue, explaining that they believe it impairs the defense's ability to proceed in all aspects of the case, including mediation.  A list was provided to Plaintiffs' counsel shortly before the session.

Abe explained the steps they've taken to obtain the medical records.  Abe said they have done two interrogatory supplements. The most recent was 11/30/22. They did not receive any response from anyone that the disclosure and production were deficient. For example, Yolanda Irving has four providers and Abe's team has provided all those records. Abe stated that the only outstanding records to produce disclosed in their interrogatory responses are the Growing Child records for the Whitley children (which they have, and would produce later that day) and Holly Hill records, which they have requested multiple times.

---

[1]    The parties agreed to limit searches to the email accounts of Abdullah, Gay, Rattelade, Rolfe, and Monroe and to the following search terms:

> 1. For the period 8-16-2018 through June 13, 2020, search those mailboxes for the following terms: "Aspirin," "Dennis Williams"
>
> 2. For the period 5-13-2020 through June 13, 2020, search those mailboxes for the following term: "Burgundy."

Defense counsel disagreed with Abe. Dottie explained that the records provided were not complete and provided examples of specific records missing from the Yolanda Irving production. Jessica explained that Plaintiffs have testified in their depositions about receiving treatment from medical providers whose records have not been provided in discovery. Defense counsel explained that their requests also sought pharmacy records and none have been provided. Abe agreed to look into this issue.

Defense counsel offered to provide HIPAA releases for Plaintiffs to sign to allow defense counsel to gather the missing records.

Abe stated that he would talk with his team and discuss how to move forward. Abe said they will look at our list and get back to us. He said he will discuss with co-counsel what they are obligated to provide and determine how they will get the records. He said the Plaintiffs plan to produce everything within the five-year period requested by the defendants in discovery.

A suggestion was made that Plaintiffs obtain Medicaid billing records to determine the providers Plaintiffs have seen. Abe said they have not gotten records from Medicaid. Abe will consider obtaining records from Medicaid to determine the providers Plaintiffs have seen and report back to defense counsel.

Defense counsel asked if there are medical bills attributable to the lawsuit and noted that none had been provided. Abe said the vast majority of the bills are not attributable, but if there are some, they will identify them and produce them. He said they have, and would, produce bills associated with forensic evaluations.

**Miscellaneous and Housekeeping Issues:**
*Mislabeled Text Messages.*
The text messages that were produced and marked as Gay's are now known to be Gwinn's. Dottie said she will change the label for those records and circulate the corrected set.

*Additional BWC Recordings*
Abe said he has just gotten body worn camera video in response to his petition. This includes warrant executions and arrests related to Aspirin cases. He asked about producing them. Dottie said if he thinks they are discoverable, he should produce them to defense counsel. Abe said he will provide all to defense counsel.

*Incident Reports and Draft Warrants*
Abe said that Detective Gay stated in her deposition that she regularly completed incident reports and warrants for Mr. Abdullah. She testified that the computer kept a log of the drafts. This is related to #8 in plaintiffs' deficiency letter and Motion to Compel. Dottie referred Abe to her 12/19/22 email in which she relayed that RPD doesn't have access to the AOC's old warrant repository, NCAWARE.

Abe said Det. Gay testified that she could go back and get reports she had created in the incident report system. Rod thought Gay's testimony was that she thought this was possible. Rod will ask Det. Gay to check and see if the drafts are still in the system and then he will get permission from the City to produce. Dottie said she isn't familiar with this type of log, but she'll ask and share what she learns. Rod said he'll do the same with Det. Gay.

6

*Other Items*
The parties discussed potential dates for the two remaining depositions:  Ms. Irving's and Dyamond Whitley's.

Dottie asked if there was ESI or other documents that the City had agreed to produce that had not been produced. Abe said not that he can think of beyond what's been discussed today. He will go back to his team to discuss and let Dottie know if there are specific agreed records that Plaintiffs believe are missing.

7