IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:22-cv-00068-BO

| | |
|---|---|
| YOLANDA IRVING, et al., | |
| Plaintiffs, | **CITY OF RALEIGH AND OFFICIAL CAPACITY DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO AMEND THE COMPLAINT** |
| v. | |
| THE CITY OF RALEIGH, et al., | |
| Defendants. | |

Defendants City of Raleigh, Chief of Police Estella Patterson in her official capacity, and City Manager Marchell Adams-David in her official capacity (collectively the "City") oppose the Individual Plaintiffs' attempt to amend their complaint a third time.[1]  Plaintiffs filed their motion nearly seven months after the deadline to amend their pleadings, and they have not shown good cause for modifying that deadline.  Also, the amendments they propose are prejudicial to the City and would be futile.  For these reasons, the Court should deny Plaintiffs' motion to amend.

---

[1] In the Court's March 13, 2023 Order which removed the organizational Plaintiff, Emancipate NC, from the case, among other things, the Court noted:

> Emancipate claimed to file motions on behalf of the individual plaintiffs, but there is no evidence of any agency relationship between Emancipate and the individual plaintiffs. The removal of Emancipate necessarily requires the dismissal of Emancipate's pending motions.

(ECF No. 191, at 3 n.2.)  For that reason, the Court denied certain motions for lack of subject matter jurisdiction.  (*Id.* at 4.)

  The motion to amend was filed prior to that Order and included Emancipate NC.  Should the Court determine that it has subject matter jurisdiction to consider the motion to amend as to the Individual Plaintiffs, the City files this memorandum in opposition and hereinafter refers to the Individual Plaintiffs as "Plaintiffs."

<u>**NATURE OF THE CASE**</u>

The case arises out of the issuance of a search warrant for 1628 Burgundy Street, Apartment B, Raleigh, North Carolina ("Apartment B"), on May 21, 2020 based on an alleged undercover purchase of heroin at this location by a confidential informant. (*See generally* Second Am. Comp., ECF No. 93, ¶¶ 101-13.) On February 22, 2022, ten individuals (including minors) filed this action against the City of Raleigh, four Raleigh Police Department ("RPD") Drugs & Vice Unit detectives, their supervisor, and unnamed RPD Selective Enforcement Unit ("SEU") officers. (Compl., ECF No. 2.)

On May 16, 2022, after several Defendants, including the City of Raleigh, filed motions to dismiss, Plaintiffs filed their first Amended Complaint. Doing so added the organization Emancipate NC as a plaintiff and Chief of Police Patterson and City Manager Adams-Davis as defendants in their official capacities and alleged additional claims against the City. (Am. Compl., ECF No. 41.)

On July 6, 2022, the Court entered the Scheduling Order. (ECF No. 69.) Relevant here, and consistent with the parties' agreement, that Order bifurcated discovery and dispositive motions into two phases. (*See* ECF No. 69 at 1.) Phase I concerns the Individual Defendants' liability,[2] and Phase II concerns the City's liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). (*See id.*; Rule 26(f) Plan, ECF No. 49, at 2-3.) The Scheduling Order also set the deadline for Plaintiffs to file a motion to amend their pleadings of August 20, 2022. (ECF No. 69, at 2.)

---

[2] The Individual Defendants are the defendant officers who are sued in their individual capacities.

On August 18, 2022, with consent and within the scheduled deadline, Plaintiffs filed a motion to amend their complaint a second time to add by name ten SEU officers as defendants in their individual capacities. (ECF No. 89.) On August 31, 2022, the Court allowed the motion. (ECF No. 92.)

On October 18, 2022, the ten named SEU officers, in their individual capacities, filed a motion to dismiss them as defendants from the action, on the ground that Plaintiffs failed to state a claim against them. (ECF No. 129.) The motion to dismiss focused on Plaintiffs' Eighth Claim, which alleged that the SEU officers used excessive force by pointing their firearms at Plaintiffs. (*Id.* at 2-3.) In response to the motion, Plaintiffs argued that they also had asserted their Second Claim, which alleged unlawful entry due to failure to appropriately knock and announce, against the SEU officers. (ECF No. 142, at 2-4, 9-11.) Plaintiffs, alternatively, requested leave to amend the complaint to assert this claim against the SEU officers. (*Id.* at 12.) In reply, the SEU officers argued that the Second Claim—to the extent it was asserted against them—failed to state any claim because the allegations in the Second Amended Complaint showed that this was not a "no knock" case, that the officers' presence was announced before their entry into the apartments at issue, and that exigent circumstances supported their entry. (ECF No. 145, at 2-6.)

