IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Case No. 5:22-cv-00068-BO

| | |
|---|---|
| YOLANDA IRVING, et al., | ) |
| Plaintiffs, | ) |
| v. | ) **OMAR I. ABDULLAH'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO AMEND COMPLAINT** |
| THE CITY OF RALEIGH, et al., | ) |
| Defendants. | ) |

Defendant Omar I. Abdullah ("Abdullah") responds in opposition to Plaintiffs' Motion to Amend the Complaint (D.E. 185) (the "Motion") as follows:

## STATEMENT OF RELEVANT FACTS

1. On February 22, 2022, Plaintiffs filed this action against the City of Raleigh and several members of the Raleigh Police Department ("RPD"), including Omar I. Abdullah ("Abdullah"), seeking damages and injunctive relief based on an alleged unlawful raid of Plaintiffs Yolanda Irving and Kenya Walton's homes by the RPD in May 2020. (D.E. 2).

2. On May 16, 2022, Emancipate NC, Inc. ("Emancipate") joined the lawsuit as an organizational plaintiff and filed a First Amended Complaint asserting additional claims against the City of Raleigh, including the Second Claim entitled "Fourth Amendment: Injunctive and Declaratory Relief Against the City of Raleigh, Chief Patterson and City Manager Marchell Adams-David: Unlawful 'No Knock' or 'Quick Knock' Entry of Plaintiffs' Homes, 42 U.S.C. § 1983" ("Claim Two"). (D.E. 41).

3. On July 6, 2022, the Court entered a Scheduling Order (the "Order"). (D.E. 69). Pursuant to the Order, the deadline for Plaintiffs and the Individual Defendants to file a motion to

amend the pleadings or join additional parties was August 22, 2022. (D.E. 69, ¶ 5(b)).

4. In the Order, the Court also bifurcated discovery into two phases. All discovery concerning Plaintiffs' claims against the individual defendants, and the individual defendants' defenses thereto – Phase I discovery – was to be completed by December 20, 2022. (D.E. 69, ¶3(a); D.E. 49, ¶ 3(b)(1)). The deadline for completion of Phase I discovery was subsequently extended to March 3, 2023.[1] (D.E. 156).

5. The current deadline to file Phase I dispositive motions is March 31, 2023. (D.E. 156).[2]

6. On August 19, 2022, Plaintiffs, with leave of Court and the consent of counsel, moved to amend their Complaint a second time to replace defendants John and Jane Doe Officers 1-10 with the names of specific RPD Selective Enforcement Unit ("SEU") officers. (D.E. 89). The Court granted Plaintiffs' motion on August 31, 2022 and the Second Amended Complaint was filed that same day. (D.E. 92, 93).

7. On March 7, 2023, Plaintiffs filed the Motion, seeking to amend their Complaint a third time. As it pertains to Abdullah, Plaintiffs' proposed Third Amended Complaint seeks to (a) correct the heading of Claim Two to "clarify" that the claim is asserted against the RPD officers in their individual capacities; and (b) add a new negligence claim against the RPD officers in their official capacities.[3] (D.E. 186).

---

[1] A motion seeking a further, limited extension of the Phase I discovery deadline to April 3, 2023 to allow Defendants' to take the deposition of Plaintiffs' expert witness, David Sweeney, is currently pending before the Court. (D.E. 183). The deadline for amendment of the pleadings has never been extended.

[2] D.E. 183 also seeks a 30-day extension of this deadline, to May 1, 2023.

[3] Plaintiffs' proposed amendment also seeks to add further facts in support of their claim of supervisory liability as to Sergeant Rolfe (Claim Seven) and their *Monell* claim against the City of Raleigh (Claim Twelve).

8.  Abdullah opposes Plaintiffs' Motion.

## STANDARD

Plaintiffs' memorandum in support of the Motion incorrectly focuses on the "freely given" standard of Rule 15(a) of the Federal Rules of Civil Procedure. When a party files a motion to amend a pleading *after* a scheduling order's deadline for such motions, Rule 16(b)'s more rigorous "good cause" standard, rather than Rule 15(a)'s "freely given" standard, governs. Nourison Rug Corp. v. Parvizian, 535 F.3d 295, 298 (4th Cir. 2008); Montgomery v. Anne Arundel County, 182 Fed. Appx. 156, 162 (4th Cir. 2006); U.S. v. Godwin, 247 F.R.D. 503, 505 (E.D.N.C. 2007). "The touchstone of 'good cause' under Rule 16(b) is diligence." Marcum v. Zimmer, 163 F.R.D. 250, 255 (S.D.W.Va. 1995). "Good cause" exists where the moving party, in the exercise of reasonable diligence, could not have discovered evidence supporting the proposed amendment until after the relevant deadline had passed. DeWitt v. Hutchins, 309 F. Supp.2d 743, 748 (M.D.N.C. 2004). If the amendment could have been timely made, a party cannot establish good cause *even if the opposing party would not be prejudiced by the amendment*. Id.

