IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

CIVIL ACTION NO.: 5:22-cv-00068-BO

| | |
|---|---|
| YOLANDA IRVING, individually and as the natural parent and guardian of J. I., JUWAN HARRINGTON, CYDNEEA HARRINGTON, KENYA WALTON, individually and as the natural parent and guardian of R.W., ZIYEL WHITLEY, DYAMOND WHITLEY, KAMISHA WHITLEY, and NANETTA GRANT as the natural parent and guardian of Z. G.<br><br>     Plaintiffs,<br>vs.<br><br>THE CITY OF RALEIGH, Officer OMAR I. ABDULLAH, Sergeant WILLIAM ROLFE, Officer RISHAR PIERRE MONROE, Officer JULIEN DAVID RATTELADE, and Officer MEGHAN CAROLINE GAY, Chief of Police ESTELLA PATTERSON and City Manager MARCHELL ADAMS-DAVID, in their official capacities.<br><br>     Defendants. | **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT GAY, MONROE AND RATTELADE'S MOTION FOR SUMMARY JUDGMENT** |

Pursuant to Local Civil Rule 7.1(c) and Rule 56 of the Federal Rules of Civil Procedure, Defendant Meghan Gay, Defendant Rishar Monroe, and Defendant Julien Rattelade ("VICE Defendants"), submit this Memorandum of Law in support of their Motion for Summary Judgment filed contemporaneously herewith. The forecast of the evidence produced in discovery, along with the pleadings, affidavits and documents filed with the Court, demonstrate that there is no genuine dispute of any material fact as to Plaintiffs' claims against VICE Defendants and that VICE Defendants are entitled to summary judgment as a matter of law.

## STATEMENT OF THE CASE

On February 21, 2022 Plaintiffs' filed their Complaint against the above Defendants. [DE 1]. On February 22, 2022, Plaintiffs' filed a redacted version of their first Complaint. [DE 2] Plaintiffs filed an Amended Complaint on May 16, 2022. [DE 41]. Plaintiffs filed their Second Amended Complaint on August 31, 2022. [1] [DE 93]. In the Second Amended Complaint, Plaintiffs seek damages for injuries allegedly sustained as a result of a search warrant execution. Plaintiffs allege in their Second Amended Complaint that members of Raleigh Police Departments VICE Unit, Defendant Meghan Gay ("Detective Gay"), Defendant David Rattelade ("Sgt. Rattelade"), and Defendant Rishar Monroe ("Detective Monroe")(collectively, "VICE Defendants") conspired with their co-defendant, Defendant Abdullah and a confidential informant, Dennis Williams ("Aspirin"), to deprive Plaintiffs of their constitutional rights in violation of 42 U.S.C. §1983. [DE 93]. VICE Defendants answered the Second Amended Complaint and denied liability for the claims asserted against them. [DE 98, 99,100]. VICE Defendants further asserted affirmative defenses of immunity, including, but not limited to, qualified immunity. [DE 98, 99, 100].

At the time of this Motion, Plaintiffs have deposed each of the VICE Defendants, and most of Phase I discovery was complete on or near March 3, 2023.

## STATEMENT OF FACTS

On May 21, 2020, Defendant Abdullah was a detective in the Vice Unit with the Raleigh Police Department ("RPD"). (Second Am. Compl. ¶ 44). The RPD Vice Unit is tasked with enforcing drug laws and often uses confidential informants for this purpose. (*Id.* at ¶¶ 46-47). Defendants Monroe, Rattelade and Gay (VICE Defendants) were also members of the Vice Unit.

---

[1] At this time, Plaintiffs have motioned to "Amend/Correct The Complaint Filed by Emancipate NC" [DE 185]

Defendant Rattelade joined the Vice Unit in 2015 (Rattelade Dep. 7); Defendant Monroe started with the Unit in 2017 (Monroe Dep. 7); and Defendant Gay joined in December 2019 (Gay Dep. 7).

In the fall of 2018,, Defendant Abdullah developed, and received approval to work with a confidential informant ("CI") code named Aspirin. (Second Am. Compl. ¶¶ 55-63). Aspirin was not a CI used by any of the VICE Defendants, as he was monitored and handled exclusively by Defendant Abdullah. (Rattelade Dep. 149-150). In late 2018 and early 2020, Defendant Abdullah used Aspirin to conduct multiple controlled buys. Typically, after a controlled buy, Defendant Abdullah would not submit the suspected narcotics recovered from the buy to the lab for testing until the District Attorney's Office prompted him. (Abdullah Dep. 96-97).

