IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No.: 5:22-CV-00068-BO

| | |
|---|---|
| YOLANDA IRVING, individually and as the natural parent and guardian of J.I., JUWAN HARRINGTON, CYDNEEA HARRINGTON, KENYA WALTON individually and as the natural parent and guardian of R.W., ZIYEL WHITLEY, DYAMOND WHITLEY, KAMISHA WHITLEY, and NANETTA GRANT as the natural parent and guardian of Z.G.<br><br>Plaintiffs,<br><br>vs.<br><br>THE CITY OF RALEIGH, Officer OMAR I. ABDULLAH, Sergeant WILLIAM ROLFE, Officer RISHAR PIERRE MONROE, Officer JULIEN DAVID RATTELADE, and Officer MEGHAN CAROLINE GAY, in their individual capacities,<br><br>Defendants. | **MEMORANDUM IN SUPPORT OF DEFENDANT SGT. ROLFE'S MOTION FOR SUMMARY JUDGMENT** |

This matter is before the Court on Defendant William Rolfe's motion for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure. Defendant Rolfe is entitled to judgment as a matter of law for the following reasons, among others:

- Rolfe is entitled to judgment as a matter of law on all claims relating to the searches executed at 1628-A and 1628-B Burgandy Street for the same reasons as referenced in Defendant Abdullah's Memorandum of Law. [*See* DE 205, at pp. 2-14].

- Additionally, Rolfe is entitled to judgment as a matter of law on Plaintiffs' supervisory liability claims, both because Plaintiff cannot meet the demanding standards for a supervisory liability claim and because Rolfe would nevertheless be entitled to qualified immunity.

1

## NATURE OF THE CASE

Plaintiffs originally filed this action on February 21, 2022. [DE 1]. Plaintiffs filed an Amended Complaint on May 16, 2022. [DE 41]. Plaintiffs subsequently filed a Second Amended Complaint on August 31, 2022. [DE 93]. In the Second Amended Complaint, Plaintiffs seek damages for injuries allegedly sustained as a result of the execution of a search warrant at their residences located in Raleigh, North Carolina. *See id*.

In a nutshell, Plaintiffs allege that members of Raleigh Police Departments VICE Unit, Defendants William Rolfe, Meghan Gay, David Rattelade, and Rishar Monroe conspired with their co-defendant, Defendant Abdullah and a confidential informant, Dennis Williams ("Aspirin") to deprive Plaintiffs of their constitutional rights in violation of 42 U.S.C. §1983. [DE 93]. More specifically, Plaintiffs appear to assert the following claims against Sgt. Rolfe:[1]

- First Claim: Fourth Amendment Unlawful Entry and Search of Plaintiffs' Homes (DE 93, at ¶¶ 205-221)

- Fourth Claim: Fourth and Fourteenth Amendment Fabrication of Evidence in Violation of Due Process of Law (DE 93, at ¶¶ 234-245)

- Sixth Claim: Civil Conspiracy (DE 93, at ¶¶ 255-261)

- Seventh Claim: Failure to Train and/or Supervise (DE 93, at ¶¶ 262-272)

---

[1] Plaintiffs do not appear to be asserting their Third, Fifth and Ninth Claims against Rolfe, because Rolfe is not mentioned in the Third Claim and the Fifth Claim (failure to intervene) appears to be limited to the "Defendants that were present for and observed . . . " the search at issue, see DE 93 at ¶ 247, which does not include Rolfe. Similarly, Rolfe is not mentioned as being present for the alleged "false imprisonment" referenced in the Ninth Claim.

# STATEMENT OF FACTS

In the interests of brevity and judicial economy, Rolfe respectfully refers the Court to the Statement of Material Facts submitted by Defendant Abdullah [DE 206] and his own Statement of Material Facts. [DE 211]. Additionally, Sgt. Rolfe respectfully contends that the following additional facts are relevant to the claims asserted against him:

Rolfe served as the Detective Sergeant for the RPD's Vice Unit during the years between 2017 until the late fall of 2020. [Rolfe Decl. ¶ 2]

Rolfe had no involvement whatsoever in the investigation of the suspect Marcus VanIrvin, the controlled buy involving Mr. VanIrvin, or the search of the Burgandy Street apartments. Rolfe was completely unaware of the events leading up to the search because he was on vacation in the North Carolina mountains that week and was not scheduled to return to duty until May 26, 2020. It is undisputed that Rolfe did not learn about the controlled buy involving Mr. VanIrvin, the application and issuance of the search warrant for the Burgandy Street apartment, or the search itself until <u>after</u> all of those events had occurred. [Rolfe Decl. ¶ 3]

