IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:22-cv-00068-BO

| | |
|---|---|
| YOLANDA IRVING, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>THE CITY OF RALEIGH, et al.,<br><br>Defendants. | **CITY OF RALEIGH AND OFFICIAL CAPACITY DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DEFENDANTS TO PRODUCE TEXT COMMUNICATIONS** |

Defendants City of Raleigh, Chief of Police Estella Patterson in her official capacity, and City Manager Marchell Adams-David in her official capacity (collectively, the "City") respectfully ask the Court to deny Plaintiffs' motion to compel because the motion is untimely, it lacks the required good faith certification, and because the City has complied with its discovery obligations.

## NATURE OF THE CASE

This case arises out of the issuance and execution of a search warrant for 1628 Burgundy Street, Apartment B, Raleigh, North Carolina ("Apartment B"), on May 21, 2020. The warrant followed an undercover purchase of supposed heroin at Apartment B as reported by Dennis Williams, a confidential informant whom Plaintiffs allege was unreliable. (*See generally* Second Am. Compl., ECF No. 93, ¶¶ 101-13). Plaintiffs allege a conspiracy among Raleigh Police Department ("RPD") former or current Vice unit detectives and a supervisor, defendants Omar Abdullah, Rishar Monroe, Julien Rattelade, Megan Gay, and William Rolfe, to fabricate heroin trafficking offenses. (*Id.* ¶¶ 234, 255).

On July 6, 2022, the Court entered a Scheduling Order bifurcating discovery and dispositive motions into two phases. (*See* ECF No. 69 at 1). Phase I concerns the individual

defendants' liability and Phase II concerns the City's liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). (*See id.*; ECF No. 49, at 2-3). The parties agreed and the Court ordered that the scope of discovery for Phase I was limited to all factual allegations, claims, and alleged damages asserted against or defenses raised by the individual defendants. (*See* ECF No. 69, at 1; ECF No. 49, at 3). The parties also agreed that, during Phase I, they could serve discovery to the City relevant to Plaintiffs' claims against and defenses of the individual defendants. (*Id.*) Phase I discovery (except for expert discovery related to Plaintiffs' claims of psychological injury) concluded March 3, 2023. (ECF Nos. 156, 167, 191).

Prior to that time, the parties participated in several discovery conferences and communicated in writing regarding their concerns about each other's discovery responses, as detailed in relevant part below. On December 19, 2022, Plaintiffs filed a motion to compel the City of Raleigh to produce documents, including "[a]ll text messages involving Defendants, related to this Incident." (ECF No. 148, at 2). After a February 14, 2023 hearing on pending motions, on March 13, 2023, the Court issued a written order, dismissing Emancipate NC as a plaintiff for lack of standing and denying Plaintiffs' motion to compel as moot, among other things. (ECF No. 191, at 4). On March 22, 2023, Plaintiffs filed this second motion to compel, and on March 31, 2023, the individual defendants filed Phase I dispositive motions.

## STATEMENT OF FACTS

Plaintiffs served their First Consolidated Set of Document Requests on all appearing Defendants on July 21, 2022. The City timely served its initial responses and objections on September 19, 2022. All counsel met on September 30, 2022 and addressed Plaintiffs' concerns with discovery, which focused on personnel records. Those issues were resolved, and the agreed personnel records produced.

2

At the September 30, 2022 conference, Plaintiffs' counsel explained that "the Incident" described in their document requests meant not just the May 2020 incident, but also included every drug buy made by Williams. Thus, document requests relating to "the Incident" sought records spanning August 16, 2018, when Williams began work as a confidential informant, through May 22, 2020, when RPD suspended Williams. The City commenced a rolling production of documents related to "the Incident" as Plaintiffs defined it.

Discussions concerning discovery continued, as did the City's rolling production. All counsel held a second conference on November 22, 2022. Plaintiffs' discussions centered around electronically stored information ("ESI"). Regarding Abdullah's City cellphone, the City had explained to Plaintiffs' counsel that an initial Cellebrite extraction had produced a pdf report of more than 55,000 pages and that the cellphone contained information about criminal investigations and informants unrelated to Williams. (See City's Ex. 2, ECF No. 163-2, at 2). Consistent with the parties' discussion during the conference and based on agreed search criteria, on December 19, 2022, the City produced two preliminary extraction reports from Abdullah's former cellphone. (See City's Ex. 4, ECF No. 163-4, at 1). The first was five pages in length and contained photographs taken on May 21, 2020 during the encounter at Apartment B. The second was 1,033 pages in length and contained 3,668 items, including group chats related to the encounter at Apartment B. The transmittal e-mail explained that the City had added the phrase "CI Dennis" in addition to the agreed search terms, thus capturing more data. (*Id*.). The City's email also explained that providing the cellphone records was a time-consuming undertaking and asked that Plaintiffs' counsel discuss "specific information you need and how to reduce the burden in providing information." (*Id*.).

