IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION


YOLANDA IRVING, et al.,        . CASE NO. 5:22-CV-68-BO
    Plaintiffs,            . ELIZABETH CITY, NC
                     . FEBRUARY 14, 2023
V.                             .
                               .
THE CITY OF RALEIGH, et al.,   .
    Defendants.            .
. . . . . . . . . . . . . . .

TRANSCRIPT OF MOTIONS HEARING
BEFORE THE HONORABLE TERRENCE W. BOYLE
JUDGE, UNITED STATES DISTRICT COURT


APPEARANCES:

FOR THE PLAINTIFFS:      ELIZABETH SIMPSON, ESQUIRE
                         ABRAHAM RUBERT-SCHEWEL




FOR THE DEFENDANT:       DOROTHY KIBLER, ESQUIRE
CITY OF RALEIGH          AMY PETTY, ESQUIRE

FOR THE DEFENDANT:       JASON BENTON, ESQUIRE
ABDULLAH

FOR THE DEFENDANT:       NORWOOD BLANCHARD, III
ROLFE

FOR THE DEFENDANT:       ALAYNA M. POOLE, ESQUIRE
RPD OFFICERS

FOR THE DEFENDANT:       LESLIE PACKER, ESQUIRE
SEU OFFICERS



COURT REPORTER:      MS. SANDRA A. GRAHAM, CVR-CM

Proceedings recorded by stenomask, transcript produced from
dictation.

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646      sgrahamassoc@gmail.com

1    **THE COURT:**  Good morning.

2    **COUNSEL:**  Good morning.

3    **THE COURT:**  What motions do the Defendants have?  I'll hear

4    those first.  Ms. Petty.

5    **MS. PETTY:**  Good morning, Your Honor.

6    **THE COURT:**  Good morning.

7    **MS. PETTY:**  I represent the City of Raleigh, and the City

8    has two motions for a protective order, and someone correct

9    me if I'm wrong, the Selective Enforcement Unit Officers

10   have a pending Motion to Dismiss and for a Consent Order

11   extending specific amount of time regarding the discovery,

12   and I believe that's it, Your Honor.

13   **THE COURT:**  All right.  Well, I'll hear you on those.

14   **MS. PETTY:**  Your Honor, just by way of a brief background,

15   the events in this case arose out of a search warrant

16   issued on March 21st, 2020 for 1628 Apartment B Burgundy

17   Street in Raleigh.

18   **THE COURT:**  I thought it was Apartment A.

19   **MS. PETTY:**  Well, Your Honor the search warrant was for

20   Apartment B, but the case concerns not only the entry into

21   Apartment B but also the entry into the adjacent apartment,

22   which was Apartment A.

23   **THE COURT:**  So the search warrant was for B or for A?

24   **MS. PETTY:**  For B.

25   **THE COURT:**  And they entered A?

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646      sgrahamassoc@gmail.com

Case 5:22-cv-00068-BO   Document 224   Filed 04/25/23   Page 2 of 42

1    **MS. PETTY:**  Entered B and A.

2    **THE COURT:**  Okay.

3    **MS. PETTY:**  Both of them.  And as the -- the apartments are

4    next door to one another.

5    **THE COURT:**  Are there different people living in A and B?

6    **MS. PETTY:**  Yes, sir, they are.

7    **THE COURT:**  Not one family.

8    **MS. PETTY:**  That's correct.

9    **THE COURT:**  Different families?

10   **MS. PETTY:**  That's correct, Your Honor.

11   **THE COURT:**  So there was no search warrant for A?

12   **MS. PETTY:**  That is correct.

13   **THE COURT:**  Okay.

14   **MS. PETTY:**  And as officers approached that morning, or

15   excuse me, that afternoon, out on a stoop --

16   **THE COURT:**  What time of day was this?

17   **MS. PETTY:**  I believe it was around four o'clock.

18   **THE COURT:**  In the afternoon.

19   **MS. PETTY:**  Yes, sir.

20   **THE COURT:**  Okay.

21   **MS. PETTY:**  It was later in the afternoon.  And that day

22   there were four teenagers out on a stoop in front of the

23   two apartments, Apartment B and A, and when the officers

24   approached, two of the teenagers ran into Apartment B,

25   which, again, is the apartment that the officers had the

1  search warrant for.  Two of the teenagers ran into

2  Apartment A, and -- excuse me, Your Honor.  In Apartment B

3  one of those teenagers ran up the stairs yelling SWAT,

4  SWAT, SWAT to the occupants that were upstairs in Apartment

5  B.  Apartment A, two teenagers also ran into A as the

6  officers approached.  They went upstairs to that apartment

7  and informed the occupants there that the police were here.

8  **THE COURT:**  Thank you for helping me with the facts of it.

9  What day of the week was March 2nd?

10  **MS. PETTY:**  It's March 21st, Your Honor.  Excuse me, May

11  21st.  I apologize.

12  **THE COURT:**  Oh, okay.  May 21st, what day of the week was

13  that?

14  **MS. PETTY:**  I am not sure.  I think it was a week -- I'm

15  fairly certain it was a weekday, Your Honor.

16  **THE COURT:**  So the scene is it's a weekday and it's four

17  o'clock in the afternoon.  And I'm just taking a guess that

18  the apartments are two stories, that there are bedrooms

19  upstairs and living rooms downstairs.

20  **MS. PETTY:**  You're correct, Your Honor.

21  **THE COURT:**  And so who's upstairs in the bedroom?

22  **MS. PETTY:**  In Apartment B, and I'm sure plaintiffs will

23  correct me if I'm wrong, in Apartment B is a mother, one of

24  her children who is disabled and her daughter.  So that's

25  Apartment B.  They're upstairs.

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646     sgrahamassoc@gmail.com

Case 5:22-cv-00068-BO   Document 224   Filed 04/25/23   Page 4 of 42

1    **THE COURT:**  They're upstairs.

2    **MS. PETTY:**  They're upstairs.

3    **THE COURT:**  In the bedroom.

4    **MS. PETTY:**  In a bedroom or in a hallway, yes.

5    **THE COURT:**  Okay.

6    **MS. PETTY:**  And then in Apartment A there are a brother and

7    a sister in the upstairs of Apartment A in a bedroom.

8    **THE COURT:**  Children?

9    **MS. PETTY:**  They -- well, some of them were adults, 18 or

10   older.

11   **THE COURT:**  Okay.  But it's four o'clock in the afternoon

12   on, you think, a weekday and they're in a bedroom?

13   **MS. PETTY:**  Correct, yes.

14   **THE COURT:**  Okay.

15   **MS. PETTY:**  Yes.  And I was just informed it was a

16   Thursday.

17   **THE COURT:**  Okay.

18   **MS. PETTY:**  May 21st.

19   **THE COURT:**  So these four young people, individuals, go

20   into their respective houses and run upstairs to the

21   bedroom?

22   **MS. PETTY:**   And inform the occupants in one form or

23   another that the police are here.

24   **THE COURT:**  Okay.

