IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

CIVIL ACTION NO.: 5:22-cv-00068-BO

| | |
|---|---|
| YOLANDA IRVING, individually and as the natural parent and guardian of J. I., JUWAN HARRINGTON, CYDNEEA HARRINGTON, KENYA WALTON, individually and as the natural parent and guardian of R.W., ZIYEL WHITLEY, DYAMOND WHITLEY, KAMISHA WHITLEY, and NANETTA GRANT as the natural parent and guardian of Z. G.<br><br>                Plaintiffs,<br>vs.<br><br>THE CITY OF RALEIGH, Officer OMAR I. ABDULLAH, Sergeant WILLIAM ROLFE, Officer RISHAR PIERRE MONROE, Officer JULIEN DAVID RATTELADE, and Officer MEGHAN CAROLINE GAY, Chief of Police ESTELLA PATTERSON and City Manager MARCHELL ADAMS-DAVID, in their official capacities.<br><br>                Defendants. | **DEFENDANTS GAY, MONROE AND RATTELADE'S STATEMENT OF FACTS PURSUANT TO LOCAL RULE 56.1(a)(1)** |

Pursuant to Local Civil Rule 56.1(a)(1) of the Local Civil Rules for U.S. District Court for the Eastern District of North Carolina and in support of Defendants Meghan Gay, Defendant Rishar Monroe, and Defendant Julien Rattelade ("VICE Defendants") Motion for Summary Judgment.

      1.      On May 21, 2020, Defendant Abdullah was a detective in the Vice Unit with the Raleigh Police Department ("RPD"). (Second Am. Compl. ¶ 44).

      2.      The RPD Vice Unit is tasked with enforcing drug laws and often uses confidential informants for this purpose. (*Id.* at ¶¶ 46-47).

3. Defendants Monroe, Rattelade and Gay (VICE Defendants) were also members of the Vice Unit.

4. Defendant Rattelade joined the Vice Unit in 2015 (Rattelade Dep. 7).

5. Defendant Monroe started with the Unit in 2017 (Monroe Dep. 7).

6. Defendant Gay joined in December 2019 (Gay Dep. 7).

7. In the fall of 2018, Defendant Abdullah developed, and received approval to work with a confidential informant ("CI") code named Aspirin. (Second Am. Compl. ¶¶ 55-63). Aspirin was not a CI used by any of the VICE Defendants, as he was monitored and handled exclusively by Defendant Abdullah. (Rattelade Dep. 149-150). In late 2018 and early 2020, Defendant Abdullah used Aspirin to conduct multiple controlled buys.

8. Typically, after a controlled buy, Defendant Abdullah would not submit the suspected narcotics recovered from the buy to the lab for testing until the District Attorney's Office prompted him. (Abdullah Dep. 96-97).

9. On January 2, 2020, Aspirin conducted a controlled buy for heroin from a suspected drug dealer named Curtis Logan, which resulted in a negative **field** test. (Abdullah Dep. 80-82; Rolfe Dep. 74).

10. The field tests of narcotics are not considered reliable, and therefore, are not admissible in court. (Abdullah Dep. 82).

11. After that buy, Defendant Abdullah submitted the recovered substance to the lab for testing. (Abdullah Dep. 97-98).

12. In 2020, it took longer for lab results to be completed and made available than it does now. (Gay Dep. 188). Results could come back more than a month after they were submitted. (Gay Dep. 189-190; Gwinn Dep. 135).

13. Moreover, in 2020, RPD officers did not receive any alert as to when lab results in their cases were complete and available; rather, officers had to follow up on their own to access a database to look up any lab results pertaining to their cases. (Gay Dep. 189-190; Gwinn Dep. 133, 145-146).

14. On May 20, 2020, Aspirin and Defendant Abdullah went to Burgundy Street in Raleigh, NC where Aspirin pointed to the residence at 1628 Burgundy Street, Apt. B, Raleigh, NC 27610 ("1628-B") as a place from which heroin was being sold. (Abdullah Dep. 50-52). Aspirin told Defendant Abdullah that he had previously been to 1628-B and that the controlled buy of heroin would take place there later that day. (*Id.*) The controlled buy did occur later that day. (Abdullah Dep. 54-55).