On November 16, 2022, on joint motion, the Court extended the deadlines for Phase I discovery and dispositive motions. (ECF No. 139.) On December 30, 2022, on Defendants' consent motion, the Court again extended those deadlines, with Phase I discovery concluding on March 3, 2023 and dispositive motions to be filed on March 31, 2023.[3] (ECF No. 156.) On March 13, 2023, the Court granted the SEU officers' motion to dismiss, did not grant leave to amend the

---

[3] Defendants' motion to extend the discovery deadline to take the deposition of Plaintiffs' expert David T. Sweeney and to file Phase I dispositive motions and for an order requiring Plaintiffs to make the expert available for deposition in Raleigh is pending. (ECF No. 183.)

Second Claim, and dismissed the SEU officers from this action. (ECF No. 191, at 4.) The Court also dismissed Emancipate NC for lack of standing and granted Defendants' consent motion to extend the discovery deadlines related to Plaintiffs' claims of psychological injury. (*Id.*)

None of these orders altered Plaintiffs' August 20, 2022 deadline to file a motion to amend their pleadings. Nearly seven months after that deadline, on March 7, 2023, Plaintiffs filed this motion to amend.

## STATEMENT OF FACTS

On May 21, 2020, defendant Omar Abdullah, a former detective in the RPD Vice unit, obtained a search warrant for Apartment B, the home of Plaintiff Yolanda Irving and her children. (Second Am. Compl., ECF No. 93, ¶¶ 101, 113.) According to Plaintiffs, the warrant falsely claimed that a confidential informant, Dennis Williams, had purchased heroin at Apartment B and that RPD detectives had seen Williams entering Apartment B. (*Id.* ¶¶ 109-11.) Plaintiffs further allege that the SEU officers entered both Apartment B and the apartment next door (the home of Plaintiff Kenya Walton and her children) illegally on a "no knock" or "quick knock" basis. (*Id.* ¶¶ 2, 114, 116.) Plaintiffs allege a conspiracy among Abdullah, Williams, the Vice unit detectives, and their supervisor to fabricate heroin trafficking offenses. (*Id.* ¶ 73.)

In the operative complaint (the Second Amended Complaint) and in light of the Court's recent order dismissing the SEU officers and Emancipate NC from this action, Plaintiffs bring a total of eleven claims against the remaining Defendants. Against the City, they allege four claims under 42 U.S.C. § 1983 based on *Monell* and seek compensatory damages. Specifically, they claim violations of the Fourth Amendment based on (1) the SEU officers' entry of their homes by failing to knock and announce their presence, the Second Claim, (*id.* ¶ 225); (2) the City's search warrant execution practice, (*id.* ¶ 284); (3) the City's failure to institute proper policies and/or failure

to train/supervise RPD Vice unit officers in the review and handling of drug evidence, the Eleventh Claim, (*id.* ¶ 301); and (4) the City's failure to adopt proper policies and practices regarding warrant execution, (*id.* ¶ 310).

Now, Plaintiffs seek to again amend their complaint. They request leave to "correct" the Second Claim; add facts to a claim against the RPD supervisor; add a negligence claim against the City as well as the Vice unit detectives and two SEU officers in their official capacities; and add facts to the Eleventh Claim. (Proposed Third Am. Compl., ECF No. 185-2; Pls.' Mem., ECF No. 186, at 2.)