Once the moving party demonstrates "good cause" under Rule 16, the movant must then establish that leave to amend is appropriate under Rule 15(a). Godwin, 247 F.R.D. at 506; Stogsdill v. Sebelius, No. 3:12-0007, at *2 (D.S.C. Dec. 17, 2013). Pursuant to Rule 15(a), the court should freely grant leave to amend a pleading *when justice requires*. Fed. Rule Civ. P. 15(a); Forstmann v. Culp, 114 F.R.D. 83, 86 (M.D.N.C. 1987). Denial of a motion to amend is appropriate where the amendment would prejudice the opposing party, the moving party acted in bad faith, or the amendment would be futile. Equal Rts. Ctr. v. Niles Bolton Assocs., 602 F.3d 597, 603 (4th Cir. 2010).

# ARGUMENT

## I. THE PROPOSED AMENDMENT TO CLAIM TWO SHOULD BE DENIED.

### A. No good cause exists to support the amendment of Claim Two.

Plaintiffs have not shown, and cannot show, good cause in support of the Motion as it pertains to Claim Two. Plaintiffs seek to amend Claim Two to add Abdullah as a defendant in his individual capacity. However, Plaintiffs do not claim evidence has been adduced in discovery that warrants this amendment or, more importantly, that such evidence could not have been discovered sooner despite their best efforts. In fact, they do not describe any diligence in support of their Motion. To the contrary, Plaintiffs assert that it has always been their intention for Claim Two to apply to the RPD officers in their individual capacities and that they merely seek now to *clarify* the heading of the claim to reflect this intention. (D.E. 186, p. 3). This assertion is entirely inconsistent with the position Plaintiffs have taken throughout this lawsuit – namely, that Claim Two contains official capacity claims only.

Plaintiffs originally filed their Complaint in this action on February 22, 2022. That Complaint did not include Claim Two. (D.E. 2). Thereafter, on May 16, 2022, Emancipate joined the lawsuit as an organizational plaintiff and filed a First Amended Complaint which included the then newly-added Claim Two titled "Fourth Amendment: Injunctive and Declaratory Relief Against the City of Raleigh, Chief Patterson and City Manager Marchell Adams-David: Unlawful 'No Knock' or 'Quick Knock' Entry of Plaintiffs' Homes, 42 U.S.C. § 1983." (D.E. 41). In addition to the inclusion of this new claim, the first Amended Complaint contained 33 additional paragraphs of factual allegations pertaining to the *SEU officers'* alleged pattern of executing "No Knock" and "Quick Knock" warrants and the RPD's allegedly deficient warrant execution policies. (D.E. 41, ¶¶ 153-154, 157-186). Since the filing of the first Amended Complaint,

Emancipate has repeatedly maintained that Claim Two is being brought by *Emancipate* and, further, that it is a claim for injunctive and declaratory claim relief against the City of Raleigh and official capacity defendants.[4]

Nowhere is this position more apparent than in Emancipate's first post-complaint filing with the Court. In its Memorandum in Opposition to Motion to Dismiss, Emancipate meticulously lays out how *its* claim for *declaratory and injunctive relief* related to RPD's "unlawful and systemic warrant execution methods" furthers its organizational mission to end structural racism and mass incarceration in North Carolina. ("While this lawsuit arises in the context of a particular Raleigh police detective who routinely falsified warrants, the Complaint alleges (and *Emancipate NC seeks to end*) a systemwide trend of Raleigh officers unconstitutionally executing warrants in a 'No-Knock' or 'Quick-Knock' fashion.") (D.E. 122, p 5). Indeed, the crux of Emancipate's entire memorandum is its purported standing to bring Claim Two. ("The Amended Complaint (D.E. 41) states a claim for declaratory and injunctive relief under 42 U.S.C. § 1983 and *Emancipate NC* has standing to bring *its* claim, because the Defendants' unlawful conduct injures Emancipate NC and perceptibly impairs Emancipate NC from carrying out its mission to end structural racism in the legal system in North Carolina.") (D.E. 122, pp 1-2) (emphases added). Emancipate maintains that RPD's threat to its mission can only be redressed by amendment of the RPD's warrant execution policy, and more specifically, elimination of "No Knock" warrants – injunctive relief which could not flow from the personal liability of the individual defendants. (D.E. 122).