On January 2, 2020, Aspirin conducted a controlled buy for heroin from a suspected drug dealer named Curtis Logan, which resulted in a negative **field** test. (Abdullah Dep. 80-82; Rolfe Dep. 74). However, field tests of narcotics are not considered reliable, and therefore, are not admissible in court. (Abdullah Dep. 82).

After that buy, Defendant Abdullah submitted the recovered substance to the lab for testing. (Abdullah Dep. 97-98). Unfortunately, in 2020, it took longer for lab results to be completed and made available than it does now. (Gay Dep. 188). Results could come back more than a month after they were submitted. (Gay Dep. 189-190; Gwinn Dep. 135). Moreover, in 2020, RPD officers did not receive any alert as to when lab results in their cases were complete and available; rather, officers had to follow up on their own to access a database to look up any lab results pertaining to their cases. (Gay Dep. 189-190; Gwinn Dep. 133, 145-146).

On May 20, 2020, Aspirin and Defendant Abdullah went to Burgundy Street in Raleigh, NC where Aspirin pointed to the residence at 1628 Burgundy Street, Apt. B, Raleigh, NC 27610

3

Case 5:22-cv-00068-BO Document 203 Filed 03/31/23 Page 3 of 14

("1628-B") as a place from which heroin was being sold. (Abdullah Dep. 50-52). Aspirin told Defendant Abdullah that he had previously been to 1628-B and that the controlled buy of heroin would take place there later that day. (*Id.*) The controlled buy did occur later that day. (Abdullah Dep. 54-55).

On May 21, 2020, Defendant Abdullah applied for, and received, a search warrant to search Apartment 1628-B. (Second Am. Compl. ¶ 101). In the application for the search warrant, Defendant Abdullah stated that "within the past 72 hours a confidential informant was utilized to purchase an amount of heroin from a black male who goes by the name Marcus and same is residing at 1628 Burgundy St. Apt. B, Raleigh, NC 27610. According to the confidential information, Marcus is selling heroin out of the apartment." (Rattelade Dep.,120, Exhibit 4).

Plaintiff Yolanda Irving ("Irving") and her children lived at apartment 1628-B. (*Id.* at ¶¶ 114-115). Plaintiff Kenya Walton ("Walton") rented the residence next store at 1628 Burgundy Street, Apt. A and lived there with her children. (Walton Dep. 15-16) (Second Am. Compl. ¶¶ 116-117).

On May 21, Selective Enforcement Unit (SEU) officers along with the VICE Defendants and Defendant Abdullah, arrived at the location indicated on the search warrant. SEU officers execute search warrants for the Raleigh PD. The SEU officers were familiar with the apartment complex as they had done multiple search warrants there as well as responded to multiple calls for service. (Ortiz Dep. 50), (Mead Dep. 73).

Defendants Rattelade and Gwinn drove Aspirin to a location near the target apartment so that he could make the controlled buy. They did this because Defendant Abdullah drove the van with the SEU officers. (Rattelade Dep. 153 & 161). They did not frisk Aspirin prior to getting in the car as should have been done by Defendant Abdullah. (Rattelade Dep. 160). Aspirin was given

4

$800 by Defendant Abdullah for the controlled buy. (Rattelade Dep. 154). After Aspirin completed the controlled buy, he was picked up by Defendant Rattelade. Aspirin handed Defendant Rattelade the heroin that had just been purchased and he was driven to a nearby shopping center. (Rattelade Dep. 162).

After the controlled buy occurred, the SEU officers started to the apartment to conduct the search warrant. As they approached the unit, they saw four teenage males standing out front of the target apartment. (Mead Dep. 75). Once alerted to the presence of the officers, the two males fled into the target apartment and the other two into the adjacent one in which Plaintiff Walton resided. (Mead Dep. 75). The SEU went to both apartments, announcing their presence. After the SEU officers' initial entry, and in response to a request made by Defendant Abdullah, Plaintiff Walton consented to a search of her residence. (Walton Dep. 49).

The search did not discover any drugs or the $800 in buy money that had been given to Aspirin.

When Defendant Rattelade saw the package of heroin that Aspirin handed him, he later was able to visually inspect it, thought it did not look right and conducted a field test. (Rattelade Dep. 140-141). The field test tested negative for heroin. Defendant Rattelade the next day looked at the video footage from the buy from a camera on Defendant Abdullah's desk. While watching the video he was able to determine that Aspirin was saying "60" when asked by VanIrvin for the purchase of the drugs. It was at this time Defendant Rattelade first determined that Aspirin may have been planting the fake drugs. (Rattelade Dep. 155).