It is also undisputed that Rolfe did not about any negative lab results for any of Abdullah's cases because he did not check the lab results for any of Detective Abdullah's cases in 2020. It was not Rolfe's typical practice to review the lab results for the other detectives' cases either, so Abdullah was not being treated any differently from the rest of the unit. [Rolfe Decl. ¶ 4]

Rolfe also had no input into the manner in which the SEU officers carried out the search of the Burgandy Street apartments--he has never served as a supervisor for the SEU Unit. Even if Rolfe had been working during the week at issue in this lawsuit, he would <u>not</u> have been tasked with supervising or directing the manner in which the SEU officers executed the search warrant because he was not familiar with their standards or practices. [Rolfe Decl. ¶ 5]

Finally, Rolfe has offered undisputed evidence that he did not subjectively believe that Detective Abdullah ever "conspired" with Dennis Williams to fabricate evidence. While Detective Abdullah may

3

have been somewhat of a "loner" in the Vice Unit, Rolfe did not believe him to be dishonest and none of the other officers in the Vice Unit ever told Rolfe that they believed Abduallah to be dishonest either. [Rolfe Decl. ¶ 6]

## ARGUMENT

I. **ROLFE IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON ALL CLAIMS RELATING TO 1628-A AND 1628-B BURGANDY.**

The bases for these arguments were set forth in detail in the Memorandum of Law submitted Defendant Abdullah. [DE 205]. For the sake of brevity—and as allowed by Local Civil Rule 56.1(c)--Defendant Rolfe agrees with, and adopts, the arguments advanced by Defendant Abdullah.

II. **ROLFE IS ENTITLED TO JUDGMENT AS A MATTER OF LAW WITH RESPECT TO PLAINTIFFS' SEVENTH CLAIM.**

As noted in the memoranda submitted by Defendant Abdullah and Defendants Monroe, Rattelade and Gay, the primary issue in this case is whether the searches of their residences were unreasonable because they flowed from a warrant affidavit that was dishonest—in other words, whether there was a *Franks* violation. *See Franks v. Delaware*, 438 U.S. 154 (1978). With respect to Sgt. Rolfe, the case is complicated by the fact that it is undisputed that he was not physically present for the events at issue—he was on vacation that week. Also, it is undisputed that Rolfe was entirely unaware of Abdullah's decision to seek the allegedly deficient warrant, or the actual search itself, until *after* those events occurred. [Rolfe Decl. ¶¶ 3-4]. Under these facts, Plaintiffs cannot meet the demanding standards for a supervisory liability claim under 42 U.S.C. § 1983.

A. **Plaintiffs cannot establish that Rolfe was "deliberately indifferent."**

As the other Defendants have explained, while it is unfortunate that the Plaintiffs' homes

were searched, it is doubtful whether Plaintiffs have even described an actual *Franks* violation in this case. As Defendant Abdullah pointed out, the allegedly "false" statements from the warrant affidavit that Plaintiffs seek to use to support their claims were either not actually knowingly "false" or, at the least, were not "material." *See, e.g., United States v. Moody*, 931 F.3d 366, 371 (4th Cir. 2019) (explaining that an "innocent or even negligent mistake by [an] officer will not suffice."). Plaintiffs' failure to show a violation by the other Defendants is fatal to any supervisory liability claim against Rolfe because a necessary requirement for any supervisory liability claim is a violation by the subordinate officers. *See, e.g., Evans v. Chalmers*, 703 F.3d 636, 654 (4th Cir. 2012) ("[S]upervisors and municipalities cannot be liable under § 1983 without some predicate constitutional injury at the hands of the individual state officer, at least in suits for damages." (cleaned up)).

Even if Plaintiffs could establish that Abdullah or one of the other Defendant officers violated their rights, the standards for a supervisory liability claim under § 1983 are very stringent. There is no such thing as "respondeant superior" liability under § 1983. Instead, a supervisory official may be liable in their individual capacity "only for their personal wrongdoing or supervisory actions that violated constitutional norms." *Timpson v. Anderson Cty. Disabilities & Special Needs Bd.*, 31 F.4th 238, 257 (4th Cir. 2022); *accord Campbell v. Florian*, 972 F.3d 385, 398 (4th Cir. 2020). A plaintiff must prove three elements for a supervisory liability claim:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Timpson*, 31 F.4th at 257 (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)).

In this context, a plaintiff "must show more than mere supervision" to establish a claim. The supervisor's own response to knowledge of a risk of constitutional injury must be "so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices." *Randall v. Prince Georges County*, 302 F.3d 188, 203 (4th Cir. 2002). "And ordinarily, the plaintiff cannot satisfy this burden of proof by pointing to a single incident or isolated incidents, for a supervisor cannot be expected to guard against the deliberate criminal acts of his properly trained employees when he has no basis upon which to anticipate the misconduct." *Campbell*, 972 F.3d at 398 (cleaned up); *see also Timpson*, 31 F.4th at 258 ("a supervisor cannot be expected to promulgate rules and procedures covering every single occurrence within the area of his responsibilities.").