As for the other phones at issue, Plaintiffs were advised that Gay's counsel held her City cellphone and that of Detective Jason Gwinn, a Vice unit detective who is not a party. (*Id.*). The City's counsel also advised that the only remaining City cellphones in use on or before May 22, 2020 were those of defendant Rattelade and then-Lieutenant Jennings Bunch, also not a party to this action. (*Id.*). The City's counsel asked the parties to discuss whether a full extraction and analysis was necessary given the documents provided from Abdullah's City cellphone and the burden of providing the data. (*Id.* at 2). On this same day, December 19, 2022, Gwinn produced a screenshot of a thread of text messages between Monroe, Rattlelade, Gay, and himself. (Pls.' Mem., ECF No. 195, at 3).

The City arranged a third meeting to discuss discovery issues. On January 26, 2023, the City agreed, among other things,[1] to perform an extraction of Rattlelade's City cellphone using the same search terms and parameters as used for the search of Abdullah's City cellphone as well as using additional search terms, subject to certain time limitations. (Pls.' Ex. E, ECF No. 195-5, at 3-4). Also, the parties again discussed the fact that Gay's counsel had custody of her City cellphone and the City no longer had the City cellphones of Monroe or Rolfe in use in May 2020. (*Id.* at 2-3).

On March 3, 2023, pursuant to the January 26, 2023 agreement, the City informed Plaintiffs that it had conducted the agreed-upon extraction of Rattlelade's City cellphone and that the subject searches produced no relevant results. (Pls.' Ex. F, ECF. No. 195-6, at 9). The City further explained that after receiving negative search results, it voluntarily conducted two additional searches, one for text messages exchanged on May 20 and 21, 2020 and one in the instant message area for those same dates. (*Id.* at 9-10). The City produced the Cellebrite

---

[1]     The City also agreed to conduct an extraction of the City cell phone issued to Bunch and to search using agreed terms. The City produced three responsive text messages as a result of those efforts.

extraction reports for each of those voluntary searches. (*Id.* at 10). In its email transmitting the reports, the City specifically noted "that the data we have provided is what we were able to find within the extraction report and did not contain the body of any texts or instant messages." (*Id.*).

In further correspondence, Plaintiffs questioned why the City could not locate or produce a group text message chain from Rattlelade's cellphone in the same format of what Detective Gwinn produced, that is, a screenshot. (*Id.* at 8). In response, the City explained that there was no additional data for the May 20 and 21, 2020 text messages, other than what had been produced. (*Id.* at 7). As further evidence that it had provided all of the available information, the City provided to Plaintiffs a screenshot showing data from the extraction report in a different format. (Pls.' Ex. F, ECF. No. 195-6, at 5).

The City continued to explain that it produced all the responsive data from the Rattlelade's cellphone extraction and explained that it had complied with its discovery obligations concerning the phone. (*Id.* at 4). Nonetheless, the City was willing to consider any suggestions from Plaintiffs' expert to locate more data as well as consult with RPD's forensic expert. (*Id.*). Four days later, Plaintiffs filed the pending motion to compel, seeking the text message thread from the Vice unit detectives.

## **ARGUMENT**

I.      PLAINTIFFS' MOTION IS FATALLY DEFECTIVE.

The law governing discovery, including Federal Rule of Civil Procedure 37 and Local Civil Rule 7.1, imposes procedural, but no less significant, requirements on parties who file motions to compel. When a party fails to follow those requirements, as Plaintiffs here have, the Court's resources are needlessly consumed.