25   **MS. PETTY:**  And so the police enter the -- enter the

1  apartment, again at Apartment B --

2  **THE COURT:** You said they entered, but how did they

3  announce or how did they present their attendance there. I

4  mean, did they kick the door down and say, hey, here we

5  are. Or did they turn a siren on or did they have a loud

6  speaker, or did they ring the doorbell?

7  **MS. PETTY:** Well, in Apartment B the door was left open,

8  and the police ran up to the door and announced themselves,

9  police, search warrant; police, search warrant; police,

10  search warrant.

11  **THE COURT:** And that's the residence that they had a search

12  warrant for?

13  **MS. PETTY:** That's correct, Your Honor. That's correct.

14  And in Apartment A the door --

15  **THE COURT:** Are different families living in these two

16  apartments?

17  **MS. PETTY:** Yes. Yes, Your Honor.

18  **THE COURT:** Okay.

19  **MS. PETTY:** The Walton family and the Irving family.

20  **THE COURT:** Walton?

21  **MS. PETTY:** Walton.

22  **THE COURT:** And are they in B or A?

23  **MS. PETTY:** Walton was in A.

24  **THE COURT:** Okay.

25  **MS. PETTY:** And Irving was in B.

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646     sgrahamassoc@gmail.com

Case 5:22-cv-00068-BO   Document 224   Filed 04/25/23   Page 6 of 42

1    **THE COURT:**  Thank you.  So this is the scene.  It's four

2    o'clock in the afternoon, it's a Thursday.  It's in May,

3    you say, May 21st so it's about summertime.

4    **MS. PETTY:**  Yes, Your Honor.

5    **THE COURT:**  And where in Raleigh is this?  I'm not

6    thoroughly familiar with Raleigh, but I know some parts of

7    it.  Is it in South Raleigh?

8    **MS. PETTY:**  Yes.  It is Your Honor, Southeast Raleigh.

9    **THE COURT:**  Is it off Martin Luther King Drive?

10   **MS. PETTY:**  I don't know the name of the road that it's off

11   of.

12   **THE COURT:**  Raleigh Road?

13   **MS. PETTY:**  I see Ms. Simpson nodding.

14   **THE COURT:**  Your partner knows.

15   **MS. PETTY:**  Okay.

16   **MS. KIBLER:**  Yes, Your Honor.  It's Raleigh Boulevard.

17   It's one of the side roads off of Raleigh Boulevard.

18   **THE COURT:**  Okay.  All right.  It's on the way down to the

19   Beltline.

20   **MS. KIBLER:**  It's closer to Crabtree Boulevard.  You've got

21   to take Crabtree to get to Capital, yes, sir.

22   **THE COURT:**  Okay.  No, it's not around Capital.  It's going

23   South.  It's South Saunders in that area, isn't it?

24   **MS. KIBLER:**  So exactly -- if you're headed out of town on

25   Capital Boulevard if you'll pass the --

1    **THE COURT:**  Capital Boulevard is going north.

2    **MS. KIBLER:**  Yes, it is going North out of town.  And

3    before you get to the Beltline there's a little shopping

4    center.  That's where Crabtree Boulevard is.

5    **THE COURT:**  WakeMed is there.

6    **MS. KIBLER:**  Closer to downtown.  It's a little bit closer

7    to downtown.  If you know where the bus station is, the

8    Greyhound bus station.

9    **THE COURT:**  You mean before the country club in there?

10   **MS. KIBLER:**  Even further.  Closer to downtown.  It's

11   probably three miles or so from the central of downtown,

12   kind of my rough estimate.

13   **THE COURT:**  Where the old bus station was?

14   **MS. KIBLER:**  The new bus station is operating there at the

15   corner of Crabtree and Capital Boulevard.  And if one turns

16   on Crabtree, and then turns right on Raleigh Boulevard,

17   it's past -- there's an apartment complex past a little

18   neighborhood there off of Raleigh Boulevard.

19   **THE COURT:**  Okay.  I don't really know it, but all right.

20   High crime area?

21   **MS. KIBLER:**  Very.

22   **THE COURT:**  Okay.

23   **MS. PETTY:**  And, Your Honor, today we have -- as I

24   mentioned, the City has two motions for a protective order.

25   **THE COURT:**  How many cops are involved?  How many guys show

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646    sgrahamassoc@gmail.com

Case 5:22-cv-00068-BO  Document 224  Filed 04/25/23  Page 8 of 42

1  up, men or women, show up for the search warrant?

2  **MS. PETTY:**  We have ten and ten Selective Enforcement Unit

3  Officers.

4  **THE COURT:**  So they have five or six cars?

5  **MS. PETTY:**  They actually rode in a van together.

6  **THE COURT:**  All in one unit?

7  **MS. PETTY:**  One unit.  All ten officers along with --

8  **THE COURT:**  With ten police in it?

9  **MS. PETTY:**  In a white, a white van, yes, Your Honor.

10  **THE COURT:**  Okay.  All right.  And that was it for the

11  engagement, just the ten officers?

12  **MS. PETTY:**  Well, there were some detectives involved.

13  **THE COURT:**  So there were more than ten?

14  **MS. PETTY:**  Correct, yes.

15  **THE COURT:**  Okay.

16  **MS. PETTY:**  But as far as the initial entry into the homes

17  -- and two of the detectives actually out of that ten --

18  excuse me, two of the SEU officers out of that ten peeled

19  off to the back side of the apartment building.

20  **THE COURT:**  Was there a back entrance?

21  **MS. PETTY:**  There was.  And they had been informed that one

22  of the possible suspects had gotten into a vehicle in the

23  back of the apartment.

24  **THE COURT:**  Is there parking or access in the back?

25  **MS. PETTY:**  There is, yes.

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646      sgrahamassoc@gmail.com

Case 5:22-cv-00068-BO   Document 224   Filed 04/25/23   Page 9 of 42

1    **THE COURT:**  So I'm assuming these apartments are roughly a
2    thousand square feet, that there are two bedrooms upstairs
3    and just a living room, kitchen, dining room on the base
4    level and maybe one or one and a half or two bathrooms.
5    **MS. PETTY:**  I don't believe there was a bathroom on the
6    bottom floor, but that's the general idea, yes, Your Honor,
7    of the setup in each apartment.
8    **THE COURT:**  Okay.
9    **MS. PETTY:**  Our first motion, Your Honor, regards the Chief
10   of Police's deposition.  And that's at docket entry 131.
11   And we filed a -- plaintiffs noticed the Chief's
12   deposition, and we filed a motion for a protective order to
13   prevent her deposition.  And it's important for the Court
14   to know the things that are not disputed in regards to this
15   motion are that, first the Chief is just being sued in her
16   official capacity and that she did not begin her position
17   with the City until more than a year after the operative
18   event here, and in her position she qualifies as a high
19   ranking government official.  And what that means, for the
20   plaintiffs to be able to take her deposition the burden is
21   on them to show, not only that she has unique firsthand
22   knowledge of material facts, but also that there are not
23   less burdensome means.
24   **THE COURT:**  Was she even in the police department in
25   Raleigh at the time of this?