15. On May 21, 2020, Defendant Abdullah applied for, and received, a search warrant to search Apartment 1628-B. (Second Am. Compl. ¶ 101). In the application for the search warrant, Defendant Abdullah stated that "within the past 72 hours a confidential informant was utilized to purchase an amount of heroin from a black male who goes by the name Marcus and same is residing at 1628 Burgundy St. Apt. B, Raleigh, NC 27610. According to the confidential information, Marcus is selling heroin out of the apartment." (Rattelade Dep.,120, Exhibit 4).

16. Plaintiff Yolanda Irving ("Irving") and her children lived at apartment 1628-B. (*Id.* at ¶¶ 114-115).

17. Plaintiff Kenya Walton ("Walton") rented the residence next store at 1628 Burgundy Street, Apt. A and lived there with her children. (Walton Dep. 15-16)(Second Am. Compl. ¶¶ 116-117).

18. On May 21, Selective Enforcement Unit (SEU) officers along with the VICE Defendants and Defendant Abdullah, arrived at the location indicated on the search warrant. SEU

3

officers execute search warrants for the Raleigh PD. The SEU officers were familiar with the apartment complex as they had done multiple search warrants there as well as responded to multiple calls for service. (Ortiz Dep. 50), (Mead Dep. 73).

19. Defendants Rattelade and Gwinn drove Aspirin to a location near the target apartment so that he could make the controlled buy. They did this because Defendant Abdullah drove the van with the SEU officers. (Rattelade Dep. 153 & 161). They did not frisk Aspirin prior to getting in the car as should have been done by Defendant Abdullah. (Rattelade Dep. 160). Aspirin was given $800 by Defendant Abdullah for the controlled buy. (Rattelade Dep. 154). After Aspirin completed the controlled buy, he was picked up by Defendant Rattelade. Aspirin handed Defendant Rattelade the heroin that had just been purchased and he was driven to a nearby shopping center. (Rattelade Dep. 162).

20. After the controlled buy occurred, the SEU officers started to the apartment to conduct the search warrant. As they approached the unit, they saw four teenage males standing out front of the target apartment. (Mead Dep. 75).

21. Once alerted to the presence of the officers, the two males fled into the target apartment and the other two into the adjacent one in which Plaintiff Walton resided. (Mead Dep. 75).

22. The SEU went to both apartments, announcing their presence. After the SEU officers' initial entry, and in response to a request made by Defendant Abdullah, Plaintiff Walton consented to a search of her residence. (Walton Dep. 49).

23. The search did not discover any drugs or the $800 in buy money that had been given to Aspirin.

4

24. When Defendant Rattelade saw the package of heroin that Aspirin handed him, he later was able to visually inspect it, thought it did not look right and conducted a field test. (Rattelade Dep. 140-141). The field test tested negative for heroin.

25. Defendant Rattelade the next day looked at the video footage from the buy from a camera on Defendant Abdullah's desk.

26. While watching the video he was able to determine that Aspirin was saying "60" when asked by VanIrvin for the purchase of the drugs. It was at this time Defendant Rattelade first determined that Aspirin may have been planting the fake drugs. (Rattelade Dep. 155).

27. Defendant Rattelade and Defendant Monroe then reported what they had found to their superiors and the district attorney's office. (Rattelade Dep. 132-133).

28. Although Plaintiffs claim that Detectives Abdullah, Monroe, Rattelade, Gay and Sgt. Rolfe "conspired to fabricate heroin trafficking charges and wrongfully arrest and seize over 15 individuals," all the VICE Defendants testified that they were not aware that Aspirin has been fabricating evidence until after the May 21, 2020 search. (Rattelade Dep. 134, Monroe Dep. 53, Gay Dep. 131).