## ARGUMENT

Pursuant to Federal Rule of Civil Procedure 15(a), a party is permitted to amend its pleading once as a matter of course, subject to certain time limitations. Fed. R. Civ. P. 15(a)(1). After that time, "a party may amend its pleading only with the opposing party's written consent or the court's leave," with leave freely given "when justice so requires." *Id.* 15(a)(2). However, this standard changes when a party, like Plaintiffs here, files a motion to amend a pleading after the deadline set in a scheduling order. Rule 16(b) permits modification of a schedule "*only* for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4) (emphasis added). As a result, "after the deadlines provided by a scheduling order have passed, the good cause standard must be satisfied to justify leave to amend the pleadings." *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008). The movant bears the burden of demonstrating good cause, and if it fails to do so, the Court does not consider whether amendment is proper under Rule 15(a). *Sansotta v. Town of Nags Head*, No. 2:10-CV-29-D, 2011 WL 3438422, at *2 (E.D.N.C. Aug. 5, 2011).

In this case, Plaintiffs do not even mention their obligation to satisfy Rule 16's standard, and the record does not show good cause to justify a belated change in the schedule for the amendment of

5

their pleadings.[4]  Also, their motion does not satisfy Rule 15's interest-of-justice standard as the proposed amendments are prejudicial to the City and would be futile.

I.    **Good Cause to Modify the Scheduling Order Does not Exist.**

"Rule 16(b)'s good cause standard focuses on the timeliness of the amendment and the reasons for its tardy submission; the primary consideration is the diligence of the moving party." *Montgomery v. Anne Arundel Cnty.*, 182 F. App'x 156, 162 (4th Cir. 2006) (citation omitted). Plaintiffs neglect to discuss this more rigorous standard.  Should Plaintiffs attempt to argue it in their reply, the Court should refuse to consider it.  *See Crouch v. City of Hyattsville*, No.  DKC 09–2544, 2012 WL 718849, at *2, 4 (D. Md. March 5, 2012) (recognizing that the movant has the responsibility to show good cause to change a scheduling order and when the "[p]laintiff's arguments appear for the first time in their reply," the Court declines to consider them).  At any rate, the good cause standard is not met under the circumstances here.

Regarding the proposed amendments as to the City, first, Plaintiffs propose to add a negligence claim.  They attempt to justify their untimeliness based on deposition testimony from the past two months.  (Pls.' Mem., ECF No. 186, at 4.)  Despite such evidence, they could have pled this claim prior to the August 20, 2022 deadline.

> Rule 8 . . . does not place [] stringent conditions on a party's right to plead a claim for relief. That rule merely requires "a short and plain statement of the claim showing that the pleader is entitled to relief." A plaintiff need not prove his case in his complaint by "forecasting evidence."

---

[4] In their motion, Plaintiffs summarily state that "good cause exists" because the motion "was not unjustly delayed and it will not cause undue prejudice to the Defendants."  (ECF No. 185, at 2.) No facts are provided in support of these statements.  Delay and prejudice concern Rule 15(a)'s application, not the good cause standard under Rule 16(b).  *See Sansotta,* 2011 WL 3438422, at *2; *cf. United States ex rel. Nicholson v. MedCom Carolinas, Inc.*, 42 F.4th 185, 197 (4th Cir. 2022) (stating grounds justifying denial of a motion to amend under Rule 15(a)(2) include prejudice along with delay).

6

*Crouch*, 2012 WL 718849, at \*3 (citations omitted); *see also Graham v. Golden Corral Franchising Sys., Inc.*, No. 5:04-CV-541-H(2), 2006 WL 8438606, at \*2 (E.D.N.C. Mar. 17, 2006) (when faced with potential amendments to "conform the pleadings to the evidence," recognizing a plaintiff does not need to allege evidentiary facts and need only satisfy Rule 8's notice pleading requirements). As such, Plaintiffs did not need any deposition testimony or other evidence to allege a negligence claim.