Emancipate continued to take this stance throughout this litigation. For instance,

---

[4] Emancipate was dismissed as a party plaintiff for lack of standing on March 13, 2023. (D.E. 191). However, Emancipate's attorneys of record, Elizabeth Simpson and Ian Mance, are reportedly remaining in this litigation as counsel for the individual Plaintiffs. See D.E. 195.

Emancipate made the following representations in its Memorandum in Opposition to City's Motion for Protective Order:

> 3. On May 16, 2022, Emancipate NC joined the lawsuit as an organizational plaintiff, adding ***its claims for injunctive and declaratory relief*** against ***official capacity defendants*** to end the unconstitutional "No Knock" and "Quick Knock" warrant executions by the Raleigh Police Department because they violate the Fourth Amendment. These claims are found in "***Claim Two***." (DE 41).
>
> 10. On December 1, 2022, the SEU Defendants served discovery requests upon Emancipate NC about ***the Claim Two injunctive and declaratory relief***.
>
> 11. On December 2, 2022, Emancipate NC served discovery about ***the Claim Two injunctive and declaratory relief*** on Defendant Estella Patterson, seeking inter alia, information about the new "No Knock" policy, including the 30(b)(6) deposition of a corporate representative.
>
> 13. On December 27, 2022, Defendant Abdullah served discovery about ***the Claim Two injunctive and declaratory relief*** on Emancipate NC.

(D.E. 158) (emphases added). Similarly, when Abdullah and the since-dismissed SEU defendants served Notices of Deposition of Emancipate pursuant to Rule 30(b)(6), Emancipate again filed a Motion for Protective Order opposing this discovery ***on the grounds that it had not asserted any individual capacity claims against defendants*** and that Abdullah and the SEU officers were improperly attempting to conduct discovery on *Emancipate's* Phase II claim. Emancipate made the following representations in that Motion:

> 2. On May 16, 2022, Emancipate NC joined the lawsuit as an organizational plaintiff, adding ***its claims for injunctive and declaratory relief*** against ***official capacity defendants*** to end the unconstitutional "No Knock" and "Quick Knock" warrant executions by the Raleigh Police Department because they violate the Fourth Amendment. This claim is found in "***Claim Two***."
>
> 4. Emancipate NC does not have any claims against individual capacity defendants. It has not sued the Individual SEU Defendants and it has not sued Defendant Abdullah.

8. ***Emancipate NC's official capacity claims (Claim Two)*** against Defendant Chief of Police Estella Patterson and Defendant City Manager Marchell Adams-David seeking declaratory and injunctive relief ***are functionally claims against the City of Raleigh***.

(D.E. 166) (emphases added).

### B. Abdullah would be prejudiced by the proposed amendment to Claim Two.

Even though Abdullah need not demonstrate any prejudice from Plaintiffs' request to "correct" Claim Two to apply to him in his individual capacity, he would, in fact, be prejudiced by such an amendment at this stage in the litigation. To date, Abdullah has relied on the repeated representations that Claim Two seeks only injunctive relief related to RPD's warrant execution practice and has taken positions in his filings with the Court based on that understanding. See, e.g., Abdullah's Reply to Emancipate's Mem. in Opp'n to City's Mot. for Protective Order (D.E. 161, p 3) ("First, Emancipate's Claim Two does not appear to articulate claims against Abdullah. As a *former* Raleigh Police Department detective, it strains logic to conclude that Emancipate's claim for injunctive and declaratory relief concerning alleged 'No Knock' or 'Quick Knock' execution applies to him. Accordingly, it is puzzling that Emancipate has determined that Abdullah's deposition topic and document requests specifically relate to its Claim Two.") (emphasis in original). Indeed, as it pertains to Abdullah, discovery in this case and, therefore, Abdullah's defense strategy, has focused exclusively on Abdullah's handling of confidential informants and the veracity of certain representations he made in a May 20, 2020 search warrant application. It has not concentrated on Abdullah's entry into Plaintiffs' homes or on any alleged practice by him of conducting "No Knock" or "Quick Knock" raids. This is abundantly clear by the fact that Plaintiffs' counsel did not ask Abdullah a *single question* about "No Knock" or "Quick Knock" warrants, or about the manner of entry into Plaintiffs' homes on May 21, 2020, at his