Defendant Rattelade and Defendant Monroe then reported what they had found to their superiors and the district attorney's office. (Rattelade Dep. 132-133).

Although Plaintiffs claim that Detectives Abdullah, Monroe, Rattelade, Gay and Sgt. Rolfe "conspired to fabricate heroin trafficking charges and wrongfully arrest and seize over 15 individuals," all the VICE Defendants testified that they were not aware that Aspirin has been fabricating evidence until after the May 21, 2020 search. (Rattelade Dep. 134, Monroe Dep. 53, Gay Dep. 131).

From all of the prior buys involving Aspirin, only two field tests were conducted. The first was January 2, 2020, which came back negative for heroin but was sent to the CCBI lab for testing. The other field test was after the May 21st search complained of in this case.

After the field test from the January 2, 2020 controlled buy, the VICE Defendants started having suspicions that Aspirin was being duped by the drug dealers. Detective Monroe testified that his opinion was that Aspirin purchased real narcotics from the suspect the day prior and when he increased to the trafficking amounts, Aspirin set himself up to be ripped off by the drug dealer. (Monroe Dep. 53). Defendant Rattelade testified in his deposition, that they believed the dealers were committing a felony offense of selling fake drugs. They believed that probable cause existed that a crime was occurring, but they did not have the details of each investigation nor lab results to definitively say as these buys were not their cases. (Rattelade Dep. 135).

## ARGUMENT

### I. PLAINTIFFS CANNOT SHOW THE VICE DEFNDANTS ARE LIABLE UNDER BYSTANDER OR CONSPIRACY THEORIES OF LIABILITY AND THERE ARE NO FACTS WHICH SUPPORT DIRECT LIABILITY AGAINST VICE DEFENDANTS.

#### A. Standard for Summary Judgment

A defendant is entitled to summary judgment when a plaintiff "has failed to make a sufficient showing on an essential element of her case with respect to which to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may satisfy its

burden by showing the discovery materials and other documents in the record "do not establish the . . . presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). The "moving party on a summary judgment motion need not produce evidence, but simply can argue that there is an absence of evidence by which the nonmovant can prove his case." *Cray Commc'ns, Inc. v. Novatel Computer Sys., Inc.*, 33 F.3d 390, 393–94 (4th Cir. 1994) (internal citations omitted).

If the moving party makes its motion properly, the burden shifts to the nonmoving party, whose "response must… set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). Unlike the moving party, the "opposing party may not rely merely on allegations or denials in its own pleadings; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial." *Id.*

**B.      Plaintiffs Cannot Support A Claim of Direct Liability Against Vice Defendants.**

Plaintiffs can show no facts to support direct liability against Vice Defendants, nor does their Complaint allege direct liability against Vice Defendants. Plaintiffs assert six claims against Vice Defendants in their Complaint. Plaintiffs can produce no facts against Vice Defendants that the Vice Defendants "deliberately or with a reckless disregard for the truth made material[ly] false statements in the search warrant affidavit." *Bailey v. Polk*, 2011 WL 4565469 (W.D.N.C. March 7, 2011) (unreported) citing *Franks v. Delaware*, 438 U.S. 154,171 98 S. Ct. 2674 (1978). "Reckless disregard can be established by evidence that an officer acted 'with a high degree of awareness of a statement's probably falsity,' that is, 'when viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported.'" *Id.* citing *Miller v. Prince George's County, Md.*, 475 F. 3d 621, 627 (4th Cir. 2007) (citations omitted).

7

Here, Plaintiffs cannot show any facts that demonstrate Vice Defendants were the affiants of the search warrant executed on May 21, 2020. In fact, the warrant was applied for and sworn to only by Defendant Abdullah. Plaintiffs cannot establish direct liability against Vice Defendants on the basis of the warrant nor can Plaintiffs attribute any statements of the Vice Defendants to the warrant application. Because the claims for relief sought by Plaintiffs all stem from the execution of the warrant on May 21, 2020, which Plaintiffs claim contained false statements, and none of those statements are attributable to Vice Defendants, Plaintiffs seek to establish liability on the basis of bystander or conspiracy theories, neither of which they can support.

**C.      There Are No Facts Showing the Vice Defendants Were Parties to A Conspiracy**

To support a claim for conspiracy to deprive an individual of a constitutional right in violation of § 1983, Plaintiffs must show that the VICE Defendants (1) "acted jointly in concert" and (2) performed an overt act (3) "in furtherance of the conspiracy" that (4) resulted in the deprivation of a constitutional right. *Hinkle v. City of Clarksburg, W. Va.*, 81 F.3d 416, 421 (4th Cir.1996) (citing *Hafner v. Brown*, 983 F.2d 570, 577 (4th Cir.1992)).