As Defendant Abdullah has pointed out, the standard for establishing a *Franks* violation is already a very demanding one—the claimant must prove that the defendant officers were not merely negligent or even *grossly negligent*, but instead acted "knowingly and intentionally or with a reckless disregard for the truth." *See Evans*, 703 F.3d at 650. Thus, to establish a supervisory liability claim against Rolfe, the Plaintiffs are required to go even further and add to that already demanding showing some additional proof to establish that Rolfe was "deliberately indifferent" to his subordinates' underlying "reckless" behavior. *See, e.g., Campbell*, 972 F.3d at 398-99; *Timpson*, 31 F.4th at 257-58.

In this case, Plaintiffs seek to hold Defendant Rolfe responsible for a series of incidents about which he had absolutely no knowledge, based solely on a showing of "mere supervision." Plaintiffs have not, and cannot, show that Defendant Rolfe was "deliberately indifferent" to any "pervasive and unreasonable" risk of Abdullah (or any of the other Vice Unit detectives) committing *Franks* violations on citizens such as themselves. Accordingly, their supervisory

6

liability claims against Rolfe must be dismissed. *See Timpson*, 31 F.4th at 257; *Shaw*, 13 F.3d at 799.

**B.     EVEN IF PLAINTIFFS COULD ARGUABLY ESTABLISH A SUPERVISORY LIABILITY CLAIM, ROLFE IS ENTITLED TO QUALIFED IMMUNITY BECAUSE HIS OWN ACTIONS DID NOT VIOLATE ANY CLEARLY ESTABLISHED RULES.**

Qualified immunity shields government officials from personal liability under § 1983 "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *Edwards v. Goldsboro*, 178 F.3d 231, 250 (4th Cir. 1999). Courts have traditionally employed a two-step process when assessing a defense of qualified immunity. First, the Court determines whether the facts alleged by the plaintiff describe a violation of an "actual constitutional right" of the plaintiff. *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If not, the inquiry ends and the claim is dismissed. *Saucier*, 533 U.S. at 201. Only if the Court concludes that the facts alleged describe an actual constitutional violation will the court proceed to the second inquiry--whether the existing case law made the right "clearly established" at the time of the defendant's alleged misconduct. *Saucier,* 533 U.S. at 201.[2]

As the Fourth Circuit has explained "[t]o defeat a qualified immunity defense, a plaintiff must show (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Crouse v. Town of Moncks Corner*, 848 F.3d 576, 583 (4th Cir. 2017). For a right to be "clearly established," courts are not required to find "a case directly on point, but existing precedent must have the placed the statutory or

---

[2] In *Pearson v. Callahan*, 555 U.S. 223 (2009), the Supreme Court modified the procedure described in *Saucier v. Katz* and held that lower courts should be allowed to exercise their discretion in determining which of the two prongs of the test described in *Saucier* should be considered first. *Pearson*, 555 U.S. at 236.

7

constitutional question beyond debate." *Crouse*, 848 F.3d at 583. A right is not clearly established if courts disagree about the contours of the right. "If judges thus disagree on a constitutional question, it is unfair to subject [government officials] to money damages for picking the losing side of the controversy." *Wilson,* 526 U.S. at 618; *accord McVey v. Stacey*, 157 F.3d 271, 277 (4th Cir. 1998) ("we do not impose on the official a duty to sort out conflicting decisions or to resolve subtle or open issues.").

For a right to be "clearly established" in North Carolina, the Fourth Circuit typically looks to the body of decisions of the United States Supreme Court, the Fourth Circuit, and the North Carolina Supreme Court. *See Booker v. South Carolina Dep't of Corr.*, 855 F.3d 533, 538-39 (4th Cir. 2017). Absent controlling authority from one of those courts, a court should seek to determine whether persuasive authority from other circuits establishes a "clear consensus" on the issue. *See Wilson v. Prince George's County*, 893 F.3d 213, 223 (4th Cir. 2018). If decisions from other circuit courts of appeal have declined to recognize a right, or if the circuits are split on the issue, the law is not "clearly established" for the purposes of qualified immunity. *See Pearson*, 555 U.S. at 244 (noting that where 3 circuit courts had declined to recognize a right, that right was not "clearly established" for purposes of qualified immunity); *Booker*, 855 F.3d at 538-39 (accord).