As the Court has recognized, "it is well established in this district that, as a general matter, motions to compel must be filed before the end of the discovery period." *Williams v. AT&T Mobility*, No. 5:19-CV-00475-BO, 2022 WL 2821922, at *2 (E.D.N.C. July 19, 2022) (collecting cases). If not, the movant "must show good cause for his untimely filing. To meet this standard, he must show 'at a minimum' that he acted diligently in meeting the now-expired deadline." *Id.* (citations omitted).

In addition to being timely filed, a motion to compel must include a certification that the movant has conferred (or attempted to confer) with the opposing party to resolve the dispute before resorting to court action.[2] Fed. R. Civ. P. 37(a)(1); Local Civil Rule 7.1(c)(2). Requiring parties to confer in good faith (and in turn having the movant certify that effort) "promotes the orderly resolution of discovery disputes." *Gonzalez-Rodriguez v. Gracia*, No. 5:21-CV-406-BO, 2023 WL 149978, at *2 (E.D.N.C. Jan. 10, 2023) (citation omitted). This requirement has particular significance where, like here, the movant seeks sanctions. *Cf.* Fed. R. Civ. P. 37(a)(5)(A)(i) (prohibiting the court from ordering the payment of expenses incurred in making the motion to compel if "the movant filed the motion before attempting in good faith to obtain the . . . discovery without court action").

Also, this Court imposes another requirement. The motion to compel must set forth or attach, "by item, the specific question, interrogatory, etc. with respect to which the motion is filed" and any objection made with the grounds supporting the objection. Local Civil Rule 7.1(c)(2). If this requirement is not met, the Court will not consider the motion. *Id.*; *see also United States v.*

---

[2]     Discovery rules are aimed at securing the "just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. Recognizing the burdens that ESI can present in litigation, the Rules pose specific requirements on litigants requesting ESI. The Federal Rules expressly require counsel to meet and confer on "any issues about disclosure, discovery, or preservation of electronically stored information, including the form or forms in which it should be produced[.]" Fed. R. Civ. P. 26(f)(3)(C). When ESI is not reasonably accessible because of undue burden or cost, specific limits apply to that discovery. Fed. R. Civ. P. 26(b)(2)(B).

*$307,970.00*, 156 F. Supp. 3d 708, 722 (E.D.N.C. 2016) (recognizing "the plain language of the rule requires an itemized list of challenged discovery responses" and concluding a motion for discovery sanctions lacking that list is not entitled to consideration).

Here, Plaintiffs did not comply with any of these discovery-dispute requirements. Had they attached or set forth the specific request at issue, it would show the overbreadth of their request and justification for the City's numerous, specified grounds for objection. Also, had they promptly discussed with the City the basis for their insistence on a screenshot of texts, the City could have impressed upon them the necessity of consulting with a technology expert (which they apparently have), and then the parties could have engaged in further discussion, if necessary. Plaintiffs have had the screenshot from Gay's cellphone since December. They argued about group text messages in their initial motion to compel. That was the time—and before discovery closed—to raise an issue about their ability to access texts from other criminal investigations, the existing data on the Rattelade cellphone, and the format of the Cellebrite extraction. Under these circumstances, the Court should deny Plaintiffs' motion. *See Nallapaty v. Nallapati*, No. 5:20-CV-470-BO, 2022 WL 16984479, at *3 (E.D.N.C. Nov. 15, 2022) (denying the motions to compel because they were filed approximately three weeks after discovery closed and dispositive motions had already been filed).

II.    PLAINTIFFS' MOTION SHOULD BE DENIED ON THE MERITS.

The parties agreed on January 26, 2023, that the City would extract data from the City cellphone issued to Rattelade and search the extraction using specific agreed search terms. (Pls.' Ex. F, ECF. No. 195-6, at 3). The City conducted the agreed extraction and searches. (*Id.* at 9). When those search terms returned zero results, the City voluntarily conducted an additional search for text messages exchanged on May 20, 2020 or May 21, 2020, the days of the Burgundy Street

drug buys.  (*Id.* at 10).  The City produced to Plaintiffs' counsel the data that the additional voluntary search returned.  (*Id.*).

The existing data on the Rattelade phone does not include the body of any text from May 20 or May 21, a fact shared with Plaintiffs' counsel.  (*Id.*).  When counsel appeared not to understand, the City's counsel sent an example of an entry from May 21, 2020 at 12:28 p.m. in another form as an explanation.  (*Id.* at 5).