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646    sgrahamassoc@gmail.com

Case 5:22-cv-00068-BO   Document 224   Filed 04/25/23   Page 10 of 42

1      **MS. PETTY:**  She was not.

2      **THE COURT:**  She was serving in some other capacity in some

3      other place?

4      **MS. PETTY:**  Yes, that's correct, Your Honor.

5      **THE COURT:**  Okay.

6      **MS. PETTY:**  That's accurate.  And because of that fact she

7      doesn't have firsthand knowledge of what happened here.

8      **THE COURT:**  It's like suing the United States and

9      requesting the deposition of the President?

10     **MS. PETTY:**  That's similar to that, yes, yes, Your Honor.

11     And in their response plaintiffs claim the need to question

12     her about the Raleigh Police Department search warrant

13     execution policy and how it's carried out.  And certainly

14     the Chief does not have unique knowledge about this topic.

15     And certainly there are less burdensome means to obtain

16     that information, such as by a 30(b)6 deposition of the

17     Raleigh Police Department.  And I would also like to point

18     out that in discovery we have given the plaintiffs the

19     current and historical versions of that search warrant

20     execution policy.  Also in deposition --

21     **THE COURT:**  Who signed the search warrant, a magistrate

22     downtown or a Superior Court Judge or a District Judge?

23     **MS. PETTY:**  It was a magistrate.

24     **THE COURT:**  So you just went to the courthouse and whoever

25     the duty mag was got it and signed it.

1    **MS. PETTY:**  As far as we are aware, yes, Your Honor.

2    **THE COURT:**  How long was the transition between signing the

3    search warrant and executing it?  It's supposed to happen

4    pretty quickly, isn't it?

5    **MS. PETTY:**  It was the same day, Your Honor.  It was the

6    same day.

7    And in depositions the plaintiffs have questioned the

8    detectives and the officers about that policy, about how

9    they carried out, how they execute warrants.  So they've

10   obtained this information.  And any further discovery that

11   they need is exactly what a 30(b)6 deposition is for.  And

12   it certainly is a less burdensome means of obtaining that

13   information than making the Chief of Police sit for a

14   deposition.  So for these reasons we're requesting an order

15   that precludes her deposition.  Thank you.

16   **THE COURT:**  That's it for you?

17   **MS. PETTY:**  On that motion, Your Honor.  Would you like me

18   to continue on our second motion?

19   **THE COURT:**  Might as well.

20   **MS. PETTY:**  Okay.  Happy to do so.

21   Our second motion is also a Motion for a Protective

22   Order, and it's at docket entry 152.  And this concerns the

23   30(b)6 deposition of the Raleigh Police Department.  Your

24   Honor, since the scheduling order was entered this past

25   July, the parties have been engaged in the first phase of

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646     sgrahamassoc@gmail.com

Case 5:22-cv-00068-BO   Document 224   Filed 04/25/23   Page 12 of 42

 1    discovery, and that is the discovery related to the

 2    individual defendants' liability.  And that phase is

 3    currently set to end in less than a month, and the deadline

 4    for filing dispositive motions is at the end of March.  And

 5    in December Emancipate NC, this is the organizational

 6    plaintiff here, noticed this 30(b)6 deposition of the

 7    Raleigh Police Department.  And by looking at the topics

 8    for examination that they identify, it is evident that this

 9    deposition pertains to the City's liability, and the City's

10    liability is not part of the discovery phase that we've

11    been operating under for seven months or so.  And if you

12    think about how liability in a case such as this works,

13    having that phase discovery makes sense because a

14    constitutional violation is a predicate for a Section 1983

15    claim against the City.  And so the way the plaintiffs

16    prove the constitutional violation is through the

17    individual defendants' liability.  And so the scheduling

18    order envisions an orderly process where the individual

19    defendants' liability is resolved first on dispositive

20    motions and then if those are denied, the parties meet and

21    propose a discovery plan on the City's liability.  So

22    having the individual officers' liability determined first

23    as a minimum it's going to streamline the case and narrow

24    the issues.  At best it makes the second phase of discovery

25    unnecessary.  And Emancipate North Carolina suggests that

1   it's inequitable to preclude it from taking discovery of

2   the City yet allow other defendants, the individual

3   defendants, I might add, to take discovery of it.  And I

4   can't speak for the individual defendants positions, but

5   I'll just point out that the time for the individual

6   defendants to take discovery is right now.  And the City

7   itself has not served any discovery on Emancipate NC.  So

8   all we're requesting is that Emancipate NC just abide by

9   the terms of the scheduling order.  And that you order that

10   this 30(b)6 deposition be taken during the next phase of

11   discovery.  Thank you.

12   **THE COURT:**  Thank you.

13   **MS. SIMPSON:**  Good morning, Your Honor, I'm Elizabeth

14   Simpson on behalf of Emancipate NC and also all of the

15   plaintiffs.  I'll start just by going through the facts

16   regarding that warrant that was written out and signed by

17   the magistrate for 1628 B, the Irving household.  The

18   reason that the warrant was written that way was actually

19   due to a combination of corruption and negligence.  And

20   that stemmed from the fact that this entire operation was

21   from -- that came from a confidential informant named

22   Dennis Williams who had provided bad information to a

23   police detective Omar Abdullah who has now been indicted by

24   the District Attorney of Wake County.  And in this

25   operation this deal was targeting a man named Marcus

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646      sgrahamassoc@gmail.com

Case 5:22-cv-00068-BO   Document 224   Filed 04/25/23   Page 14 of 42

1    Vanirvin who actually lived at 1620 B Burgundy Street,
2    which was just around, very close to the teenagers who
3    lived at 1628 B and 1628 A.
4         It seems to me that they were framing Mr. Vanirvin for
5    trafficking amounts of heroin and were planning to plant
6    brown sugar on him.  But --
7    (Court reporter asked for attorney to speak louder)
8    **THE COURT:**  If she wants to be recorded.
9    **MS. SIMPSON:**  Of course, thank you.
10   So can you hear me better now?
11   COURT REPORTER:  Please speak up.
12   **MS. SIMPSON:**  I will try.  I do have a soft voice.
13   **THE COURT:**  The acoustics in this room are fantastic, and I
14   haven't heard a word that you've said so far.
15   **MS. SIMPSON:**  Let me start again then, Your Honor.
16        The reason that the officers were at 1628 B on that
17   day was actually because of corruption and negligence.  So
18   there was a confidential informant named Dennis Williams
19   who was conspiring with a lead detective Omar Abdullah who
20   has now been indicted by the Raleigh Police Department.
21   And their plan that day was to plant brown sugar on Mr.
22   Vanirvin who lived at 1620 B Burgundy Street right next
23   door the teenagers at 1628 B and A and to frame him for
24   trafficking heroin.  However they wrote on a search warrant
25   1628 B even though the picture on the search warrant was a

1　picture of Mr. Vanirvin's house, a picture of a red door

2　and a tree in front.  So when they went to scout this,

3　instead of going to the correct apartment, 1620 B with a

4　red door, they approved the location of 1628 B with a tan

5　door.  As Ms. Petty indicated ten officers, SWAT officers

6　ran past the correct apartment and up to the teenagers who

7　were sitting out front of their two apartments and then

8　went into their homes, into the privacy of their homes, the

9　bedrooms, as you indicated.  It was then the SWAT officers

10　followed them in uninvited and not (inaudible), probably

11　not knocking.  The door was tried to be shut behind the

12　teenagers and yet they went in anyway.  So that's the

13　context for all the things that happened.