29. From all of the prior buys involving Aspirin, only two field tests were conducted. The first was January 2, 2020, which came back negative for heroin but was sent to the CCBI lab for testing. The other field test was after the May 21st search complained of in this case.

30. After the field test from the January 2, 2020 controlled buy, the VICE Defendants started having suspicions that Aspirin was being duped by the drug dealers.

31. Detective Monroe testified that his opinion was that Aspirin purchased real narcotics from the suspect the day prior and when he increased to the trafficking amounts, Aspirin set himself up to be ripped off by the drug dealer. (Monroe Dep. 53).

5

32. Defendant Rattelade testified in his deposition, that they believed the dealers were committing a felony offense of selling fake drugs. They believed that probable cause existed that a crime was occurring, but they did not have the details of each investigation nor lab results to definitively say as these buys were not their cases. (Rattelade Dep. 135).

This the 1st day of May, 2023.

/s/ Alayna M. Poole_____
RODNEY E. PETTEY
N.C. State Bar No.: 17715
rpettey@ymwlaw.com
ALAYNA M. POOLE
N.C. State Bar No.: 57880
apoole@ymwlaw.com
Post Office Box 2889
Raleigh, North Carolina 27602
Telephone: (919) 835-0900
Facsimile: (919) 835-0910
*Counsel for R.P. Monroe, J.D. Rattelade,
and M.C. Gay in their individual capacities*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

CIVIL ACTION NO.: 5:22-cv-00068-BO

| | |
|---|---|
| YOLANDA IRVING, individually and as the natural parent and guardian of J. I., JUWAN HARRINGTON, CYDNEEA HARRINGTON, KENYA WALTON, individually and as the natural parent and guardian of R.W., ZIYEL WHITLEY, DYAMOND WHITLEY, KAMISHA WHITLEY, and NANETTA GRANT as the natural parent and guardian of Z. G.<br>      Plaintiffs,<br>vs.<br><br>THE CITY OF RALEIGH, Officer OMAR I. ABDULLAH, Sergeant WILLIAM ROLFE, Officer RISHAR PIERRE MONROE, Officer JULIEN DAVID RATTELADE, and Officer MEGHAN CAROLINE GAY, Chief of Police ESTELLA PATTERSON and City Manager MARCHELL ADAMS-DAVID, in their official capacities.<br>      Defendants. | **CERTIFICATE OF SERVICE** |

  I hereby certify that on May 1, 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECF participants: Abraham Rubert-Schewel (schewel@tinfulton.com), Emily D. Gladden (Egladden@tinfulton.com), Michael L. Littlejohn, Jr. (mll@littlejohn-law.com), and Nichad Davis (ndavis@tinfulton.com), *Counsel for Plaintiffs;* Amy C. Petty (Amy.Petty@raleighnc.gov), Dorothy V. Kibler (Dorothy.Kibler@raleighnc.gov), *Counsel for Defendants The City of Raleigh, Estella Patterson, Marchell Adams-David;* Daniel E. Peterson (danielpeterson@parkerpoe.com), Jason R. Benton (jasonbenton@parkerpoe.com), Jessica C. Dixon (jessicadixon@parkerpoe.com), *Counsel for Defendant Omar Abdullah;* and Norwood P.

7

Blanchard, III (norwood@cmclawfirm.com), C*ounsel for Defendant William Rolfe,* and I hereby certify that I have mailed the document to the following non-CM/ECF participants: None.

Respectfully submitted,

/s/ Alayna M. Poole
RODNEY E. PETTEY
N.C. State Bar No.: 17715
rpettey@ymwlaw.com
ALAYNA M. POOLE
N.C. State Bar No.: 57880
apoole@ymwlaw.com
Post Office Box 2889
Raleigh, North Carolina 27602
Telephone: (919) 835-0900
Facsimile: (919) 835-0910
*Counsel for R.P. Monroe, J.D. Rattelade,
and M.C. Gay in their individual capacities*