Additionally, Plaintiffs have long known of the conduct at issue that they now cobble together for a new claim. The alleged conduct underlying Plaintiffs' claims has remained the same since Plaintiffs filed the first Amended Complaint. A comparison of the allegations in the first Amended Complaint filed May 16, 2022 and the proposed Third Amended Complaint demonstrates that, with minor exception, the factual allegations of these documents are identical. (*Compare* Am. Compl., ECF No. 41, ¶¶ 35-186, *with* Proposed Third Am. Complaint, ECF No. 185-2, ¶¶ 44-195). Plaintiffs do not propose to amend these factual allegations. Because Plaintiffs have been aware of the facts which would support the proposed negligence claim since at least May 16, 2022, they could have moved to amend to assert that claim within the following three months to meet the deadline and have not shown good cause. *See Crouch*, 2012 WL 718849, at \*3 ("[T]he fact that Plaintiff may not have had sufficient evidence to prove a *Monell* claim before the deadline for the amendment of pleadings had no bearing on his ability to plead a *Monell* claim in a timely manner. . . . There is simply no showing of good cause here to permit Plaintiff to amend his pleadings . . . .").[5]

---

[5] Moreover, the proposed Third Amended Complaint newly asserts official-capacity claims against two SEU officers who have been dismissed as parties from the action, (ECF No. 185-2, ¶ 285), but the motion to amend identifies no recently discovered information upon which the negligence claim against these defendants is based, (*see* ECF No. 185, ¶¶ 4-6). Rather, the motion to amend cites only the deposition testimony of Defendant VICE Sergeant and Officers Rolfe, Monroe, and Rattelade and the personnel file of Sergeant Rolfe, as the basis for the

In addition to their misplaced reliance on evidence from recent depositions, Plaintiffs contend "amendment is appropriate because Defendants have indicated that their insurer may not provide indemnification in this matter for intentional acts." (Pls.' Mem., ECF No. 186, at 4.) First, insurance coverage or the lack thereof is irrelevant to whether Plaintiffs could have alleged a negligence claim earlier. Adding a new legal theory to purportedly promote insurance coverage is purely strategic. A strategic decision made after a scheduling order's deadline is not good cause under Rule 16(b), but rather, is a lack of diligence. *Chrisley v. Dan Ryan Builders Mid-Atl., LLC*, No. 5:18-CV-00056, 2020 WL 1066341, at *3 (W.D. Va. Mar. 5, 2020); *McDevitt v. Wellin*, No. 2:13-cv-3595-DCN, 2017 WL 2257420, at *3 (D.S.C. Feb. 1, 2017) (collecting cases). Second, even assuming this strategic decision might have some bearing on good cause, Plaintiffs had the information to make this decision before the August 20, 2022 deadline. As part of its required initial disclosures served on July 8, 2022, the City provided Plaintiffs with a copy of the subject insurance policy. Therefore, Plaintiffs knew, or should have known, for more than one month prior to the deadline what that policy covers.

Next, Plaintiffs seek to amend their Eleventh Claim (which would become their Twelfth Claim) by adding allegations concerning the City's failure "to institute the proper policies, and or train/supervise RPD VICE Officers in the supervision and monitoring of confidential informants . . . ." (Proposed Third Am. Compl., ECF No. 185-2, ¶ 308.) Again, Plaintiffs point to recent deposition testimony as the basis for the proposed amendments. (Pls.' Mem., ECF No. 186, at 4-5.) However, Plaintiffs alleged this theory of liability in their initial Complaint. Specifically, Plaintiffs' initial Ninth Claim was entitled "Monell Liability Against the City of Raleigh: Failure to Supervise and Monitor the Confidential Informant Program, 42 U.S.C § 1983." (Compl., ECF No. 2, at 29.) That claim

---

amendment. (*Id.* ¶ 6.) Plaintiffs do not contend (nor could they) that these depositions and this document provided grounds for a negligence claim against the two SEU officers.

alleged the City "maintains a policy, custom, and practice of not properly supervising or monitoring VICE officers and their informants." (*Id.* ¶ 227.)  The claim also contained allegations regarding the field-testing of drugs, the submission of drugs to the City-County Bureau of Identification ("CCBI") lab, and supervisor review of undercover buy video, among others.  (*Id.* ¶¶ 224-26, 229-31.)