PPAB 8769517v3
7
Case 5:22-cv-00068-BO   Document 200   Filed 03/28/23   Page 7 of 13

December 15, 2022 deposition. Plaintiffs' belated attempt to expand their theory of liability vis-à-vis Claim Two under the guise of "conforming with the evidence" is particularly curious given the complete absence of any evidence that Abdullah, or any other VICE officer for that matter, played any part in the alleged unconstitutional "No Knock", military-style entry into Plaintiffs' homes. Where there is no evidence to support the proposed amendment – either before or after leave to amend is made – there can be no good cause for the amendment. See Parvizian, 535 F.3d at 298-99; see also Ayala v. Wolfe, 546 Fed.Appx. 197, 203 (4th Cir. 2013) (district could did not abuse its discretion in denying plaintiff's motion to amend to add state law excessive force claims given lack of evidence supporting such claims). Consequently, Plaintiffs' motion to amend Claim Two should be denied.

### C. Plaintiff's proposed Claim Two amendment is futile.

Even assuming that Plaintiffs can demonstrate sufficient industriousness in pursuing their claims to meet Rule 16's "good cause" standard, their proposed amendment to Claim Two is futile and, therefore, does not pass muster under Rule 15.

Denial of a motion to amend is appropriate where the proposed amendment would be futile. Save Our Sound OBX, Inc. v. North Carolina Dep't of Transp., 914 F.3d 213, 228 (4th Cir. 2019). A proposed amendment is futile if it would not survive a motion to dismiss. Id.

The SEU Defendants argued, in support of their Motion to Dismiss, that to the extent that Claim Two was asserted against them, it failed to state a claim because the allegations in the Second Amended Complaint showed that there was no "no knock" or "quick knock" entry into the two subject residences. (D.E. 145 pp 2-6). This Court granted the SEU Defendants' Motion to Dismiss and ordered that they be removed from the case. (D.E. 191 p 4). Plaintiffs now purport to amend their pleading to "clarify" that their "no knock"/"quick knock" claim is also brought against

the individual-capacity defendants, including the SEU Defendants and Abdullah. Claim Two, if it ever existed against the SEU Defendants, has been dismissed as to them since their Motion to Dismiss was granted and they have been removed from this action altogether. If Plaintiffs did not have a viable "no knock" or "quick knock" claim against the SEU Defendants, then, by extension, they could not possibly have such a claim against Abdullah, who is only alleged to have "followed" the SEU Defendants after their initial entry. (D.E. 93, ¶225; D.E. 185-2, ¶225). Moreover, Plaintiffs have not adduced any evidence in this case that Abdullah made a "no knock" or "quick knock" entry into the subject residences. For these reasons, Plaintiffs' proposed amendments to Claim Two should be denied as futile.

## II.   THE PROPOSED AMENDMENT TO ADD A NEGLIGENCE CLAIM AGAINST ABDULLAH IN HIS OFFICIAL CAPACITY SHOULD BE DENIED.

### A.   No good cause exists to support the addition of a negligence claim against Abdullah.

Plaintiffs contend that recent deposition testimony justifies their request, *after* the close of Phase I discovery, to amend their Complaint to add a negligence claim against Abdullah and the other RPD officers in their official capacities. Plaintiffs assert that this amendment is appropriate, in part, "because Defendants have indicated that their insurer may not provide indemnification in this matter for intentional acts." (D.E. 186, p 4). Here again, however, Plaintiffs cannot point to any evidence that they reasonably could not have discovered prior to the amendment deadline to support an amendment on this basis.

The City of Raleigh produced the applicable Certificate of Insurance along with its Rule 26 Initial Disclosures on July 8, 2022, more than one month before the deadline to amend pleadings. If Plaintiffs had any question about the scope of available coverage, they had ample opportunity to inspect the insurance policy and seek leave to amend their Complaint in order to

assert any other claims that they believed might fall within the policy's insuring agreement. Plaintiffs could and should have acted sooner if they wanted to amend their pleading to include a negligence claim against Abdullah. Their delay in doing so certainly does not constitute good cause warranting amendment at this late stage. Montgomery, 182 Fed.Appx. at 162 (no good cause to amend complaint where counsel waited several weeks to file motion).

**B.  An amendment to assert a negligence claim against Abdullah would be futile.**

Claims against government employees in their official capacity are really claims against the government entity and are subject to dismissal where the government entity is also a defendant. Hart v. Union County, No. 3:19-cv-00159, 2020 WL 1243407, at *3 (W.D.N.C. Mar. 13, 2020) (citing Kentucky v. Graham, 473 U.S. 159, 165-66 (1985)).