In the present matter, the Plaintiffs claims of conspiracy are based on the contention that the Vice Defendants conspired with Aspirin to fabricate heroin trafficking charges and as a result of those "fabricated charges" the Plaintiffs' homes were illegally raided. (Second Am. Compl. 73-74). However, there is no evidence that any of the Vice Defendants conspired with Aspirin to fabricate such charges. There is no evidence of any Vice Defendant committing an "overt act" in further of the alleged conspiracy. The evidence of record is that Aspirin was Abdullah's CI. Abdullah communicated with him, paid him and was in charge of the investigations in which Aspirin did the controlled buy. (Rattelade Dep.136, Gay Dep. 192). The Vice Defendants' roles in the controlled buys were simply to provide security to make sure no one was hurt. (Gay Dep. 122).

Thus, Plaintiffs have no evidence that the Vice Defendants fabricated the charges, committed any overt act in furtherance of a conspiracy or had a meeting of the minds to conspire.

**D. Plaintiffs Cannot Establish Bystander Liability Against Vice Defendants.**

In addition to overt acts, the Fourth Circuit has recognized that "[a]cquiescence can amount to a conspiracy agreement when ... one police officer watches an open breach of the law and does nothing to seek its prevention." *Hafner,* 983 F.2d at 578. This is commonly referred to as "bystander" liability, which allows an officer to be held liable if the bystanding officer: "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Randall v. Prince George's Cty*, 302 F.3d 188, 204 (4th Cir. 2002). Bystander liability "is premised on a law officer's duty to uphold the law and protect the public from illegal acts, regardless of who commits them." *Id*. at 203.

*1. Plaintiffs Cannot Prove Any Facts Showing Vice Defendants Knew Or Should Have Known Of Any Violation of Plaintiffs' Constitutional Rights By A Fellow Officer*

There is no evidence of record that Vice Defendants knew that Defendant Abdullah or Aspirin were violating any of the Plaintiffs' rights. There is also no evidence that Vice Defendants observed any open and obvious violation of any Plaintiffs' rights.

The Vice Defendants have all testified that prior to the search on May 21, 2020, they all believed that the smaller buys were legitimate and it was the larger sale of heroin where they thought the drug dealers were "duping" Aspirin. (Gay Dep. 131, Monroe Dep 52, Rattelade Dep. 166.) Moreover, prior to May 21st, this was simply their belief as they did not have definitive proof such as the CCBI lab results. (Rattelade Dep. 67). The only testing that had been done prior to the May 21st date was a field test which is not definitive, as the field tests could not rule out a controlled substance entirely. (Monroe Dep 52). Nevertheless, the Vice Defendants still believed that the drug dealers were committing felonies for the sale of counterfeit substances should the lab results come

9

back negative. (Rattelade Dep. 135-136). After the May 21st search, for the first time, Vice Defendants suspected that Aspirin might be fabricating the drugs. Following up their suspicion they went to their superiors and then the district attorney's office. The Vice Defendants were the individuals who ultimately uncovered Aspirins' actions, and promptly acted upon that information.

> 2. *Plaintiffs Cannot Show That Vice Defendants Had A Reasonable Opportunity To Prevent Harm Nor That They Failed To Act*

Vice Defendants were not always present in each instance Aspirin was used as a confidential information. Vice Defendants' initial interactions with Aspirin showed them that although he may have some minor performance issues, they did not have any reason to believe his conduct amounted to a major concern. (Monroe Dep. 71, Rattelade Dep. 37). Any conduct observed by Vice Defendants as less than ideal behavior by an informant did not amount to an open violation of an individual's rights. Vice Defendants did not have an opportunity to prevent any harm to Plaintiffs, nor did they fail to act, because none of Vice Defendants were aware of Aspirin violating anyone's rights.

Vice Defendants eventually began to piece together their individual experiences involving Aspirin, which all came to together after the May 21, 2020 search warrant execution. At that time, Vice Defendants realized that Aspirin may be purposefully acting against his targets and scamming the detectives by switching the illegal drugs he purchased, marijuana, with substances appearing to be heroin. (Rattelade Dep. 98, Gay Dep. 183, Monroe Dep. 151). The first opportunity Vice Defendants had to prevent harm and report Aspirin came after the May 21, 2020 controlled buy and search warrant execution. Following this, Vice Defendants immediately went to their supervisors, and reported their concerns to the district attorney's office, in an effort to prevent future harm. Plaintiffs cannot show that Vice Defendants had an opportunity to act earlier, because Plaintiffs cannot show any facts proving Vice Defendants had sufficient information upon which

10

to act prior to May 21, 2020. For these reasons, Plaintiffs cannot establish bystander liability against Vice Defendants.