It is also important to note that, with respect to liability under 42 U.S.C. § 1983, the actions of each defendant must be assessed separately. A government official cannot be held liable for a constitutional violation under 42 U.S.C. § 1983 unless the plaintiff can prove that the defendant official was personally responsible for causing the plaintiff's injuries. In other words, the plaintiff must establish "that each government official defendant, through the official's own individual actions, has violated the Constitution." *Ashcraft v. Iqbal*, 556 U.S. 662, 676-77, 129 S.Ct. 1937 (2009); *accord Danser v. Stansberry*, 772 F.3d 340, 349 (4th Cir. 2014) ("Rather, liability may be imposed based only

8

on an official's own conduct."); *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) ("liability is personal, based on each defendant's own constitutional violations."). Thus, in this case, in order to impose liability on Sgt. Rolfe, the Court must conclude that the law was "clearly established" that his own actions would violate Plaintiffs' constitutional rights.

Rolfe has explained above that Plaintiffs cannot satisfy the first requirement to overcome a defense of qualified immunity because they cannot show that Rolfe acted with sufficient culpability to establish a claim for supervisory liability under § 1983. However, even if Plaintiffs could create a triable issue of fact on that issue, it certainly cannot be said that Sgt. Rolfe violated any "clearly established" rights of the Plaintiffs in this situation. In order to establish his entitlement to qualified immunity, Rolfe need only show that it is fairly debateable whether his own actions violated Plaintiffs' rights. In light of the evidence pointed out by Abdullah (for example, the fact that eight out of nine controlled buys conducted by "Aspirin" in 2018 had, in fact, resulted in positive lab tests), Rolfe has clearly made this showing. Accordingly, he is entitled to qualified immunity. *See, e.g., Crouse*, 848 F.3d at 583; *see also Braun v. Maynard*, 652 F.3d 557, 560 (4th Cir. 2011) (noting that qualified immunity "ensures that officials are not unfairly strung up for money damages as a result of bad guesses in gray areas.").

## CONCLUSION

For the above-stated reasons, among others, Defendant Rolfe respectfully contends that his motion for summary judgment should be GRANTED and the Plaintiffs' claims against him should be DISMISSED WITH PREJUDICE.

This the 2nd day of April, 2023.

CROSSLEY McINTOSH COLLIER HANLEY & EDES PLLC

/s/Norwood P. Blanchard III
Norwood P. Blanchard III
N.C. Bar No. 26470
5002 Randall Parkway
Wilmington, NC 28403
Tel. (910) 762-9711
Fax. (910) 256-0310
norwood@cmclawfirm.com
*Attorneys for Defendant W. Rolfe*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 2nd day of April, 2023, I electronically filed the foregoing **Defendant Rolfe's Memorandum in Support of Motion for Summary Judgment** with the Clerk of Court using the CM/ECF system, which will electronically serve counsel for the following parties:

Robin L. Tatum, City Attorney
Dorothy V. Kibler, Deputy City Attorney
P.O. Box 1949
Raleigh, NC 27602
Tel: (919) 996-6560
Fax: (919) 996-7021
Dorothy.Kibler@raleighnc.gov
ATTORNEYS FOR DEFENDANT CITY
OF RALEIGH

Michael L. Littlejohn, Jr.
Littlejohn Law, PLLC
227 W. 4th Street, Ste B-113
Charlotte, NC 28202
Email: mll@littlejohnlaw.com
*Attorneys for Plaintiffs*

Abraham Rubert-Schewel
Emily Gladden
Tin Fulton Walker & Owen, PLLC
204 N. Person Street
Raleigh, NC 27601
Email: schewel@tinfulton.com
Email: egladded@tinfulton.com
*Attorneys for Plaintiffs*

Rodney E. Pettey
Alayna Poole
rpetty@ymwlaw.com
apoole@ymwlaw.com
Yates, McLamb & Weyher, LLP
Post Office Box 2889
Raleigh, North Carolina 27602
*Counsel for Officer Rishar Pierre Monroe,*
*Officer Julien David Rattelade and*
*Officer Meghan Caroline Gay*

11

Case 5:22-cv-00068-BO   Document 212   Filed 04/02/23   Page 11 of 12

Ian A. Mance
Elizabeth G. Simpson
Emancipate NC
P.O. Box 309
Durham, NC 27702
Email: ian@emancipatenc.com
Email: elizabeth@emancipatenc.com
*Attorneys for Plaintiffs*

Jason R. Benton
Parker Poe Adams & Bernstein, LLP
620 South Tryon Street, Suite 800
Charlotte, NC 28202
jasonbenton@parkerpoe.com
*Attorney for Defendant O. Abdullah*

        This the 2nd day of April, 2023.

                                            /s/Norwood P. Blanchard, III
                                            Norwood P. Blanchard, III