The City has produced the responsive data available from the extraction.  There is nothing further for the City to produce from the Rattelade phone.  "Absent evidence to the contrary, the court must take a party's word that it has produced all responsive discoverable documents if the party says that it has."  *Nallapati v. Justh Holdings, LLC*, No. 5:20-CV-47-D, 2022 WL 4358205, at *3 (E.D.N.C. Sept. 20, 2022) (citation and alterations omitted).

After a diligent search, the City determined that it did not possess City-issued cellphones in use in May 2020 for defendants Monroe or Rolfe.  City-issued cellphones for Gay and Gwinn are in the custody of their attorney and not the City.  A party's discovery obligations apply to materials in its possession, custody, or control.  Fed. R. Civ. P. 34(a).  "The court cannot compel a party to furnish information that they do not possess."  *Machinery Solutions, Inc. v. Doosan Infracore Am. Corp.*, 323 F.R.D. 522, 530 (D.S.C. 2018) (internal citation omitted).  The City has fulfilled its discovery obligations by searching the phones within its control.

Defendant Abdullah's City-issued cellphone was secured as a part of an RPD Internal Affairs investigation.  Plaintiffs rightly recognize that "the City has produced numerous text messages from Officer Abdullah."  (Pls.' Mem., ECF No. 195 at 3 n. 1).  The City has also produced emails located after searches of the City's email server.  Neither Plaintiffs' motion nor their brief raises issues concerning the City's production of ESI from the Abdullah phone.

8

After the Court's hearing on the motion to compel filed by Emancipate NC, the City scheduled another discovery conference to address remaining discovery disputes. During that conference, the City and Plaintiffs agreed on specific search terms and imposed a reasonable time limit of three hours for specific searches.[3] (Pls.' Ex. F, ECF. No. 195-5, at 3-4).

It is well settled that "'electronic discovery should be a party-driven process.'" *Pyle v. Selective Ins. Co. of America*, No. 2:16-cv-335, 2016 WL 5661749, at *2 (W.D. Pa. Sept. 30, 2016) (citation omitted). "Among the items about which the court expects counsel to 'reach practical agreement' without the court having to micro-manage e-discovery are 'search terms, date ranges, key players and the like.'" *Id.* (citation omitted). The City approached production of ESI in a reasonable manner by negotiating search parameters and time limits with Plaintiffs. Courts have not only accepted, but in some cases have ordered, the use of keyword searching to define discovery parameters and resolve discovery disputes and because of the costs and burdens of increasingly vast volumes of electronic data, that approach makes good sense. *The Sedona Conference Best Practices Commentary on the Use of Search and Information Retrieval Methods in E-Discovery August 2007 Public Comment Version*, 8 Sedona Conf. J. 189, 200–01 (2007).

Rule 26 of the Federal Rules of Civil Procedure provides that parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). In determining whether a discovery request is proportional, courts look to six factors: importance of issues at stake in the litigation, amount in controversy, the parties' access to information, the parties' resources, the importance of discovery resolving the issues, and whether the burden will

---

[3]     The search term "warrant" identified by Plaintiffs has produced an inordinate amount of data. The City has already expended more than the agreed three hours in addressing this search parameter. Nevertheless, the City will continue its work concerning texts located within the Abdullah phone and will provide responsive texts to counsel for the parties.

outweigh the likely benefit. *Oxbow Carbon & Minerals LLC v. Union Pac. R.R. Co.*, 322 F.R.D. 1, 6 (D.D.C. 2017). The Court has substantial discretion to manage discovery, *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 929 (4th Cir. 1995), and it may limit discovery it determines to be unreasonably cumulative, duplicative, burdensome, or outside the permitted scope, Fed. R. Civ. P. 26(b)(2)(B).

In response to Plaintiffs' request for discovery from electronic devices, the City objected[4] to any attempt to require it to comb through more than 55,000 pages of data from the Cellebrite extraction to find items in any way related to "the Incident," meaning every use of Williams as an informant. Williams began work as an informant in 2018, when the Wake District Attorney's Office authorized him to work off his criminal charges and ended on May 22, 2020—the day after the challenged search of Apartment B—when RPD suspended him. It is disproportionate and unduly burdensome to ask the City to review every entry in thousands of pages of data looking for something relevant to "the Incident." The City has already produced thousands of pages of text messages, including texts from the relevant dates of May 20 and May 21, 2020. From the City's perspective, as it has throughout Williams-related litigation, it has acted and continues to act in good faith concerning requests for ESI.