14　　　So the deposition of the Police Chief stems from the

15　fact that when this lawsuit was filed the Chief of Police

16　got on the news and explained the warrant execution policy.

17　And the way that she explained it was a way that did not

18　comport with constitutional law.  It was essentially, yeah,

19　we knock, we announce, we go right in.  And the correct way

20　is that you knock, announce and allow the occupants of the

21　home to realize what's happening and have a chance to

22　permit entry before they are invaded upon.  And so the

23　deposition of the Chief was to find out if the person who

24　was setting policy, the person who was a leader and

25　describing the best practice of how to execute a warrant,

1    which is of course a very sensitive area. One of the most

2    invasive things that we can do is go into a private home

3    and have the government in there. That was the reason for

4    the deposition. With that the motion for protective order

5    was filed. There has been an opinion, as Ms. Petty said,

6    they thought a 30(b)6 would be better. We did notice a

7    30(b)6 and they moved for a protective order on that one as

8    well.

9        The question about the two phases. You know, we would

10   be happy to (inaudible) to discovery. I think there was an

11   ambiguity in the scheduling order as to whether Claim 2 --

12   that's the claim about no knock and quick knock warrants,

13   whether that belongs in Phase 1 or Phase 2. And so that's

14   something we're here today to get sorted out, the fact

15   whether no knock quick knock warrant entry into private

16   homes goes in the Phase 1 order.

17   **THE COURT:** Okay. Let me ask Mrs. Petty, how many

18   plaintiffs are there? Putting aside the institutional

19   plaintiff, whatever it's called, how many individual

20   plaintiffs are there?

21   **MS. PETTY:** Ten.

22   **THE COURT:** Ten. So everyone who is on the scene?

23   **MS. PETTY:** Yes.

24   **THE COURT:** So where did the ten people come from? The

25   four guys are out in the front, I guess they're plaintiffs?

1    **MS. PETTY:**  That's correct.

2    **THE COURT:**  And then the couple of people who were in the

3    bedrooms?

4    **MS. PETTY:**  That is correct.

5    **THE COURT:**  And then who else shows up as a plaintiff?

6    **MS. PETTY:**  One of the mothers who resides in Apartment A

7    came on the scene, so she's a plaintiff.

8    **THE COURT:**  She wasn't in the house?

9    **MS. PETTY:**  She was not.

10   **THE COURT:**  She's on the outside?

11   **MS. PETTY:**  That's correct.  She had gone to the grocery

12   store.

13   **THE COURT:**  How do you -- did you want to tell me

14   something?

15   **MS. SIMPSON:**  If I may.  She came home in the midst of it

16   and was encountered as well.

17   **THE COURT:**  What's that?

18   **MS. SIMPSON:**  She came home in the middle of the raid and

19   was also encountered by the police.

20   **THE COURT:**  Okay.  When I want help I'll ask for it.

21   **MS. SIMPSON:**  Okay, thank you.

22   **THE COURT:**  Thank you though.  Go ahead.  I mean people

23   driving by?  Don't you have to have some nexus with the

24   event?

25   **MS. PETTY:**  This is true, Your Honor, yes.

1      THE COURT:  Okay.

2      MS. PETTY:  And, Your Honor, may I respond to a couple of

3      things in response to their argument?

4      THE COURT:  Only if you think it's necessary.  It's up to

5      you.

6      MS. PETTY:  I don't.

7      THE COURT:  Okay.  Who represents the other people, the

8      rest of the people in here?  Who's representing the guy

9      that was supposed to be corrupt and got fired?

10     MR. BENTON:  Your Honor, I represent Omar Abdullah, Jason

11     Benton, Your Honor.

12     THE COURT:  Okay.  And he's got criminal charges pending

13     against him?

14     MR. BENTON:  He does.

15     THE COURT:  Unresolved?

16     MR. BENTON:  Unresolved, Your Honor.

17     THE COURT:  How long have they been pending?

18     MR. BENTON:  They've been pending since -- he was indicted

19     in July of last year.

20     THE COURT:  July of '22?

21     MR. BENTON:  Yes, sir, Your Honor, I believe that's

22     correct.

23     THE COURT:  And of course it's state court so it crawls

24     like a snail and barely gets where it's going.

25     MR. BENTON:  It's in state court.  He has been arraigned.

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646     sgrahamassoc@gmail.com

Case 5:22-cv-00068-BO  Document 224  Filed 04/25/23  Page 19 of 42

1      He has pled not guilty, and I believe his criminal defense

2      attorney has been trying to set a trial date.

3      **THE COURT:** Who's his criminal defense attorney?

4      **MR. BENTON:** Your Honor, it's Christian Dysart and Ryan

5      Willis.

6      **THE COURT:** Okay. And so correct me if I'm wrong, the

7      district attorney still has absolute control over the

8      calendar?

9      **MR. BENTON:** To my knowledge, yes, sir.

10      **THE COURT:** And therein lies the problem. So it could

11      never come to a public trial, for all you know?

12      **MR. BENTON:** I would consult with Mr. Abdullah's criminal

13      defense attorneys. I don't know the answer to that.

14      **THE COURT:** Okay. And because he's charged with a crime he

15      claims that that impacts his ability to defend in this

16      case?

17      **MR. BENTON:** Yes, Your Honor. We had moved for a stay, you

18      might recall, previously. Your Honor denied a stay in its

19      entirety and granted a limited stay as to discovery

20      directed against my client except for a deposition.

21      **THE COURT:** So what's the status of the discovery with your

22      client?

23      **MR. BENTON:** The plaintiffs have taken my client's

24      deposition.

25      **THE COURT:** They have?

1    **MR. BENTON:**  Yes, sir.

2    **THE COURT:**  When was that?

3    **MR. BENTON:**  That was December 15th, 2022.

4    **THE COURT:**  Okay.  And so that's all wrapped up?

5    **MR. BENTON:**  That deposition is, yes, Your Honor.

6    **THE COURT:**  And what happened in that deposition?  Did he

7    take the Fifth?

8    **MR. BENTON:**  To some questions, yes.

9    **THE COURT:**  Okay.  Well, with his deposition you ought to

10   be ready for trial in this case, right?  That's the whole

11   case.

12   **MR. BENTON:**  Your Honor, there is a limited stay that

13   applied to any other discovery at this level.  I don't know

14   what plaintiffs intend to direct towards him once that stay

15   has lifted.

16   **THE COURT:**  I mean you've got the plaintiffs' testimony,

17   which you haven't deposed, right?

18   **MR. BENTON:**  Pardon me?