On May 16, 2022, Plaintiffs omitted this claim from their first Amended Complaint.  In its place, they asserted a new claim, the Eleventh Claim, incorporating the allegations from their earlier claim about field-testing, the CCBI lab, and undercover buy video.  (*See* Am. Compl., ECF No. 41, ¶ 291.)  However, they chose to abandon their supervision and monitoring of confidential informants theory.  (*See id.* ¶¶ 288-97.)  Now, nearly one year later, they are attempting to reverse course to re-assert this theory of liability.  Plaintiffs' conduct indicates a lack of diligence.  *See Sansotta*, 2011 WL 3438422, at *2 (holding the plaintiffs were not reasonably diligent in correcting a scrivener's error and therefore fell short of satisfying the good cause standard under Rule 16(b)).

In summary, Plaintiffs have been aware of the facts to plead a negligence claim and the terms of the City's insurance policy before the deadline for amending their pleadings.  Similarly, they have been aware of (and in fact initially pled) a theory of *Monell* liability based on the supervision and monitoring of confidential informants since the beginning of this action more than one year ago.  Because their motion to amend could have been timely made, Plaintiffs have not been diligent.  Therefore, good cause to modify the Scheduling Order to permit consideration of Plaintiffs' motion to amend the complaint a third time does not exist, and the Court should deny the motion.

II.    **Amendment of the Complaint is Prejudicial to the City and Futile.**

Although the Court need not consider the Rule 15(a) standard given the lack of good cause, the Court in the exercise of its discretion should deny Plaintiffs' motion to amend.  As the Fourth Circuit recognizes, "While we generally encourage amendment, there are, of course, circumstances

that justify denying a plaintiff the opportunity to try again. We have laid out three such justifications for denying leave to amend: prejudice to the opposing party, bad faith, or where the amendment would be futile." *MedCom Carolinas*, 42 F.4th at 197 (citation omitted). Here, denial of Plaintiffs' motion to amend is warranted due to the prejudice to the City and the futility of the proposed amendments.

The proposed amendments would be prejudicial as they would disrupt the phased litigation the parties and the Court intended and would alter the City's defense strategy. Plaintiffs' proposed negligence claim would be based on vicarious liability. In contrast, Plaintiffs' current claims against the City are necessarily based on the City's *own* acts, not merely because it employs the alleged tortfeasor. *See Monell*, 436 U.S. at 692-94. Phase II concerns only those claims. Phase I concerns only the Individual Defendants' liability. By adding another claim—with a different standard of liability—and one which does not fall within Phase II, would erase the efficiencies gained by, and the reason behind, the phased litigation. Also, because only *Monell* claims have been asserted against it and because the parties have been conducting phased discovery to date, adding the new legal theory of liability would impact the City's defense strategy more than one year into the litigation. This places an unfair burden on the City. *See Graham*, 2006 WL 8438606, at *3.

Not only would the proposed amendments prejudice the City, but also, they would be futile. "A proposed amendment is [] futile if the claim it presents would not survive a motion to dismiss." *Save Our Sound OBX, Inc. v. N.C. Dep't of Transp.*, 914 F.3d 214, 228 (4th Cir. 2019) (citation omitted). Plaintiffs' proposed amendments as to the City are futile in two respects. First, Plaintiffs' proposed negligence claim against the RPD Vice unit detectives and SEU officers in their official capacities is essentially a claim against the City of Raleigh. *See Wright v. Town of Zebulon*, 202 N.C. App. 540, 543, 688 S.E.2d 786, 789 (2010) ("Official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." (internal quotations,

citation, and alteration omitted)).  Therefore, adding such a claim is redundant and unnecessary.  *Id.* at 543-44, 688 S.E.2d at 789.  Second, under North Carolina law, punitive damages are unavailable against municipalities, including municipal employees sued in their official capacities.  *Iglesias v. Wolford*, 539 F. Supp. 2d 831, 841 (E.D.N.C. 2008).  Thus, to the extent Plaintiffs attempt to amend to seek punitive damages as relief, amendment would be futile.[6]

## CONCLUSION

Plaintiffs have been aware of a potential negligence claim and a *Monell* theory of liability based on confidential informant supervision and monitoring prior to the deadline for amending their pleadings.  Their failure to seek leave to amend until nearly seven months after that deadline shows a lack of diligence, and the Court should deny their motion on this basis alone.  Additionally, Plaintiffs' proposed amendments prejudice the City and would be futile.  Accordingly, the Court should deny Plaintiffs' motion to amend the complaint a third time.