Here, the City of Raleigh is a named defendant in this action. Plaintiffs' proposed Tenth Claim for negligence against Abdullah and other RPD officers in their official capacity is functionally a claim against the City of Raleigh and, therefore, is subject to dismissal. Because this claim would not withstand a motion to dismiss, Plaintiffs' motion to amend to add a negligence claim should be dismissed as futile. See Love-Lane v. Martin, 355 F.3d 766 (4th Cir. 2004) (§ 1983 claim against school superintendent in his official capacity dismissed as duplicative of claim against defendant school board); Doe v. Durham Pub. Sch. Bd. of Educ., No. 1:17-cv-773, 2019 WL 331143, at *20 (M.D.N.C. Jan. 25, 2019) ("Here, the state tort claims against the individual DPS Defendants in their official capacities are duplicative and will be dismissed, where the School Board is a named party and will remain so moving forward.").

**C.  Abdullah would be prejudiced by a late addition of a negligence claim.**

The interests of justice certainly do not require that leave be given for Plaintiffs to amend their Complaint to now add a negligence claim against Abdullah and the other RPD defendants.

Instead, given that Plaintiffs' motion comes on the eve of the dispositive motion deadline and after Phase I discovery has closed, justice requires the opposite.

To date, Plaintiffs' narrative has been that Abdullah deliberately and corruptly conspired with an unreliable confidential informant to fabricate trafficking heroin charges against unsuspecting Black men. They asserted claims against Abdullah consistent with this story including fabrication of evidence and civil conspiracy. Now, after Phase I discovery has closed, and within weeks of the deadline to file Phase I dispositive motions, Plaintiffs seek to introduce a new theory – that Abdullah's handling of the confidential informant and the execution of a search warrant at the incorrect address amounts to *negligence* and not intentional conduct. Had Plaintiffs included this theory in their original pleading, the remaining defendants may have altered the manner or method in which they conducted discovery. As it stands now, however, the remaining defendants are deprived of the opportunity to conduct any discovery on this claim. This is reason enough to deny the Motion. Courts in this circuit routinely refuse to grant leave to amend where the amendment injects a new theory into the case that would require "the gathering and analysis of facts not already considered by the opposing party." See Culp, 114 F.R.D. at 87-88 (quoting Johnson v. Oroweat Goods Co., 785 F.2d 503, 510 (4th Cir. 1986)); Patterson v. W. Carolina Univ., No. 2:12-cv-3, 2013 WL 12241592, at *3 (M.D.N.C. Mar. 4, 2013) (denying motion to amend complaint where defendant was denied the opportunity to conduct discovery on the proposed claim or test the pleadings through dispositive motions).

## **CONCLUSION**

Based on the foregoing reasons, Plaintiffs' Motion to Amend the Complaint should be denied.

Respectfully submitted, this the 28th day of March, 2023.

/s/ Jason R. Benton
Jason R. Benton
N.C. State Bar No. 27710
Jessica C. Dixon
N.C. State Bar No. 36719
Daniel E. Peterson
N.C. State Bar No. 41251
**PARKER POE ADAMS & BERNSTEIN LLP**
Bank of America Tower
620 S. Tryon St., Suite 800
Charlotte, NC 28202
Telephone: (704) 372.9000
Facsimile: (704) 334.4706
Email: jasonbenton@parkerpoe.com
jessicadixon@parkerpoe.com
danielpeterson@parkerpoe.com

*Attorneys for Defendant Omar I. Abdullah*

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this date, the foregoing **Omar I. Abdullah's Response in Opposition to Plaintiffs' Motion to Amend Complaint** was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send notification and serve same upon counsel of record via the Court's electronic case filing system.

This the 28th day of March, 2023.

/s/ Jason R. Benton
Jason R. Benton
N.C. State Bar No. 27710
Daniel E. Peterson
N.C. State Bar No. 41251
Jessica C. Dixon
N.C. State Bar No. 36719
**PARKER POE ADAMS & BERNSTEIN LLP**
Bank of America Tower
620 S. Tryon St., Suite 800
Charlotte, NC 28202
Telephone: (704) 372.9000
Facsimile: (704) 334.4706
Email: jasonbenton@parkerpoe.com
　　　　danielpeterson@parkerpoe.com
　　　　jessicadixon@parkerpoe.com

*Attorneys for Defendant Omar I. Abdullah*