## **CONCLUSION**

For the reasons stated herein and the authorities cited in support, Vice Defendants respectfully requests that this Court grant their motion for summary judgment, dismiss Plaintiffs' claims against them with prejudice, and for such other relief as the Court deems appropriate.

This the 31st day of March, 2023.

/s/ Rodney E. Pettey_____
RODNEY E. PETTEY
N.C. State Bar No.: 17715
rpettey@ymwlaw.com
ALAYNA M. POOLE
N.C. State Bar No.: 57880
apoole@ymwlaw.com
Post Office Box 2889
Raleigh, North Carolina 27602
Telephone: (919) 835-0900
Facsimile: (919) 835-0910
*Counsel for R.P. Monroe, J.D. Rattelade,*
*and M.C. Gay in their individual capacities*

**CERTIFICATION OF COMPLIANCE WITH APPLICABLE WORD LIMIT**

Pursuant to LR 7.2(f), the undersigned hereby certifies that the foregoing memorandum complies with the 8,400-word limit applicable to a memorandum in support or in opposition to a motion (other than a discovery motion), which has been computed using the word count generated by the word processing software, counting the elements required by subsection LR 7.2(f)(1). The number of words contained in this memorandum is: 3,683.

Respectfully submitted,

/s/ Rodney E. Pettey_____
RODNEY E. PETTEY
N.C. State Bar No.: 17715
rpettey@ymwlaw.com
ALAYNA M. POOLE
N.C. State Bar No.: 57880
apoole@ymwlaw.com
Post Office Box 2889
Raleigh, North Carolina 27602
Telephone: (919) 835-0900
Facsimile: (919) 835-0910
*Counsel for R.P. Monroe, J.D. Rattelade,
and M.C. Gay in their individual capacities*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

CIVIL ACTION NO.: 5:22-cv-00068-BO

| | |
|---|---|
| YOLANDA IRVING, individually and as the natural parent and guardian of J. I., JUWAN HARRINGTON, CYDNEEA HARRINGTON, KENYA WALTON, individually and as the natural parent and guardian of R.W., ZIYEL WHITLEY, DYAMOND WHITLEY, KAMISHA WHITLEY, and NANETTA GRANT as the natural parent and guardian of Z. G.<br>Plaintiffs,<br>vs.<br><br>THE CITY OF RALEIGH, Officer OMAR I. ABDULLAH, Sergeant WILLIAM ROLFE, Officer RISHAR PIERRE MONROE, Officer JULIEN DAVID RATTELADE, and Officer MEGHAN CAROLINE GAY, Chief of Police ESTELLA PATTERSON and City Manager MARCHELL ADAMS-DAVID, in their official capacities.<br>Defendants. | **CERTIFICATE OF SERVICE** |

I hereby certify that on March 31, 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECF participants: Abraham Rubert-Schewel (schewel@tinfulton.com), Emily D. Gladden (Egladden@tinfulton.com), Michael L. Littlejohn, Jr. (mll@littlejohn-law.com), and Nichad Davis (ndavis@tinfulton.com), *Counsel for Plaintiffs;* Amy C. Petty (Amy.Petty@raleighnc.gov), Dorothy V. Kibler (Dorothy.Kibler@raleighnc.gov), *Counsel for Defendants The City of Raleigh, Estella Patterson, Marchell Adams-David;* Daniel E. Peterson (danielpeterson@parkerpoe.com), Jason R. Benton (jasonbenton@parkerpoe.com), Jessica C. Dixon (jessicadixon@parkerpoe.com), *Counsel for Defendant Omar Abdullah;* and Norwood P.

13

Blanchard, III (norwood@cmclawfirm.com), C*ounsel for Defendant William Rolfe,* and I hereby certify that I have mailed the document to the following non-CM/ECF participants: None.

Respectfully submitted,

/s/ Rodney E. Pettey
RODNEY E. PETTEY
N.C. State Bar No.: 17715
rpettey@ymwlaw.com
ALAYNA M. POOLE
N.C. State Bar No.: 57880
apoole@ymwlaw.com
Post Office Box 2889
Raleigh, North Carolina 27602
Telephone: (919) 835-0900
Facsimile: (919) 835-0910
*Counsel for R.P. Monroe, J.D. Rattelade, and M.C. Gay in their individual capacities*