Plaintiffs are not entitled to expenses because the City's responses to Plaintiffs' requests for ESI were substantially justified and the circumstances described herein make an award of expenses against the City unjust. In addition, they failed to meet the requirement of Rule 37(a)(5)(A)(i) to attempt in good faith to obtain discovery without court action, which precludes such an award.

---

[4]    The City objected based on the disproportionate nature of Plaintiffs' request, privileges related to police investigative materials and techniques, statutory protections afforded criminal intelligence, criminal investigation records, and sensitive public security information, and because certain information was not within the City's custody or control.

## **CONCLUSION**

For the reasons set forth herein, the City respectfully askes that the Court deny Plaintiffs'

Motion to Compel Defendants to Produce Text Communications.


Respectfully submitted, this the 5th day of April, 2023.

                                  **CITY OF RALEIGH**
                                  **Robin L. Tatum, City Attorney**

By:    /s/ Dorothy V. Kibler
         DOROTHY V. KIBLER
         Deputy City Attorney
         N.C. Bar No. 13751

By:    /s/ Amy C. Petty
         AMY C. PETTY
         Senior Associate City Attorney
         N.C. Bar No. 20894
         PO Box 590
         Raleigh, NC 27602
         Tel:  (919) 996-6560
         Fax:  (919) 996-7021
         Dorothy.Kibler@raleighnc.gov
         Amy.Petty@raleighnc.gov

*Counsel for Defendants City of Raleigh, Chief of Police Estella Patterson in her official capacity, and City Manager Marchell Adams-David in her official capacity*

11

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:22-cv-00068-BO

| | | |
|---|---|---|
| YOLANDA IRVING, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **CERTIFICATE OF SERVICE** |
| | ) | |
| THE CITY OF RALEIGH, et al. | ) | |
| | ) | |
| Defendants. | ) | |

I hereby certify that on April 5, 2023, I electronically filed the foregoing **CITY OF RALEIGH'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DEFENDANTS TO PRODUCE TEXT COMMUNICATIONS** with the Clerk of Court using the CM/ECF system, which sends notification of such filing to all counsel of record as follows:

Abraham Rubert-Schewel
Tin Fulton Walker & Owen, PLLC
119 E. Main Street
Durham, NC 27701
schewel@tinfulton.com
*Counsel for Plaintiffs*

Jason Benton
Daniel Peterson
Jessica Dixon
Parker Poe Adams & Bernstein, LLP
620 South Tyson Street, Suite 800
Charlotte, NC 28202
jasonbenton@parkerpoe.com
jessicadixon@parkerpoe.com
*Counsel for Defendant Abdullah*

Emily Gladden
Tin Fulton Walker & Owen, PLLC
204 N. Person Street
Raleigh, NC 27601
egladden@tinfulton.com
*Counsel for Plaintiffs*

Rodney Pettey
Alayna M. Poole
Pettey & Partrick
PO Box 2889
Raleigh, NC 27602
rpettey@rpsplaw.com
apoole@rpsplaw.com
*Counsel for Defendants Monroe, Rattelade, and Gay*

12

Michael Littlejohn, Jr.
Littlejohn Law, PLLC
PO Box 16661
Charlotte, NC 28297
mll@littlejohn-law.com
*Counsel for Plaintiffs*

Ian Mance
Elizabeth Simpson
Emancipate NC, Inc.
ian@emancipatenc.org
elizabeth@emancipatenc.org
*Counsel for Plaintiffs*

Norwood Blanchard, III
Crossley McIntosh Collier, & Edes, PLLC
5002 Randall Parkway
Wilmington, NC 28403
norwood@cmclawfirm.com
*Counsel for Defendant Rolfe*

**CITY OF RALEIGH**
**Robin L. Tatum, City Attorney**

By:   /s/ Dorothy V. Kibler
DOROTHY V. KIBLER
Deputy City Attorney
N.C. Bar No. 13751
PO Box 590
Raleigh, NC 27602
Tel:  (919) 996-6560
Fax:  (919) 996-7021
Dorothy.Kibler@raleighnc.gov

*Counsel for Defendants City of Raleigh, Chief of Police Estella Patterson in her official capacity, and City Manager Marchell Adams-David in her official capacity*

13