19   **THE COURT:**  You haven't deposed the plaintiffs.

20   **MR. BENTON:**  Plaintiffs have been deposed, Your Honor.

21   **THE COURT:**  All of the individual plaintiffs?

22   **MR. BENTON:**  I believe that's correct.

23   **THE COURT:**  All ten of them?

24   **MR. BENTON:**  Yes, Your Honor.

25   **THE COURT:**  Really?

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646     sgrahamassoc@gmail.com

Case 5:22-cv-00068-BO   Document 224   Filed 04/25/23   Page 21 of 42

1    MR. BENTON:  Yes, Your Honor.

2    THE COURT:  And what does that show, that they're nervous

3    and upset?

4    MR. BENTON:  They do allege psychological injury and

5    trauma.

6    THE COURT:  And that's it?  They didn't have an heirloom

7    busted or lose a month's rent or get put in jail or

8    anything like that, right?

9    MR. BENTON:  That's right, Your Honor.

10   THE COURT:  Okay.  So what are their damages?

11   MR. BENTON:  They allege constitutional injury and they

12   allege the psychological injury.  And there is still

13   discovery ongoing related to the psychological injury.

14   THE COURT:  Okay.  Who does that apply to, all ten of them,

15   the babies included.

16   MR. BENTON:  I believe all of them are contending some sort

17   of trauma deriving from the encounter, Your Honor.

18   THE COURT:  Okay.  And if your guy was in trial next Monday

19   here in Elizabeth City and he got called as the first

20   witness to the stand, he would take the Fifth?

21   MR. BENTON:  He would probably have to plead the Fifth to

22   some of his questions, Your Honor.

23   THE COURT:  That wouldn't look too good.

24   MR. BENTON:  Right.

25   THE COURT:  Okay.  And you're Mr. Benton?

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646    sgrahamassoc@gmail.com

Case 5:22-cv-00068-BO  Document 224  Filed 04/25/23  Page 22 of 42

1    MR. BENTON: Yes, Your Honor.

2    THE COURT: Okay. Ms. Packer, who do you have in this

3    fight?

4    MS. PACKER: I've got the ten SEU officers, the SWAT team.

5    THE COURT: Okay. Were they all in a group?

6    MS. PACKER: They were in a group of ten, and, as Ms. Petty

7    said, two of them peeled off to go address the report that

8    --

9    THE COURT: Who was in charge, actually officially

10   executing the warrant?

11   MS. PACKER: The SWAT team.

12   THE COURT: The leader of the SWAT team?

13   MS. PACKER: Yes.

14   THE COURT: I mean the ninth and tenth person in the SWAT

15   team are just there for dressing and somebody has got to be

16   in charge if there are ten people.

17   MS. PACKER: There is somebody in charge.

18   THE COURT: And if somebody in charge says, either actually

19   says or makes believe says, I'm here to execute a search

20   warrant, let me in, here I come.

21   MS. PACKER: Well, Your Honor, that is what would

22   ordinarily happen, but as Ms. Petty described, as they are

23   approaching the unit they are compromised because --

24   THE COURT: You mean the four guys know they're coming?

25   MS. PACKER: Exactly. And the four guys run into both

1　units, and this is in the Complaint, screaming SWAT, SWAT,

2　SWAT.  So our officers then their presence has been made

3　known.  There's no stealth.  They can't quietly approach.

4　**THE COURT:**  There's no no knock.  It's just follow the

5　flow.

6　**MS. PACKER:**  Exactly.  This is not a no knock warrant case.

7　**THE COURT:**  Right.

8　**MS. PACKER:**  The officers then start yelling police, search

9　warrant; police, search warrant.  And there's no issue of

10　knocking or breaking down a door.  One door is left ajar

11　and the other one is swinging shut.

12　**THE COURT:**  And the four guys who ran into the two

13　apartments were residents of those apartments?

14　**MS. PACKER:**  All but one.  One was a guest at the apartment

15　that he ran into.  He had been staying there for a few

16　days.

17　**THE COURT:**  Okay.  But they were all residents?

18　**MS. PACKER:**  Yes.  And the officers had a warrant for one

19　apartment.  The other apartment they stopped on the

20　threshold and they said we just want the two who ran in to

21　come back out.  And the young men came down with their

22　hands up and then they say, may we come in?  And they say,

23　yes.

24　**THE COURT:**  Okay.

25　**MS. PACKER:**  So we actually have a pending motion to

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646    sgrahamassoc@gmail.com

Case 5:22-cv-00068-BO   Document 224   Filed 04/25/23   Page 24 of 42

1    dismiss if Your Honor would want to hear it.

2    **THE COURT:**  I'm hearing it right now.

3    **MS. PACKER:**  Yes, you are.  Should I continue?

4    **THE COURT:**  Yeah.  I'm here, you're here.

5    **MS. PACKER:**  We moved to dismiss Claim 8 initially which

6    was the only claim in the Complaint that clearly addressed

7    the SEU team, and that's claim of excessive force.  And

8    then in their response the plaintiffs said, no, our Claim 2

9    is also directed to the SEU team even though it doesn't say

10   that in the caption.  In the caption it says it's directed

11   to the City, the Mayor and the City Manager.  But it is a

12   claim addressed to the City arising out of the action of

13   the officers in executing what plaintiffs like to call a no

14   knock warrant.  But I think as Your Honor understands the

15   scenario, this is not a no knock warrant case.  The whole

16   purpose behind knocking is to let people in the dwelling

17   know that the police are trying to get in, someone is

18   trying to gain entry and it is the police.  And in this

19   instance their presence had already been announced by the

20   young men who ran into both units, very loudly, just based

21   on the language of the Complaint that says screaming.  And

22   then our officers said, police, search warrant; police,

23   search warrant.  So it's simply not a no knock warrant, and

24   for that reason the second claim that's based on entry into

25   the units should be dismissed.

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646     sgrahamassoc@gmail.com

Case 5:22-cv-00068-BO   Document 224   Filed 04/25/23   Page 25 of 42

1       And a Claim 8, which is the excessive force claim

2   should also be dismissed because the only allegation of

3   excessive force is that our officers were pointing their

4   weapons at the various individuals they encountered.  And

5   the Fourth Circuit has clearly articulated, Your Honor,

6   that it is reasonable for officers to point their firearms

7   at unknown occupants when they are entering a dwelling for

8   execution of a warrant, in this case a drug search warrant.

9   We cited those cases in our briefing.  The <u>UNUS versus Kane</u>

10   case says that pointing firearms upon entry is reasonable

11   and that it is necessary to gain control of a fluid

12   situation and ensure the safety of all involved, not just

13   the police, but others who may be involved.  And we also

14   cited the <u>Bellotte versus Edwards</u> case which also held that

15   officers drawing their weapons upon entry is reasonable.

16   And in that case it even involved entering the bedroom of a

17   12-year-old girl who was pregnant on the premises.

18   **THE COURT:**  So you've got cops coming in and yelling,

19   police, search warrant and then they draw their guns and

20   there's no threat of mortal injury at the time, so they

21   might have a case on that.