Respectfully submitted, this the 28th day of March 2023.

CITY OF RALEIGH
**Robin L. Tatum, City Attorney**

By:     /s/ Dorothy V. Kibler
        DOROTHY V. KIBLER
        Deputy City Attorney
        N.C. Bar No. 13751

By:     /s/ Amy C. Petty
        AMY C. PETTY
        Senior Associate City Attorney
        N.C. Bar No. 20894
        PO Box 590

---

[6] Adding the SEU officers as defendants of the Second Claim similarly would be futile for the reasons articulated in the SEU officers' reply in support of their motion to dismiss, which this Court granted. (*See* ECF No. 145, at 2-6 (arguing that Plaintiffs' unlawful entry claim against the SEU officers lacked merit because the allegations show that this case did not involve a "no knock" entry, the officers' presence was announced before their entry, and exigent circumstances existed because of flight and the risk of destruction of drug evidence).)

11

Raleigh, NC 27602
Tel:  (919) 996-6560
Fax:  (919) 996-7021
Dorothy.Kibler@raleighnc.gov
Amy.Petty@raleighnc.gov

*Counsel for Defendants City of Raleigh, Chief of Police Estella Patterson, and City Manager Marchell Adams-David*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:22-cv-00068-BO

YOLANDA IRVING, et al.,                )
                                       )
                    Plaintiffs,        )
                                       )
        v.                             )          **CERTIFICATE OF SERVICE**
                                       )
THE CITY OF RALEIGH, et al.            )
                                       )
                    Defendants.        )

I hereby certify that on March 28, 2023, I electronically filed the foregoing **CITY OF RALEIGH AND OFFICIAL CAPACITY DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO AMEND THE COMPLAINT** with the Clerk of Court using the CM/ECF system, which sends notification of such filing to all counsel of record as follows:

Abraham Rubert-Schewel
Nichad Davis
Tin Fulton Walker & Owen, PLLC
119 E. Main Street
Durham, NC 27701
schewel@tinfulton.com
ndavis@tinfulton.com
*Counsel for Plaintiffs*

Jason Benton
Daniel Peterson
Jessica Dixon
Parker Poe Adams & Bernstein, LLP
620 South Tyson Street, Suite 800
Charlotte, NC 28202
jasonbenton@parkerpoe.com
jessicadixon@parkerpoe.com
*Counsel for Defendant Abdullah*

Emily Gladden
Tin Fulton Walker & Owen, PLLC
204 N. Person Street
Raleigh, NC 27601
egladden@tinfulton.com
*Counsel for Plaintiffs*

Rodney Pettey
Alayna Poole
Yates McLamb & Weyher, LLP
PO Box 2889
Raleigh, NC 27602
rpettey@ymwlaw.com
apoole@ymwlaw.com
*Counsel for Defendants Monroe, Rattelade, and Gay*

13

Michael Littlejohn, Jr.
Littlejohn Law, PLLC
PO Box 16661
Charlotte, NC 28297
mll@littlejohn-law.com
*Counsel for Plaintiffs*

Ian Mance
Elizabeth Simpson
Emancipate NC
ian@emancipatenc.org
elizabeth@emancipatenc.org
*Counsel for Plaintiffs*

Norwood Blanchard, III
Crossley McIntosh Collier, & Edes, PLLC
5002 Randall Parkway
Wilmington, NC 28403
norwood@cmclawfirm.com
*Counsel for Defendant Rolfe*

**CITY OF RALEIGH**
**Robin L. Tatum, City Attorney**

By:   /s/ Amy C. Petty
AMY C. PETTY
Senior Associate City Attorney
N.C. Bar No. 20894
PO Box 590
Raleigh, NC 27602
Tel:  (919) 996-6560
Fax:  (919) 996-7021
Amy.Petty@raleighnc.gov

*Counsel for Defendants City of
Raleigh, Chief of Police Estella
Patterson, and City Manager
Marchell Adams-David*

14