22   **MS. PACKER:**  They're approaching the unit with their

23   weapons already -- these are shoulder weapons.  They're

24   approaching the unit --

25   **THE COURT:**  What do you mean shoulder weapons?

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646     sgrahamassoc@gmail.com

Case 5:22-cv-00068-BO   Document 224   Filed 04/25/23   Page 26 of 42

1    **MS. PACKER:**  They're holding -- you know they're like --

2    **MR. BENTON:**  Long guns.

3    **MS. PACKER:**  Yeah, long guns.  They're assault rifles, but

4    they're approaching with weapons already drawn.

5    **THE COURT:**  Really.

6    **MS. PACKER:**  As they're running towards the unit they're

7    saying, police, search warrant; police, search warrant.  We

8    have all this -- and this isn't pertinent to the Motion to

9    Dismiss, but just so you know we have all this on body worn

10   video camera.  They're approaching with the weapons drawn,

11   not aiming at an individual but being ready should the need

12   arise and then as they encounter people and assess that

13   they are not a threat, the weapons are put down.

14   **THE COURT:**  Okay.

15   **MS. PACKER:**  But the Fourth Circuit clearly approves of the

16   approaching with weapons --

17   **THE COURT:**  How long ago, because it's a rapidly migrating

18   law in this circuit.

19   **MS. PACKER:**  I think it's 2009 and '11.  I can check that.

20   **THE COURT:**  Whew, that's not worth anything.

21   **MS. PACKER:**  I haven't found any contrary.

22   **THE COURT:**  Seen any en bancs lately?

23   **MS. PACKER:**  You know, Your Honor, I will submit that it is

24   reasonable for officers who are approaching to execute a

25   drug search warrant when they don't know how many people

1   they are going to encounter or who those people might be,

2   and whether those people might be armed, it is reasonable

3   for them to approach.  And that's the standard is

4   reasonableness, based on what the officers know, not what

5   is learned after the fact but what they know as they are

6   approaching.

7   **THE COURT:**  Well, the problem is, some of what they know,

8   if not all of what they know, was corrupt.

9   **MS. PACKER:**  They didn't know that.  They didn't know that

10  at all.  They knew they had a valid search, a magistrate

11  issued valid search warrant for Apartment B.  And the

12  detective, Mr. Abdullah, told them earlier that day --

13  **THE COURT:**  Was he along on the ride?

14  **MS. PACKER:**  He -- he did scouting.

15  **THE COURT:**  No, I mean is he in the group that's going in?

16  **MS. PACKER:**  Yes, Your Honor.

17  **THE COURT:**  And he's the crook?

18  **MS. PACKER:**  Allegedly.

19  **THE COURT:**  Yeah.

20  **MS. PACKER:**  But the SEU officers know none of this.

21  They're not even his colleagues on the drug vice squad,

22  They're just the guys that go in and execute the warrant.

23  So we move for dismissal of the claims against them.

24  **THE COURT:**  Against the ten?

25  **MS. PACKER:**  Against the ten.

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646     sgrahamassoc@gmail.com

Case 5:22-cv-00068-BO   Document 224   Filed 04/25/23   Page 28 of 42

1    **THE COURT:**  Okay.  Is that it?

2    **MS. PACKER:**  On that issue, yes, sir.

3    **THE COURT:**  Do you want to be heard?

4    **MR. RUBERT-SCHEWEL:**  Yes, Your Honor.  Abraham Rubert-

5    Schewel on behalf of the Plaintiffs.  We believe that these

6    are all factual disputes that should be addressed at

7    summary judgment.  As the plaintiffs, sorry, as the

8    defendants pointed out, discovery is set to end in this

9    case in approximately two or three weeks and then their

10   briefs will be due in approximately 45 days.  A couple of

11   facts that were not mentioned is that Officer Abdullah was

12   driving the van that all the SEU officers were in.  Also,

13   the basis for the warrant was an alleged sale that had

14   occurred the day before at 1620, the wrong address, or the

15   other address.  The next day, prior to executing the

16   warrant, the officers conducted a second controlled buy,

17   also at 1620.  And during the controlled buys what we know

18   is the practice of the vice officers as well as the SEU

19   officers who are the ones who ran into the homes, is to

20   watch this app called a 10-21 app where they can see

21   whether a sale or not is occurring.  And what we know from

22   officers' testimony and from discovery is that almost every

23   single one of these times when they were viewing this app

24   no sale was actually observed and no sale can actually be

25   heard.  So we would --

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646    sgrahamassoc@gmail.com

Case 5:22-cv-00068-BO  Document 224  Filed 04/25/23  Page 29 of 42

1    **THE COURT:**  Who's promoting this, Abdullah?  Is this the

2    evidence that he's using to support getting the no knock

3    warrant?

4    **MR. RUBERT-SCHEWEL:**  Exactly, Your Honor.

5    **THE COURT:**  Okay.

6    **MR. RUBERT-SCHEWEL:**  Yes, it's the evidence he's using --

7    **THE COURT:**  So he's cooking this up?

8    **MR. RUBERT-SCHEWEL:**  He's cooking this up, but the vice

9    officers who are part of his team also have access to this

10   app and are also watching this app in livestream.  Now, not

11   only are they watching it, we have testimony from vice

12   officers and the video, body cam video, that shows SEU

13   officers, the officers represented by Ms. Packer, watching

14   the app also.  So they are also watching it and seeing that

15   a sale is not actually occurring.  So the question of

16   whether their knowledge is a question of fact that also

17   should be determined at summary judgment.

18        Now, to Claim 2, the illegal entry no knock, quick

19   knock claim, the officers approach.  There is a 12-year-

20   old, a 15-year old, a 17-year old and an 18-year old

21   standing in front of their homes.  They would run into

22   their homes.  Apartment B, the door closes.  At that point

23   the officers should have knocked and requested or at least

24   announced their entry.  Instead what they did is they

25   opened the door and they went in.  Now United States v.

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646     sgrahamassoc@gmail.com

Case 5:22-cv-00068-BO   Document 224   Filed 04/25/23   Page 30 of 42

1    Banks is a Supreme Count case that discusses this.  And
2    Banks is an exigency case.  The defendants here argue
3    exigency.  The exigency in Banks was the destruction of
4    evidence.  That's the same exigency they argue here.  In
5    Banks they said the exigency is drugs.  You have to knock
6    and wait 15 to 30 seconds if you fear destruction.  That's
7    what the SEU officers should have done here.  These were
8    kids who were not suspects, who had not been identified in
9    any briefing at all.  No one knew what they looked like or
10   knew what they should have been running after.  They just
11   ran after them and went right in.  The second apartment, as
12   you noted, was not on the warrant.  From the body camera
13   we're not able to actually tell if the door was open or
14   not, but they did stand there.  They then pushed the door
15   open.  I'm not saying you couldn't tell if it was cracked
16   or not.  And then with, you know, guns they had been
17   chasing these kids.  They yell and they say, the two who
18   are up there come down.  Can we come in?  And these are
19   kids who at that point feel as if they have no choice but
20   to respond to these officers and let them in.  So the
21   second claim against the SEU officers is Claim 8.  This is
22   the excessive force claim for pointing their weapons at the
23   kids at the entry to the home, as they entered the home, as
24   they go upstairs.  And we have in our Motion to Strike,
25   which we filed yesterday, the defendants attached portions

1    of our clients' deposition testimony to that motion, which

2    is improper in a 12(b)6 motion, so we move to strike that

3    deposition testimony.  And to our motion we attached, so

4    you could see, pictures of the body cam.  And the pictures

5    show officers with assault rifles pointed at our clients as

6    they have hands raised, as they have their hands in the

7    air, and as they are sitting on the ground with their hands

8    raised.  And you can see them pointing at our clients'

9    faces as they are sitting like this or as they are standing

10   like this as they are following instructions.  We also

11   brought the data camera with us today if you'd like to see

12   it.  So we maintain that Claim 2 and Claim 8 we have raised

13   sufficient issues of material facts.

14        Now, we also have filed a Motion to Compel.  And if

15   Your Honor will allow it, I will briefly speak to that.

16   **THE COURT:**  Go ahead.

17   **MR. RUBERT-SCHEWEL:**  We believe that we have resolved a

18   majority of these issues thank to defendants.  We had a

19   meet and confer, and they have agreed to turn over or have

20   already turned over almost everything.  The items that are

21   outstanding are text messages and for an illustrative

22   purpose I have with me here today group chat text messages

23   that they've turned over.  They have turned over from this

24   specific group chat five pages of text messages, and in the

25   pages we have here they are betting on whether or not this

1    CI, their informant, will produce brown sugar, fake heroin,

2    for sure fake heroin, flush dope, fake gun, no buy money,

3    lose the buy money, and then they have smiling emojis and

4    laughing emojis laughing about it. And this was before the

5    raid occurred, and this is the other vice officers.

6    Abdullah is not on this chat. And we are asking that the

7    defense turn over this entire group chat so we can see the

8    sum of it, and we only just have five pages. These five

9    pages were actually provided to us by a non-party witness

10   who is on the vice team. And they agreed to provide us

11   with some of the text messages although we don't have them

12   yet, and we would like for you to order them to agree to

13   provide the rest of the text messages, especially in light

14   of what they show about the involvement and the knowledge

15   of the vice officers at the time the raid occurred about

16   the unreliability of this informant.

17       The other items in the Motion to Compel that we seek

18   are emails, which we discussed that they have not provided

19   yet. And then there was an officer named Officer Gaye who

20   is represented here. And Officer Gaye testified at her

21   deposition that she drafted warrants for Officer Oman

22   Abdullah, and she testified that she drafted these warrants

23   on occasions even when she knew or believed that the drugs

24   that were the basis for the warrant, the basis for the

25   charges, were fabricated drugs. And so we asked them to

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646    sgrahamassoc@gmail.com

Case 5:22-cv-00068-BO   Document 224   Filed 04/25/23   Page 33 of 42

1    produce the warrants that were drafted by Officer Gaye on
2    these occasions, and we have not received those yet.  Thank
3    you.
4    **THE COURT:**  Ms. Kibler, would you like to respond?
5    **MS. KIBLER:**  Thank you, Your Honor.  Dorothy Kibler for the
6    City of Raleigh.  I want to correct some information on the
7    sequence of events.  I also need to note that the Motion to
8    Compel did not exactly see what we're talking about in
9    court today.  As to the agreements of the parties, I'll
10   back up and talk about what the parties have attempted to
11   do.

12           Discovery was initially served and responded by the
13   City in September, September 30, 2022.  The City provided
14   its information.  We had a meet and confer session in
15   September over personnel records.  We then had further
16   discussions with the parties in the second meet and confer
17   session in November, November 22nd of 2022 where the
18   parties agreed what the City would produce in respond to
19   the Request for Productions served on the city.  And Your
20   Honor, the City served responses to those requests that
21   noted numerous objections.  In attempting to work out the
22   discovery dispute, I will say the City has done in advance
23   of litigation trying to provide information and then as
24   revealed in the ESI issues.  So the City and the remaining
25   parties conferred together on November 22nd and came up

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646    sgrahamassoc@gmail.com

Case 5:22-cv-00068-BO   Document 224   Filed 04/25/23   Page 34 of 42

1   with agreed search terms.  And the City did what it agreed
2   to search.  It searched for text messages.  It searched for
3   emails on the agreed search terms, and it provided that to
4   plaintiffs' counsel.  The next thing that the City does,
5   and this shows up on the email that was provided.  It's a
6   December 19, 2022 email.  The City explained that the log
7   sought by plaintiffs did not exist.  The State has changed
8   its warrant system.  It has moved from what was called the
9   NC Aware System.  That was the system in place in 2020.  It
10  no longer exits.  The City no longer has access.  And the
11  City explained that in writing to plaintiffs' counsel that
12  we do not have that information.

13      Judge, you saw from our brief that in essence we
14  argued to you and explained we did what we promised we
15  would do.  We met and conferred.  The parties came up with
16  search terms, and we agreed to it.  We provided information
17  on December 19.  It was at 6:21 because the parties had a
18  deposition that day.  A little after five plaintiffs'
19  Counsel the pending Motion to Compel.  So from our
20  perspective that Motion to Compel is moot because we did
21  what we agreed.  We did what the Plaintiffs in that Meet
22  and Confer agreed that we would do, so the Motion to Compel
23  that is pending before you should be denied on that basis.
24  Because it was obvious that the parties had a dispute, the
25  City didn't just stop at that point.  Even though the

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646      sgrahamassoc@gmail.com

Case 5:22-cv-00068-BO   Document 224   Filed 04/25/23   Page 35 of 42

1    Motion to Compel should be denied, the City has attempted
2    to work out continuing discovery.  And on January 26th, the
3    City brought the parties together, and we had another meet
4    and confer.  And this time, Judge, I did a better job
5    documenting what the parties agreed.  If Your Honor,
6    please, I have a copy of essentially the agreements for the
7    parties.  I can hand that up if you would like.
8    **THE COURT:**  Yeah, you can hand it up.
9        (Document handed up to Court)
10   **MS. KIBLER:**  And at this point the parties are operating
11   under the second set of agreements made January 26th.  And
12   the City is attempting to fulfill again what it agreed to
13   provide.  So the City has agreed to do some additional
14   searches and negotiate about the search terms.  What we are
15   being asked to order the City now to do, which is provide a
16   running text of all communications.  And, Judge, what's
17   important to know when the plaintiffs' counsel define the
18   incident that they want, for which they want texts, it's
19   not just May 20 or 21st of 2020.  They want information
20   from every single case the confidential informant,
21   fraudulent informant, was involved in.  And his work
22   started in August of 2018 to the point at which he was
23   fired, which is May 27, 2020.  So this isn't an easy
24   request, Your Honor.  And, in fact, because we believe this
25   is burdensome and inappropriate under the rules that we

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646     sgrahamassoc@gmail.com

Case 5:22-cv-00068-BO   Document 224   Filed 04/25/23   Page 36 of 42

1  cite, we provided the Court with a Declaration from a

2  forensic examiner which is Robert Pike with the RPD who

3  explains how burdensome it is to get the material together

4  to have these piecemeal search terms come in, but still the

5  parties have agreed to negotiate terms and to provide what

6  essentially the City has agreed to do.

7       So we're before the Court arguing that you should deny

8  the pending motion because the City has done what it

9  committed to do.  Anything more than that is unreasonable

10 and burdensome.  Other that what the City has again agreed

11 in this follow-up meeting.  So, Your Honor, we would ask

12 that you deny the Motion to Compel, allow the parties to do

13 what they negotiated to do and continue their efforts to

14 try to come to a consensus and agreement to work out the

15 discovery responses.  Judge, we take our -- we want to

16 provide information.  We have provided information and

17 we've done that through negotiations which is what the

18 Court expects as opposed to asking the Court to micromanage

19 the process.  So I would simply ask that you deny the

20 motion and allow the parties to continue their efforts.

21 **THE COURT:**  Was this set in front of a magistrate?  Is that

22 why I took it away?

23 **MS. KIBLER:**  Yes, sir, it was.  I believe the magistrate

24 had set only the extension of limited discovery.

25 **THE COURT:**  Yeah, this is never going to a magistrate.  All

1   right.

2   **MR. RUBERT-SCHEWEL:** Can I just raise two points about

3   that, Your Honor? One is that discovery ends as you know

4   in three weeks. We would ask the Defendants if they want

5   to extend the discovery deadline or provide us --

6   **THE COURT:** I don't see any need to extend the discovery

7   deadline.

8   **MR. RUBERT-SCHEWEL:** Well, we still don't have the text

9   messages.

10   **THE COURT:** Well, you may not get them.

11   **MR. RUBERT-SCHEWEL:** So the reason why --

12   **THE COURT:** And you can't appeal that. You can only imbed

13   it into the outcome of the case.

14   **MR. RUBERT-SCHEWEL:** -- is because they are alleging their

15   informant was reliable.

16   **THE COURT:** Yeah.

17   **MR. RUBERT-SCHEWEL:** We need these to show his

18   unreliability.

19   **THE COURT:** This case is ready for trial almost. This

20   discovery is unnecessary probably. Surprised?

21   **MR. RUBERT-SCHEWEL:** Am I surprised?

22   **THE COURT:** Yes.

23   **MR. RUBERT-SCHEWEL:** No. But I would like to have the text

24   messages to be able to prove our case.

25   **THE COURT:** All right. I'll give it full consideration.

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646      sgrahamassoc@gmail.com

Case 5:22-cv-00068-BO   Document 224   Filed 04/25/23   Page 38 of 42

1        So who else needs to be heard on something today?

2    **MS. KIBLER:**  Your Honor, I think I know the Court's

3    response, but we do have a different motion pending for an

4    extension of the discovery deadline on the damages portion

5    of the case.  As Your Honor has pointed out, the only

6    damages that the plaintiffs are claiming are psychological

7    distress and future psychological distress.  We don't have

8    their medical records, and we need those to be able to show

9    that --

10   **THE COURT:**  You don't have a burden on that.

11   **MS. KIBLER:**  Sure.  They have produced reports from experts

12   saying that they have PTSD.  And so we would like to have

13   the opportunity to show that there is no other evidence of

14   that.

15   **THE COURT:**  Have you deposed the Plaintiffs?

16   **MS. KIBLER:**  We have.

17   **THE COURT:**  Okay.  There are ten of them?

18   **MS. KIBLER:**  There are ten.

19   **THE COURT:**  Okay.  Who else has something?  The City has

20   been heard.  The SEC officers have been heard.  Abdullah,

21   you've been heard.

22   **MR. BENTON:**  Yes, Your Honor.  We don't have any motions.

23   **THE COURT:**  And who's Rolfe?

24   **MR. BLANCHARD:**  Norwood Blanchard from the New Hanover

25   County Bar.  I've got Rolfe.  Rolfe was the Sergeant of the

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646     sgrahamassoc@gmail.com

Case 5:22-cv-00068-BO   Document 224   Filed 04/25/23   Page 39 of 42

1  Vice Squad earlier.  By happenstance he was on vacation the

2  whole week that this stuff happened.  He retired two weeks

3  ago.  So obviously any injunctive or declaratory relief

4  would be moot with respect to him.

5  **THE COURT:**  Is he subject to money damages?

6  **MR. BLANCHARD:**  I suppose if they prevail on the claim he

7  could be.  It's kind of a weird claim they've got.  This is

8  a <u>Franks versus Delaware</u> issue for them.  They claim that

9  the warrant was based on fabricated information that

10  Abdullah provided.  And the way they try to tie my client

11  in, despite him being on vacation for both the underlying

12  buy here and the execution of the search warrant,

13  essentially they're saying that he should have supervised

14  Abdullah more closely in the past and should have told

15  Abdullah in the past to fire this particular informant.

16  **THE COURT:**  It's like applying to an individual manel type

17  logic?

18  **MR. BLANCHARD:**  This is about his liability.  So the funny

19  thing about my client, as I pointed out in mediation, is

20  that they have to first establish liability for the

21  underlying violation and then on top of that they're going

22  to have to hit all those very difficult elements for

23  supervisory liability for my guy who, you know, you've the

24  causation problem with him being on vacation that week, but

25  they are, you know, keeping him in, so I'll give you that.

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646     sgrahamassoc@gmail.com

Case 5:22-cv-00068-BO   Document 224   Filed 04/25/23   Page 40 of 42

1    But I don't have any motions for you today, Your Honor.

2    **THE COURT:**  So what do you mean mediation?  Where did that

3    come from?

4    **MR. BLANCHARD:**  Well, we've mediated the case a couple of

5    times.

6    **THE COURT:**  On whose say-so?  Not mine.  I mean I don't

7    have anything to do with that, do I?  Hello.

8    **MR. BLANCHARD:**  Well, the Court ordered the --

9    **THE COURT:**  I ordered mediation?

10   **MR. BLANCHARD:**  I think we had a court hosted settlement

11   conference.

12   **THE COURT:**  The magistrate?

13   **MR. BLANCHARD:**  Judge Jones, right.  And then the last one

14   was the real mediation you've got to do in every case.

15   **THE COURT:**  Well, I'm not ordering anymore mediation.  That

16   was just trying to be nice.

17          All right, anything else?

18          Thank you.  I'll give you orders on all of this.

19   We'll be in recess.

20

21

22

23

24

25

```
STATE OF NORTH CAROLINA          )
                                 ) C-E-R-T-I-F-I-C-A-T-I-O-N
COUNTY OF PERQUIMANS             )
```

      I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

```
Sandra A. Graham, CVR-M                04/25/2023
Sandra A. Graham, CVR-M                April 25,2023
Court Reporter & Notary Public
Notary Public Number:  19940140086
```

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646      sgrahamassoc@gmail.com